**GIBSON, DUNN & CRUTCHER LLP**
CATHERINE A. CONWAY, SBN 98366
cconway@gibsondunn.com
JULIAN W. POON, SBN 219843
jpoon@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
jcripps@gibsondunn.com
BLAINE H. EVANSON, SBN 254338
bevanson@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

**SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PC**
JAMES H. HANSON (admitted *pro hac vice*)
jhanson@scopelitis.com
10 West Market Street, Suite 1500
Indianapolis, IN 46204
Telephone: 317.492.9205
Facsimile: 317.687.2414

Attorneys for Defendant
WAL-MART STORES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RIDGEWAY, JAIME FAMOSO, JOSHUA HAROLD, RICHARD BYERS, DAN THATCHER, NINO PAGTAMA, WILLIE FRANKLIN, TIM OPITZ, FARRIS DAY, KARL MERHOFF, and MICHAEL KROHN,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a Delaware corporation d/b/a WAL-MART TRANSPORTATION LLC, and Does One through and including Doe Fifty,<br><br>Defendants.<br><br>[Previously captioned as *Bryan et al. v. Wal-Mart Stores, Inc.*] | CASE NO. 3:08-cv-05221-SI<br><br>**DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>[Fed. R. Civ. P. 56]<br><br>[*Declaration of Jesse A. Cripps and Request for Judicial Notice Filed Concurrently Herewith*]<br><br>Date:  June 6, 2014<br>Time:  9:00 a.m.<br>Place:  Courtroom 10<br>Before:  Judge Susan Illston |

1

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................... 1

    A.     Plaintiffs Ridgeway, Thatcher, Opitz, Day, and Famoso Have Each Conceded That Their Meal And Rest Break Claims Are Without Merit. ..................... 1

    B.     There Is No Genuine Issue of Material Fact As To Whether Plaintiffs Performed Certain Compensable Work Without Compensation. ................................ 1

        1.     No Plaintiff Is Entitled To Additional Compensation For Layovers Because Each Admitted, Among Other Things, To Leaving The Truck Unattended During Layovers. ........................................... 2

        2.     Plaintiffs Day, Ridgeway, And Thatcher Are Not Entitled To Additional Compensation For Waiting Time, Because They Admitted They Were Relieved Of All Duty And Not Subject To Wal-Mart's Control. ............................................................................................... 5

        3.     Plaintiffs Day, Ridgeway, And Thatcher Are Not Entitled To Additional Pay For Inspections And Paperwork Because They Admitted They Were Already Paid For Those Tasks. ...................................... 7

        4.     Plaintiffs Opitz and Day Are Not Entitled To Separate Additional Compensation For Rest Breaks They Admittedly Did Not Take. .............................................................................................................. 10

        5.     Summary Adjudication Should Be Granted As To The Tasks For Which Plaintiffs Have Neither Offered Supporting Facts Nor Sought Damages. ........................................................................................... 11

    C.     Liquidated Damages May Not Be Awarded Because There Is A Good Faith Dispute, Based In Law And Fact, As To The Lawfulness Of Wal-Mart's Pay. .................................................................................................................. 12

    D.     Plaintiff Thatcher's Claims Are Time-Barred And Ridgeway and Day Are Not Entitled To Section 226 Penalties Because They Have Not Suffered A Pay-Stub Injury, Nor Proved That Wal-Mart's Conduct Was Knowing And Intentional. ................................................................................. 13

    E.     Summary Adjudication Is Appropriate As To All Plaintiffs' Section 203 Claims Because They Provide No Evidence Of Wal-Mart's Purported Willfulness, And As To Day's Section 203 Claim Specifically Because He Does Not Dispute That He Did Not Satisfy Its Statutory Prerequisites. ............................................................................................. 15

III. CONCLUSION ..................................................................................................................... 15

i

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaral v. Cintas Corp.*,
  163 Cal. App. 4th 1157 (2008) .................................................................................................. 12

*Armenta v. Osmose, Inc.*,
  135 Cal. App. 4th 314 (2005) ...................................................................................................... 9

*Balasanyan v. Nordstrom, Inc.*,
  913 F. Supp. 2d 1001 (S.D. Cal. 2012) ....................................................................................... 9

*Bluford v. Safeway Stores, Inc.*,
  216 Cal. App. 4th 864 (2013) ................................................................................................ 9, 11

*Brinker Restaurant Corp. v. Superior Court*,
  53 Cal. 4th 1004 (2012) ............................................................................................................... 1

*Cardenas v. McLane Foodservices, Inc.*,
  796 F. Supp. 2d 1246 (C.D. Cal. 2011) ....................................................................................... 9

*Carrasco v. C. H. Robinson Worldwide, Inc.*,
  2013 WL 6198944 (E.D. Cal. Nov. 27, 2013) ........................................................................... 11

*Carson v. Knight Transp.*,
  No. VCU234186 (Tulare Cnty. Super. Ct. Aug. 30, 2012) ....................................................... 10

*Cole v. CRST, Inc.*,
  2012 WL 4479237 (C.D. Cal. Sept. 27, 2012) ............................................................................ 9

*IBM Corp. v. Bajorek*,
  191 F.3d 1033 (9th Cir. 1999) ..................................................................................................... 9

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
  2008 U.S. Dist. LEXIS 14756 (N.D. Cal. Feb. 13, 2008) ......................................................... 15

*In re Wil-Low Cafeterias*,
  111 F.2d 429 (2d Cir. 1940) ........................................................................................................ 6

*Jimenez v. Servicios Agricolas Mex., Inc.*,
  742 F. Supp. 2d 1078 (D. Ariz. 2010) ................................................................................ 13, 15

*Khajavi v. Feather River Anesthesia Med. Grp.*,
  84 Cal. App. 4th 32 (2000) ........................................................................................................ 13

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ................................................................................................... 12

*Li v. A Perfect Day Franchise, Inc.*,
  2012 WL 2236752 (N.D. Cal. June 15, 2012) ........................................................................... 11

*Maciel v. City of L.A.*,
  569 F. Supp. 2d 1038 (C.D. Cal. 2008) ....................................................................................... 5

*Marlo v. United Parcel Servs., Inc.*,
  2009 WL 1258491 (C.D. Cal. May 5, 2009) ............................................................................... 9

*Morillion v. Royal Packing Co.*,
  22 Cal. 4th 575 (2000) ................................................................................................................. 4

*Owen v. Macy's, Inc.*,
  175 Cal. App. 4th 462 (2009) .................................................................................................. 5, 6

ii

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Perry v. AT&T Mobility*,
  No. 11-01488-SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011) .................................................. 10

*Price v. Starbucks Corp.*,
  192 Cal. App. 4th 1136 (2011) .................................................................................................... 14

*Progressive Direct Ins. Co. v. Ruiz*,
  2009 WL 4782751 (S.D. Cal. Dec. 10, 2009) ................................................................................ 1

*Quezada v. Con-Way Freight, Inc.*,
  2012 WL 4901423 (N.D. Cal. Oct. 15, 2012) .............................................................................. 13

*Reinhardt v. Gemini Motor Transp.*,
  879 F. Supp. 2d 1138 (E.D. Cal. 2012) ....................................................................................... 14

*Rivera v. Nat'l R.R. Passenger Corp.*,
  No. 99-04003-SI, 2004 WL 603587 (N.D. Cal. Mar. 22, 2004) .............................................. 1, 14

*Rope v. Auto-Chlor Sys. of Wash.*,
  220 Cal. App. 4th 635 (2013) ...................................................................................................... 13

*Sathianathan v. Smith Barney, Inc.*,
  2009 WL 537158 (N.D. Cal. Mar. 3, 2009) ...................................................................... 1, 12, 15

*Sperry v. Securitas Sec. Servs., Inc.*,
  2014 U.S. Dist. LEXIS 58060 (N.D. Cal. April 25, 2014) ............................................................ 2

*Suastez v. Plastic Dress-Up Co.*,
  31 Cal.3d 774 (1982) ..................................................................................................................... 6

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) .............................................................................................................. 13

*Ulin v. ALAEA-72, Inc.*,
  2011 WL 723617 (N.D. Cal. Feb. 23, 2011) ......................................................................... 13, 15

*Wasco Products, Inc. v. Southwall Techs., Inc.*,
  435 F.3d 989 (9th Cir. 2006) ....................................................................................................... 10

**Statutes**

Cal. Lab. Code § 200 ............................................................................................................................ 8

Cal. Lab. Code § 221 ............................................................................................................................ 9

Cal. Lab. Code § 222 ............................................................................................................................ 9

Cal. Lab. Code § 223 ............................................................................................................................ 9

Cal. Lab. Code § 226 .......................................................................................................................... 14

Cal. Lab. Code § 1194 .......................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................... 12

Fed. R. Civ. P. 33 ............................................................................................................................... 11

Fed. R. Civ. P. 56 ............................................................................................................................... 12

iii

Gibson, Dunn & Crutcher LLP

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Regulations**

29 C.F.R. § 785.41 ............................................................................................................................ 2

49 C.F.R. § 373.101 .......................................................................................................................... 7

49 C.F.R. § 395.2 .............................................................................................................................. 2

49 C.F.R. § 395.5(a)(1) ..................................................................................................................... 2

49 C.F.R. § 395.8(a)(1) ..................................................................................................................... 2

49 C.F.R. § 395.8(a)(2) ..................................................................................................................... 2

49 C.F.R. § 396.11 ............................................................................................................................ 7

49 C.F.R. § 396.13(a) ....................................................................................................................... 7

8 Cal. Code Regs. § 13520(a) ........................................................................................................ 12

**Other Authorities**

Dept. of Labor, *Dictionary of Occupational Titles*, No. 904.383-010 ............................................. 7

U.S. Dept. of Labor Field Operations Handbook, Ch. 31 Hours Worked, Section 31b09(a) (Dec. 15, 2000) ....................................................................................................................................... 2

Section 226, Records And Recordation—Compensation And Salaries—Address, 2012 Cal. Legis. Serv. Ch. 844 (A.B. 1744) (West) ............................................................................................. 13

Gibson, Dunn & Crutcher LLP

iv

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

# I. INTRODUCTION

Plaintiffs Ridgeway, Thatcher, Opitz, Day, and Famoso (collectively, "Plaintiffs") mischaracterize Wal-Mart's arguments, distort their deposition testimony, and attempt to improperly saddle Wal-Mart with the burden of disproving key elements of their own claims. Because there is "an absence of evidence to support the non-moving party's case," *Rivera v. Nat'l R.R. Passenger Corp.*, No. 99-04003-SI, 2004 WL 603587, at *3 (N.D. Cal. Mar. 22, 2004), this Court should grant summary adjudication as to all of the claims set forth in Wal-Mart's Motion for Partial Summary Adjudication.

# II. ARGUMENT

## A. Plaintiffs Ridgeway, Thatcher, Opitz, Day, and Famoso Have Each Conceded That Their Meal And Rest Break Claims Are Without Merit.

Plaintiffs never address, let alone oppose, Wal-Mart's argument that they were provided with an adequate opportunity to take their meal breaks as required by *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012). *See* Motion for Partial Summary Adjudication ("Mot.") [ECF No. 109] at 11-12. In addition, they expressly concede that "[i]t is not disputed that Wal-Mart provides Plaintiffs with the time to take rest breaks." Plaintiffs' Opposition ("Opp.") at 16. Accordingly, there is no genuine issue of material fact to be adjudicated with respect to their meal and rest break claims. *See, e.g.*, *Sathianathan v. Smith Barney, Inc.*, 2009 WL 537158, at *2 (N.D. Cal. Mar. 3, 2009) ("[F]ailure to oppose a motion is consent to granting it."); *Progressive Direct Ins. Co. v. Ruiz*, 2009 WL 4782751, at *3 (S.D. Cal. Dec. 10, 2009) (failure to "file any substantive opposition" amounts to "waiv[ing] opposition and consent[ing] to the [other party's] motion for summary judgment").

## B. There Is No Genuine Issue of Material Fact As To Whether Plaintiffs Performed Certain Compensable Work Without Compensation.

Plaintiffs argue in the abstract that Wal-Mart's compensation scheme does not pay for various tasks. However, this claim belies the personal employment experiences and sworn admissions of these specific Plaintiffs, as well as the undisputed testimony of Wal-Mart's witnesses. Consequently, there are no genuine issues of material fact as to whether these specific Plaintiffs were in fact compensated for the specific tasks at issue. Based on the undisputed facts, they were.

Gibson, Dunn & Crutcher LLP

1

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

**1. No Plaintiff Is Entitled To Additional Compensation For Layovers Because Each Admitted, Among Other Things, To Leaving The Truck Unattended During Layovers.**

Under the U.S. Department of Transportation's hours of service ("HOS") regulations, all drivers are required to accurately record their duty status for each 24-hour period, identifying their on-duty driving and non-driving time (collectively, "on-duty" time) as well as their off-duty time in and out of the sleeper berth (collectively, "off-duty" time). *See* 49 C.F.R. § 395.8(a)(1), (2). Drivers are required to take a 10-hour break (*i.e.*, go off-duty) in which they are "relieved of all work and all responsibility for performing work," after no more than 14 hours on duty. *See id.* § 395.3(a); *see also id.* § 395.2, Interpretative Guidance, Question 2 (clarifying that time is logged as off-duty if the driver is relieved of responsibility for the equipment and load). The driver may accumulate this off-duty time through time logged as off-duty outside the sleeper berth of the truck or in the sleeper berth of the truck. *See id.* § 395.2. The U.S. Department of Labor's regulations provide that layover time spent in the sleeper berth of a truck is not compensable. *See* 29 C.F.R. § 785.41.[1] "When assessing the compensability of sleep time under the Labor Code, California courts follow the federal 'sleep time' guidance . . . ." *Sperry v. Securitas Sec. Servs., Inc.*, 2014 U.S. Dist. LEXIS 58060, at *5 (N.D. Cal. April 25, 2014).

Plaintiffs' entire theory regarding the compensability of layovers depends on demonstrating that Plaintiffs were in fact "required to layover *in the cab* of the truck" for the duration of the layover. Opp. at 2-3, and 5 ("Requiring the Plaintiffs to spend layover time *in the cab* constitutes a recognized valuable and compensable service to Wal-Mart because it provides enhanced security for the company's vehicle and its contents."). Regardless of what others may have done, by their own

---

[1] 29 C.F.R. § 785.41 states, in relevant part: "Work performed while traveling includes any work which an employee is required to perform while traveling and must be counted as hours worked. An employee who drives a truck, bus or automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, *except during bona fide meal periods or when the employee is permitted to sleep in adequate facilities* furnished by the employer." (Emphasis added). Sleeper berths "are regarded as adequate sleeping facilities for the purpose of . . . [section] 785.41." U.S. Dept. of Labor Field Operations Handbook, Ch. 31 Hours Worked, Section 31b09(a) (Dec. 15, 2000), *available at* www.dol.gov/whd/foh.

admission, Day, Ridgeway, Opitz, Thatcher, and Famoso each did *not* remain in their cabs for their layovers, thereby dispelling any suggestion that they were required to do so.

When asked specifically about their layover claim in deposition, each Plaintiff admitted there were no specific restrictions about what could be done on a layover, and admitted to leaving his truck to attend to a variety of things.[2] Ridgeway, for example, conceded, consistent with the HOS regulations, he was "relieved of [] responsibility for care and custody" of his truck, was forbidden from doing any "work activities," and was "at liberty to pursue activities of his choosing."[3] Ridgeway Dep. 30:23-24, 31:5-8, 10-14.[4] Day likewise admitted he could lay over in any "safe place," that there was "no more work to be done," and that, consistent with the HOS regulations, he would log "off duty" while on layover. Ex. 11, Day Dep. 24:25, 25:5-17, 26:6-7, 28:2-11. After suggesting that perhaps "[y]ou weren't supposed to leave the truck," *id*. 26:14-15, he then admitted that "[he] did leave the tractor and trailer" unattended on several occasions, *id*. at 28:8-11.[5] Famoso, contrary to Plaintiffs' characterization, Opp. at 5 n. 3, *chose* to pick the closest "safe place" to park because "for [him], it was all about productivity." Ex. 12, Famoso Dep. 159:19-20, 160:12-13. And, while he believed he was "responsible for the equipment," *id*. 167:5-6, he admitted he was allowed to

---

[2] Unless otherwise noted, cited transcript excerpts are attached as Exhibit 1 (Ridgeway), Exhibit 2 (Day), Exhibit 3 (Famoso), Exhibit 4 (Opitz), and Exhibit 5 (Thatcher) to the Cripps Declaration filed with Wal-Mart's Motion for Partial Summary Adjudication [ECF No. 110]. Additional excerpts are separately numbered and attached to the Cripps Declaration filed with this Reply.

[3] He also conceded he was not "required" to stop at the closest safe place and instead had discretion to "find a place that was appropriate and pull over when [he] ran out of hours." Ex. 10, Ridgeway Dep. 34:6-9.

[4] Plaintiffs assert that Ridgeway "couldn't get up and go into a restaurant to eat," Opp. at 5 n.3, but that was not due to any directive from Wal-Mart. Rather, Ridgeway said it was his belief that under "the Department of Transportation [regulations] . . . if you want to get up in the middle of the night and go into the restaurant and eat something, you cannot interrupt your . . . layover." Ridgeway Dep. 30:16-22. When asked to clarify, Ridgeway agreed he meant "you can't do any *work* during a layover," *id*. 30:23-25 (emphasis added), consistent with the HOS regulations.

[5] Plaintiffs distort Day's testimony by claiming he "testified that he was not allowed to leave the truck unattended and go home while on a layover." Opp. at 5 n.3. Day actually testified only that "they was telling some drivers that they could not leave their tractor and trailer parked and go home." Ex. 11, Day Dep. 29:1-3. This creates no genuine issue of fact as Day himself was not told that, and some drivers testified they did lock their trucks and go home. *E.g.*, Thatcher Dep. 44:2-45:3.

---

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Gibson, Dunn & Crutcher LLP

leave his vehicle unattended leaving him free to do such activities as eat out, purchase personal items, and socialize while on layover. *Id*. 167:20-168:8. Opitz, after first stating his belief that "you have to remain with the vehicle," then admitted that he was not required, by Wal-Mart or by DOT regulations, "to stay with [his] vehicle . . . at all times," and that he had "never seen anything in writing" saying he was "required or expected to stay with [his] vehicle during layover periods." Ex. 13, Opitz Dep. 35:2-36:1. He also never suggested that anyone told him he had to stay with his vehicle, and admitted he was permitted to, and did, leave his vehicle to "go to nearby restaurants" and shop for personal items while on layover. *Id*. 38:3-24.[6] Thatcher, whose testimony Plaintiffs ignore, admitted he could "layover at home," Ex. 14, Thatcher Dep. 41:5-7; *see also* Ex. 15, Aurit Dep. 101:8-21 (explaining that layovers "could be [taken] at [drivers'] homes"), and, while he *thought* he had to "keep an eye on the truck," he admitted he could not "recall seeing [such a requirement] written down." Ex. 14, Thatcher Dep. 40:11-12, 15-24. He also admitted he could leave his vehicle to go "to restaurants" and "engage in other personal activities away from the truck in which [he] couldn't see the truck at all times." *Id*. 43:10-21.

Because Day, Ridgeway, Opitz, Thatcher, and Famoso could and did spend their layover time *away* from the truck, consistent with logging the time as off-duty under the HOS regulations, this case is nothing like *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (2000), where the employer uniformly *required* its employees to take its buses to work and punished them if they used their own vehicles. In any event, even under Plaintiffs' incorrect theory, these five drivers cannot be owed compensation for "spend[ing] layover time *in* the cab," because each admitted to spending some or all of his layovers *away* from the cab.[7] Therefore, these claims should be summarily adjudicated.

---

[6] He also agreed that Wal-Mart "didn't say that you weren't allowed to go home," and that he chose "to lay over in the truck," because he received $42 and saved time. Opitz Dep. 42:18-43:17.

[7] Plaintiffs also mischaracterize Wal-Mart's stated reasons for paying for layovers and its instruction that employees are responsible for their tractors and trailers. Wal-Mart paid for layovers to compensate for the "inconvenience [of being] away from home." Ex. 15, Aurit Dep. 107:4-11. There is no evidence that Wal-Mart has ever offered a security or emergency response rationale for the layover payments; to the contrary, Wal-Mart's own policies state that if a layover is interrupted for any reason, the driver "may begin the layover again." 2003 Transp. Philosophy
*(Cont'd on next page)*

4

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Gibson, Dunn & Crutcher LLP

### 2. Plaintiffs Day, Ridgeway, And Thatcher Are Not Entitled To Additional Compensation For Waiting Time, Because They Admitted They Were Relieved Of All Duty And Not Subject To Wal-Mart's Control.

Similarly, Plaintiffs claim that they are entitled to separate, additional pay for waiting time because "they remained under the control of Wal-Mart and were not allowed to leave their trucks." Opp. at 6. But, here again, Plaintiffs Day, Ridgeway, and Thatcher admitted they "logged off duty" during waiting time (an admission they were not working), knew they "shouldn't be doing any work," Thatcher Dep. 87:11-22, admitted there were no restrictions "as to how [they] could or couldn't use [their] wait time," Ridgeway Dep. 100:24-101:2, and were sometimes called away from their trucks to perform work (such as moving trailers), which was paid for, Day Dep. 59:21-60:1.

Although Day testified that he *thought* he had to "stay with [his] truck," he admitted there was no "written rule somewhere," and that no one "specifically [told him] . . . that that was a rule that applied to [him]"; indeed, he could not point to anything to substantiate the notion that he supposedly had to stay with his truck. Day Dep. 59:10-17. Ridgeway admitted that drivers often used waiting time "for personal reasons," and likewise admitted that no one actually told him, "don't leave that truck during wait[ing] time," or suggested that he should not; rather, staying with the truck was "just how [he] generally went about [his] day." Ex. 10, Ridgeway Dep. 98:17-20, 100:18-22. And Thatcher logged all his waiting time as "off duty" and admitted he was not working. Thatcher Dep. 86:18-20, 87:22. Like the others, he could not identify a written policy or instruction to remain with the truck. *Id.* 74:13-75:1. *Cf. Maciel v. City of L.A.*, 569 F. Supp. 2d 1038, 1054-55 (C.D. Cal. 2008) (pre-shift activities not compensable because "not required" to be performed pre-shift).

Plaintiffs offer no evidence whatsoever rebutting these admissions. Nor do they suggest that any Wal-Mart supervisor or managerial employee *required* them to stay with their truck during

---

*(Cont'd from previous page)*

[ECF No. 66-3] at 1. Plaintiffs also misread the Tractor Assignment Forms' instruction that Plaintiffs are "responsible for the safekeeping of the vehicle," Opp. at 5, as requiring a 24-hour watch, which it does not. Plaintiffs easily could—and did—comply with this instruction by properly locking their vehicles, as they admit to having done. Moreover, the mere fact that Wal-Mart paid for layovers (just as it paid for vacations and jury duty, even though it wasn't required to, *see, e.g.*, *Owen v. Macy's, Inc.*, 175 Cal. App. 4th 462, 468 (2009)), does not transform that time into "hours worked." *See infra* p. 6.

5

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

waiting time.  Indeed, the undisputed facts demonstrate that drivers had the option to leave the truck altogether:  Wal-Mart's "Instructions for Logging Store/Vendor Stops 'Off Duty'" [ECF No. 75-3] at 1, which most drivers received, acknowledged, and signed, *see, e.g.*, ECF Nos. 75-9, 75-12, advised drivers that if the "shipper/receiver" relieves the driver of "responsibility for loading/unloading" and "remain[ing] in readiness," a driver is "released from the responsibility for the care and custody of the vehicle, its[] accessories, and any cargo it may be carrying," and is "at liberty to pursue activities of [his] choosing and to leave the premises on which the vehicle is situated."  In addition, it is undisputed that Wal-Mart encourages drivers to "spend personal time waiting between loads in the Drivers['] breakroom," or "at home or doing something more enjoyable away from the Transportation Office."  2003 Transp. Philosophy [ECF No. 66-3] at 4.

Plaintiffs make much of the fact that Wal-Mart provides *additional* compensation to drivers if they wait for longer than 45 minutes (or, prior to 2007, longer than 120 minutes).  Opp. at 7.  That does not create any triable issue of material fact, however.  Wal-Mart's Pay Manual compensates for a variety of other non-work activities that Wal-Mart is under no legal obligation to pay for.  *See* Driver Reference and Pay Manual [ECF No. 66-1] at 23, 25; *Owen*, 175 Cal. App. 4th at 468.  That compensation does not somehow transform that time into "hours worked"; rather, such additional, voluntary payments are simply "'a reasonable arrangement to secure the well-being of employees and the continuance of harmonious relations between employer and employee.'"  *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982) (quoting *In re Wil-Low Cafeterias*, 111 F.2d 429, 432 (2d Cir. 1940)).  This reasoning applies with equal force to waiting time.  While Wal-Mart is not legally obligated to pay for time drivers spend off duty and not subject to its control, the fact that it has voluntarily chosen to pay for waiting time longer than 45 (or 120) minutes—just as it pays for jury duty, vacations, and voting—is simply a reflection of its being a good corporate citizen, and does not, without more, create a triable issue of fact as to whether the first 45 or 120 minutes is compensable.  Accordingly, Plaintiffs have failed to create a genuine issue of material fact with respect to whether compensable work was performed during waiting time.  Day, Ridgeway, and Thatcher's claims should therefore be summarily adjudicated.

6

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

### 3. Plaintiffs Day, Ridgeway, And Thatcher Are Not Entitled To Additional Pay For Inspections And Paperwork Because They Admitted They Were Already Paid For Those Tasks.

Plaintiffs are wrong in claiming that Wal-Mart's Motion hinges on its supposed premise that it is permissible for it to "average" its employees' pay, Opp. at 8; indeed, the misleading quotations Plaintiffs use in their Opposition appear nowhere in Wal-Mart's Motion. Instead, Wal-Mart has argued that there is no genuine issue of material fact as to whether Day, Ridgeway, and Thatcher are owed *separate* compensation for inspections and paperwork because each of them admitted they were *already paid* for such work. Mot. at 14-20.[8]

For example, when Day was asked if he understood he "would be responsible for doing some paperwork," or whether it was explained that he would be doing "pre-trips" or "post-trips," he responded, "yes." Ex. 11, Day Dep. 38:5-11, 39:19-22. When asked if "[m]ileage took into account everything that needed to get done to get a truck from one location to another and do so safely and cleanly and in compliance with the laws," he also responded "yes." *Id*. 44:4-10. He further admitted that "paperwork" and "a safety pre-trip inspection" and "a safety post-trip inspection" "were part of getting the truck from Point A to Point B," and that he was "being paid mileage pay in order to get that truck from Point A to Point B." *Id*. 44:11-16, 45:6-18.[9] Ridgeway admitted that, with the sole exception of wait time and fueling,[10] from the time he "started at Wal-Mart" he knew that the

---

[8] Plaintiffs also mischaracterize Ann Wilson's testimony as "demonstrat[ing] . . . that compensation is *solely* based on mileage pay and a discrete set of activities performed." Opp. at 9 (emphasis added). Wilson did not impose any such restriction; she merely said "we pay drivers based off of mileage and activity" as well as an hourly rate "for wait time or unscheduled time or meetings, [*i.e.*,] non-driving activities." Ex. 16, Wilson Dep. 42:1-6. Nor did she testify that Plaintiffs were not compensated *at all* for these tasks; rather, she testified that Wal-Mart "does not pay *separately*" beyond the trip pay that drivers receive. *Id*. 219:6-9, 221:3-9 (emphasis added). And there is, of course, no requirement that drivers be paid twice ("separately") for the same tasks.

[9] Indeed, these tasks are required by the DOT regulations, *see* 49 C.F.R. § 396.13(a) ("Before driving a motor vehicle, the driver shall: Be satisfied that the motor vehicle is in safe operating condition."); *id*. § 373.101 (bills of lading); *id*. § 396.11 (driver vehicle inspection reports), and the Department of Labor defines the job of "tractor-trailer-truck driver" as including these tasks. *See* Ex. 19, Dept. of Labor, *Dictionary of Occupational Titles* (4th ed., rev. 1991), No. 904.383-010 (drivers "[i]nspect[] trucks for defects before and after trips," "submit[] [a] report indicating truck condition," and "maintain[] driver log[s]").

[10] The Ridgeway testimony Plaintiffs cite refers to *fueling*, not inspections or paperwork. Ridgeway Dep. 73:15-74:3 ("Q: [Y]ou understood that you were receiving some pay to compensate you for

*(Cont'd on next page)*

7

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Gibson, Dunn & Crutcher LLP

compensation he was receiving "paid [him] for all the tasks associated with being a driver through some combination of mileage pay and activity pay." Ex. 10, Ridgeway Dep. 71:6-72:1. Thatcher similarly admitted that "when [he] started doing his work as a driver, there were no surprises in terms of what [he was] doing day-to-day," including "a pre-trip inspection," "post-trip inspections," and "paperwork." Ex. 14, Thatcher Dep. 82:1-83:22. When asked whether he "understood that the mileage pay and the activity pay together were intended to compensate [him] for everything that [he was] going to be doing as a driver," he said, "Yeah. I would be paid for the activity and paid for my mileage." *Id*. 85:13-15. Further, Wal-Mart's representatives testified unequivocally that these specific tasks *were* compensated. Ex. 16, Wilson Dep. 219:6-10, 221:3-9. Plaintiffs may disagree with this testimony, but they offer no factual evidence to the contrary, and thus no reason for this Court not to grant summary adjudication. *Rivera v. Nat'l R.R. Passenger Corp.*, No. 99-04003-SI, 2004 WL 603587, at *3 (N.D. Cal. Mar. 22, 2004).

In any event, Plaintiffs' argument—that the "mileage rate" is only earned "when the Plaintiffs are driving," Opp. at 9—cannot overcome its own internal inconsistencies. For example, Plaintiffs claim that Wal-Mart should have paid its drivers an hourly rate while they were stopped at or moving slowly through a weigh station. Of course, if this were the case, then Wal-Mart would also have to pay an hourly rate any time drivers were stuck in unmoving traffic or stopped at a red light. No case has ever suggested the law requires this. Rather, the better approach, particularly in this case, is to examine the arrangement of the parties to determine what the agreed-upon compensation covered. Indeed, the very language of the Labor Code requires such an analysis: How else could a court determine what constitutes a "piece" or a "task"? And how else could a court determine the compensation arrangement when, pursuant to the express language of the regulations, the employer pays the employee based on some "other method of calculation" as permitted by section 200?[11] On

---

*(Cont'd from previous page)*

    fueling the truck, didn't you? . . . [I]f you thought you were [working for free] . . . you would have said something . . . right? A: . . . I did, but it didn't do no good."). Opp. at 15.

[11] Wal-Mart's compensation is neither a piece-rate system, because it does not pay for production of "pieces," nor a commission-based system, as drivers do not control the number and length of their routes. Rather, Wal-Mart pays its drivers based on an "other method of calculation"—a common

*(Cont'd on next page)*

8

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Gibson, Dunn & Crutcher LLP

that question, the Labor Code simply provides that employees must be paid the equivalent of minimum wage for all hours worked, Cal. Lab. Code § 1194, and just prohibits employers from taking "unanticipated or undetermined" deductions from employees' wages, *IBM Corp. v. Bajorek*, 191 F.3d 1033, 1039 (9th Cir. 1999) (discussing Cal. Lab. Code §§ 221-223).

The cases cited by Plaintiffs (none of which are binding on this Court) did not even consider this issue,[12] and moreover, demonstrate that this is not the law. The decisional basis for Plaintiffs' lead authority, *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323-24 (2005), is that "averaging"—*i.e.*, borrowing wages from agreed-upon work to pay for other work never agreed to—"effectively reduces [employees'] contractual hourly rate," in violation of sections 221-223. This requires a court to "*analyz[e] the compensation paid* for each hour worked." *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1168 (E.D. Cal. 2012) (emphasis added).[13] Naturally, to evaluate the "compensation paid for each hour worked," a court must first examine the arrangement between the parties. While a court might reasonably conclude that the parties' arrangement is not *dispositive* in some cases, *cf. Cardenas*, 796 F. Supp. 2d at 1250; *Balasanyan*, 913 F. Supp. 2d at 1008, because, for example, the arrangement (unlike here) is unconscionable, that does not mean their arrangement is totally *irrelevant* in all cases. To the contrary, courts regularly—and necessarily—look to the parties' arrangements and understandings in the employment context. *See, e.g.*, *Marlo v. United*

---

*(Cont'd from previous page)*

    method in the transportation industry—the terms of which can only be determined by examining the arrangement between the parties.

[12] Two nonbinding decisions have found a variant of this argument inapplicable because the defendants' pay formula there (unlike here) was "limited to miles, stops, and products," and "exclude[d] by its very formula any pre- and post-shift duties." *Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1250 (C.D. Cal. 2011); *see also Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864, 872 (2013) (pay formula only included "miles driven, the time when the trips were made, and the locations where the trips began and ended," and "[n]one of these components directly compensate[s] for rest periods").

[13] At least one court has presciently questioned the statutory basis for the theory that employees paid on a non-hourly basis need to be "separately compensated" for all the work during which they cannot directly earn wages. *See, e.g.*, *Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1007 n.7 (S.D. Cal. 2012) ("The court is concerned that *no California statute suggests that commissioned employees must be paid separately for all work during which they cannot directly earn a commission.*") (emphasis added).

9

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Gibson, Dunn & Crutcher LLP

*Parcel Servs., Inc.*, 2009 WL 1258491, at *3-4 (C.D. Cal. May 5, 2009) (agreeing, in a case involving overtime claims, that parties may "contract for a different [payment] structure," and may decide that the amount of compensation an employee receives is intended to cover "all hours worked"); *Cole v. CRST, Inc.*, 2012 WL 4479237, at *8 (C.D. Cal. Sept. 27, 2012) (where drivers were "compensated based on the number of miles driven" and "were not paid additional compensation for certain non-driving duties," there was "no evidence demonstrating that drivers were not paid minimum wage for all work completed"); Ex. 17, *Carson v. Knight Transp. Inc.*, No. VCU234186, at 3 (Tulare Cnty. Super. Ct. Aug. 30, 2012) ("The fact pay is based on the number of miles driven does not necessarily mean that it is pay only for the miles driven."). Nothing about those cases contravenes the "important public policy goal" of ensuring the "lawful payment of wages owed," *Perry v. AT&T Mobility*, No. 11-01488-SI, 2011 WL 4080625, at *4-5 (N.D. Cal. Sept. 12, 2011): They are just another means of achieving that end. In sum, because Ridgeway, Thatcher, and Day each admitted that he understood he was paid for all of the hours and tasks involved in driving a truck, including inspections and paperwork, and because Plaintiffs have offered no evidence rebutting Wal-Mart's testimony that these tasks were, in fact, paid for, Ex. 16, Wilson Dep. 219:6-10, 221:3-9, there is no genuine issue of material fact necessitating trial on these claims.

### 4. Plaintiffs Opitz and Day Are Not Entitled To Separate Additional Compensation For Rest Breaks They Admittedly Did Not Take.[14]

As discussed in Part II.A, *supra*, Plaintiffs no longer dispute that Wal-Mart "provides Plaintiffs with the time to take rest breaks" and have conceded that their meal and rest break claims are without merit. Opp. at 16. Rather, their theory is now that they were not paid *separately* or additionally, at the California minimum wage, for rest breaks they actually took.[15] As Wal-Mart noted in its Motion, and as Plaintiffs nowhere deny, this theory was *not* pleaded in the Fourth Amended Complaint, and Plaintiffs should not now be allowed to seek relief (or to obtain class

---

[14] Wal-Mart moves for summary adjudication on this claim only as to Opitz and Day.

[15] Plaintiffs' new theory is distinct from their now-abandoned claim that Wal-Mart "failed to pay Plaintiffs and Class Members for *missed* breaks." Fourth Am. Compl. [ECF No. 73] ("4AC") ¶ 59 (emphasis added).

10

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Gibson, Dunn & Crutcher LLP

certification) based on this claim. Mot. at 20-21; *Wasco Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Moreover, neither Opitz nor Day has created a genuine issue of material fact as to whether he should have been separately compensated for rest breaks taken during his on-duty driving time. First, regardless whether Plaintiffs are correct that they should have been separately paid for rest breaks under *Bluford*, 216 Cal. App. 4th at 870-72, Opp. at 16, they must first show that they actually *took* a purportedly compensable rest break while on duty. Yet, Opitz and Day both admitted in their depositions that they chose not to take 10-minute rest breaks while they were on duty, Opitz Dep. 78:10-15 ("I never took ten-minute rest breaks. It was just the mandatory 30-minute . . . meal breaks"); Day Dep. 98:21-24 ("Q: "[W]as it your practice to take ten-minute rest breaks at any point during the day? A: No."). Because of those unequivocal admissions (which are entirely without analogue in *Bluford*), Opitz and Day are not entitled to any additional payment. *See, e.g.*, *Carrasco v. C. H. Robinson Worldwide, Inc.*, 2013 WL 6198944, *9-10 (E.D. Cal. Nov. 27, 2013) (rejecting claim for additional compensation for voluntarily declined breaks).

Plaintiffs Opitz and Day never address their own admissions. Instead, they suggest that they did, in fact, take rest breaks while a Wal-Mart associate was fueling their vehicle, or when they arrived at a vendor and were waiting for goods to be loaded or unloaded. Opp. at 17. This testimony cannot defeat the import of their own admissions that they did not take 10-minute rest breaks and cannot create a genuine issue of material fact; moreover, it demonstrates that Plaintiffs' rest break, fueling, and waiting time claims are highly individualized.[16]

### 5. Summary Adjudication Should Be Granted As To The Tasks For Which Plaintiffs Have Neither Offered Supporting Facts Nor Sought Damages.

---

[16] Moreover, Plaintiffs are *already* seeking to be paid separately for time spent fueling and time spent waiting. *See* Opp. at 6-7. Allowing Plaintiffs to also recover allegedly unpaid minimum wages for the same 10-minute period under a rest break theory *and* a fueling/waiting theory would yield an impermissible double recovery. *Cf. Li v. A Perfect Day Franchise, Inc.*, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (barring double recovery of penalties under section 226 and PAGA for the same conduct).

11

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Plaintiffs' Opposition, Rule 26(a) disclosures, and Interrogatory Responses (Ex. 18)[17] are all silent as to a number of tasks they initially claimed were not compensated.[18] And, with the exception of moving trailers (a claim which Plaintiffs should not be permitted to add via their initial disclosures at this late hour, *cf. La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (declining to consider new theory raised "in [a] response to a motion for summary judgment"); *see also* Fed. R. Civ. P. 56(c)-(e)), Plaintiffs have not offered any facts or arguments to support these claims or demonstrate that a genuine issue of material fact exists. Accordingly, summary adjudication is proper. *See Sathianathan*, 2009 WL 537158, at *2; *Progressive Direct*, 2009 WL 4782751, at *3.

### C. Liquidated Damages May Not Be Awarded Because There Is A Good Faith Dispute, Based In Law And Fact, As To The Lawfulness Of Wal-Mart's Pay.

A good faith dispute exists where an employer "presents a defense, based in law or fact, which, if successful, would preclude any recover[y] on the part of the employee." 8 Cal. Code Regs. § 13520(a). This includes situations where, as here, the law is unsettled. *See, e.g.*, *Amaral v. Cintas Corp.*, 163 Cal. App. 4th 1157, 1202 (2008) (good faith dispute where "numerous arguments exist" on the merits and the "legal obligations imposed on employers . . . were unclear"). Plaintiffs cite no on-point authority on the questions presented in this case, and there is ample case law to support Wal-Mart's non-"averaging" argument that this Court may examine the understanding of the parties in assessing the lawfulness of a compensation scheme. *See* Part II.B.3, *supra*; *see also* Mot. at 19-20.[19]

---

[17] Parties who have responded to an interrogatory "fully in writing under oath," Fed. R. Civ. P. 33(b)(3), are required to "supplement or correct [their] . . . response . . . in a timely manner" if they learn that their "response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Yet, Plaintiffs have indisputably failed to do so here, and it is too late to do so now.

[18] These include: "[T]ime spent moving trailers at any location to get their assigned trailer"; "time spent clearing a dock to drop a trailer"; "time spent moving between the same company's compounds, yards or docks . . . to pick up a trailer or bobtail"; and "time spent receiving loading instructions or documentation [away] from where the trailer is loaded." Mot. at 21 (citing 4AC ¶ 27).

[19] In addition, Plaintiffs regularly worked outside of California. *See, e.g.*, Ex. 14, Thatcher Dep. 79:23-80:2 (sometimes spent all week in Oregon); Ex. 11, Day Dep. 19:15-20:23 (regular overnights in Oregon, Arizona, or Utah); Ex. 10, Ridgeway Dep. 28:2-15 (regular overnights in

*(Cont'd on next page)*

Wal-Mart also has ample factual support for its defenses, including numerous admissions from Plaintiffs that they were either not performing compensable work time, or else were already paid for such work through their mileage and activity pay. *See* Part II.B, *supra*. Even if this Court were to take a different view, it cannot be disputed that Wal-Mart's defenses have a sound and reasoned basis in the facts and the law, thus precluding any award of liquidated damages in this case. *See Ulin v. ALAEA-72, Inc.*, 2011 WL 723617, at *16 (N.D. Cal. Feb. 23, 2011); Mot. at 22.

### D. Plaintiff Thatcher's Claims Are Time-Barred And Ridgeway and Day Are Not Entitled To Section 226 Penalties Because They Have Not Suffered A Pay-Stub Injury, Nor Proved That Wal-Mart's Conduct Was Knowing And Intentional.

"[M]ere failure to include all of the required information [in section 226(a)] is insufficient to state a claim" for pay stub penalties; rather, Plaintiffs must show that they were *in fact* injured by their pay stubs. *Quezada v. Con-Way Freight, Inc.*, 2012 WL 4901423, at *6 (N.D. Cal. Oct. 15, 2012). Tacitly acknowledging that they cannot, Plaintiffs rely on an amendment to section 226(e) that did not become effective until January 1, 2013.[20] Because Thatcher, Ridgeway, and Day's claims all accrued long before that date,[21] the pre-2013 version of section 226(e), not this version, should govern their claims. *See Khajavi v. Feather River Anesthesia Med. Grp.*, 84 Cal. App. 4th 32, 52 n.11 (2000) (declining to consider a claim under a statute that "was not in effect at the time of the alleged wrongful acts"); *Rope v. Auto-Chlor Sys. of Wash.*, 220 Cal. App. 4th 635, 646 (2013); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011) (discussing injury requirement under section 226(e)).

---

*(Cont'd from previous page)*

Utah). Because "California wage law does not necessarily apply to work performed outside of California," there may not have been any violation at all, which creates a "good faith dispute" as to whether any additional wages are owed. *Jimenez v. Servicios Agricolas Mex., Inc.*, 742 F. Supp. 2d 1078, 1100 (D. Ariz. 2010) (no section 203 penalty granted for travel and wait time incurred in other states); *see also Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011).

[20] *See* Section 226, Records And Recordation—Compensation And Salaries—Address, 2012 Cal. Legis. Serv. Ch. 844 (A.B. 1744) (West).

[21] *See* 4AC ¶ 8 (Ridgeway left in 2008); *id.* ¶ 18 (Day left in 2009); *id.* ¶ 11 (Thatcher left in June 2006, but officially ended his employment in 2007, *see* Thatcher Dep. 48:3-49:8, 50:16-18).

13

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

Ridgeway and Day's claims should be summarily adjudicated because they failed to provide *any* facts proving that they personally suffered any injury, nor have they rebutted their admissions that there was nothing "inaccurate or confusing" about their pay stubs. Day Dep. 69:13-70:2; Ridgeway Dep. 114:23-115:8 (with two exceptions where an error was promptly corrected, he could not identify any instances in which something was "missing, incomplete, incorrect or confusing about [his] pay stub"). These admissions demonstrate, without contradiction, that Plaintiffs understood their pay stubs and could determine what they should have been paid for.[22]

Further, it is *Plaintiffs'* burden to prove not only personal injury—for which they have offered no facts—but also that the injury was caused by Wal-Mart's "knowing and intentional" failure to provide accurate wage statements, *Reinhardt*, 879 F. Supp. 2d at 1141 ("*[A] plaintiff must show*: … the violation of § 226(a) was knowing and intentional.") (emphasis added). Plaintiffs may not avoid summary adjudication simply by shifting their burden onto Wal-Mart and requiring Wal-Mart to *disprove* an element of their own claim, Opp. at 22 ("Wal-Mart has not presented any evidence demonstrating it did not know what it was doing when . . . it issued Plaintiffs their pay stubs."). *See Rivera*, 2004 WL 603587, at *3 (moving party "has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial"). Plaintiffs offer no evidence or anything on this point beyond the conclusory, unsupported assertion that "Wal-Mart's violation of Labor Code § 226(a) was knowing and intentional." Opp. at 22.

Separately, Plaintiffs do not dispute and thus concede that because Thatcher's "employment with Wal-Mart was terminated . . . more than one year before the filing of the initial complaint on October 10, 2008," Opp. at 23 n. 18, the statute of limitations bars his claim. Mot. at 23. Therefore, summary adjudication is appropriate as to Day, Ridgeway, and Thatcher's claims.

---

[22] Plaintiffs misleadingly assert that the pay stubs were "difficult if not impossible" to understand, citing Wilson's testimony that she could "see where this gets very hard to read." Ex. 16, Wilson Dep. 124:16-17. What Plaintiffs do not tell the Court is that they provided Wilson with a copy of a pay stub that was so small it was virtually illegible, to which Wal-Mart's counsel objected during her deposition. *Id.* at 124:18-22 ("Q: [The pay stub] is confusing, isn't it? MR. CRIPPS: It's tiny. A: It's small for me because I don't have very good vision. . . . . [This] report has been shrunk down.").

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI

### E. Summary Adjudication Is Appropriate As To All Plaintiffs' Section 203 Claims Because They Provide No Evidence Of Wal-Mart's Purported Willfulness, And As To Day's Section 203 Claim Specifically Because He Does Not Dispute That He Did Not Satisfy Its Statutory Prerequisites.

Plaintiffs never dispute that Day's claim for penalties under section 203 should be summarily adjudicated because he failed to appear, as required, to collect his final pay. An employee is only eligible to receive penalties under section 203 if he "perform[s] his . . . duty to be at [his workplace] to receive tender of final pay or to give [the employer] specific mailing instructions." Mot. at 25 (citing *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 2008 U.S. Dist. LEXIS 14756, at *24 (N.D. Cal. Feb. 13, 2008)). And here, Day admitted he did not return to his home (Porterville) distribution center, where he was "performing work" for purposes of the statute, to collect his final paycheck. Day Dep. 65:22-23. Plaintiffs concede as much, and, on that basis alone, summary adjudication is proper. *See Sathianathan*, 2009 WL 537158, at *2; *Progressive Direct*, 2009 WL 4782751, at *3.

Separately, Plaintiffs again attempt to improperly shift their burden of proving willfulness under section 203 onto Wal-Mart. Opp. at 24. But Wal-Mart has no burden to disprove this element of Plaintiffs' claim; thus, Plaintiffs' failure to produce any evidence thereof warrants summary adjudication. *See Jimenez*, 742 F. Supp. 2d at 1100 (requiring plaintiffs to prove at trial that defendant's conduct was willful). Plaintiffs offer no evidence demonstrating that there is a genuine issue of material fact as to Wal-Mart's purported willfulness. Therefore, this claim should be summarily adjudicated as well.[23] *See Ulin*, 2011 WL 723617, at *18.

## III. CONCLUSION

The Court should grant Wal-Mart's Motion for Partial Summary Adjudication in full.

Dated: May 23, 2014    Respectfully submitted,

By: */s/ Julian W. Poon*
Julian W. Poon
Attorney for Defendant
WAL-MART STORES, INC.

---

[23] Wal-Mart also requests summary adjudication as to Plaintiffs' claims under section 17200 of the Business and Professions Code to the extent the Court rules in Wal-Mart's favor as to the other claims. Notice at 2; Mot. at 22 n.6.

15

DEFENDANT WAL-MART STORES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY ADJUDICATION
CASE NO. 3:08-cv-05221-SI