United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHARLES RIDGEWAY, JAIME FAMOSO, JOSHUA HAROLD, RICHARD BYERS, DAN THATCHER, NINO PAGTAMA, WILLIE FRANKLIN, TIM OPITZ, FARRIS DAY, KARL MERHOFF, and MICHAEL KROHN,

                                Plaintiffs,

      v.

WAL-MART STORES INC, a Delaware Corporation dba WAL-MART TRANSPORTATION LLC and DOES 1-50, inclusive,

                                Defendant.
_____/

No. C 08-05221 SI

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANT'S MOTION TO EXCLUDE**

      Plaintiffs bring this action on behalf of themselves and all others similarly situated, alleging that

their former employer, defendant Wal-Mart, violated various provisions of the California Labor Code

and Business and Professions Code.  Currently before the Court is plaintiffs' motion for class

certification.  Docket No. 109.  Also before the Court is defendant's motion to exclude a declaration

submitted in support of plaintiffs' motion for class certification.  Docket No. 134.  These motions came

on for hearing on June 27, 2014, at which time the Court asked the parties to submit supplemental

briefing on the Supreme Court's recent decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, --- S.Ct.

---, 2014 WL 2807181 (June 23, 2014).  Docket No. 148.  Having considered the arguments of the

United States District Court
For the Northern District of California

parties and the papers submitted, the Court hereby GRANTS in part and DENIES in part plaintiffs'

motion for class certification.  The Court DENIES defendant's motion to exclude.[1]

## BACKGROUND

Plaintiffs were formerly employed by Wal-Mart as truck drivers in California for some period

of time between 1993 and the present.  Fourth Amended Complaint ("FAC") ¶ 3-6.  Plaintiffs allege that

Wal-Mart violated a number of California laws, including failing to pay plaintiffs minimum wage, to

provide meal and rest breaks, and to provide accurate wage statements.

Plaintiffs initially filed this case in Alameda County Superior Court in October, 2008.  Docket

No. 1.  Wal-Mart removed the case to this Court under the Class Action Fairness Act, 28 U.S.C.

§ 1332(d)(2) in November, 2008.[2]  *Id.*  Plaintiffs moved for remand, which the Court denied.  Docket

No. 33.  In February, 2009, the case was stayed pending a final decision by the California Supreme

Court in *Brinker Restaurant Corp. v. Superior Court*, Case No. S166350.  Docket No. 32.  The

California Supreme Court's decision in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004

(2012) became final in May, 2012, at which point proceedings in this case resumed.  Plaintiffs Carroll

Hampton, Robert Rodriguez, Donald C. Bryan, Virgil Caldwell, and Jeffrey Hammond were terminated

on November 27, 2012.[3]  Wal-Mart sought dismissal of plaintiffs' Third Amended Complaint in

December, 2012, which the Court granted in part and denied in part.  Docket Nos. 65, 72.  Plaintiffs

filed their Fourth Amended Complaint in May, 2013, and Wal-Mart again moved to dismiss.  Docket

Nos. 73, 74.  In June, 2013, the Court denied Wal-Mart's motion to dismiss as to plaintiffs' claims for

meal and rest break violations, unpaid wages, wage statement violations, minimum wage violations, and

---

[1] The Court does not rule on the plaintiffs' evidentiary objections or defendant's opposition to them because this Order does not rely on the evidence at issue.  Docket Nos. 145-2; 147.

[2] This case was initially captioned: *Donald C. Bryan, Virgil Caldwell, Carroll Hampton, and Robert Rodriguez v. Wal-Mart Stores, Inc., a Delaware Corporation dba Wal-Mart Transportation LLC and Does 1-50, inclusive.* Docket No. 1.

[3] The case caption then became: *Richard Brown, Charles Ridgeway, Jaime Famoso, Joshua Harold, Richard Byers, Dan Thatcher, Dennis Cole, Nine Pagtama, Willie Franklin, Tim Opitz, Thomas Bryson, Farris Day, Karl Merhoff, and Michael Krohn v. Wal-Mart Stores, Inc., a Delaware Corporation dba Wal-Mart Transportation LLC and Does 1-50, inclusive.*

1   Unfair Competition Law claims.  Docket No. 82.  The Court granted the motion as to plaintiffs' claims

2   for punitive damages.  *Id.*

3       In December, 2013, the Court granted the parties' stipulation to dismiss the claims of three

4   plaintiffs: Richard Brown, Dennis Cole, and Thomas Bryson.  Docket No. 94.  On May 2, 2014, Wal-

5   Mart filed a motion for partial summary judgment as to the claims of five plaintiffs: Farris Day, Charles

6   Ridgeway, Tim Opitz, Dan Thatcher, and Jaime Famoso.  Docket No. 109.  The Court granted in part

7   and denied in part Wal-Mart's motion for summary judgment on June 10, 2014.  Docket No. 143.  The

8   Court now considers plaintiffs' motion for class certification and defendant's motion to exclude.  Docket

9   Nos. 113; 134.

10

11                                          **LEGAL STANDARD**

12      Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs bear

13  the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one

14  subsection of Rule 23(b).  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) (citing

15  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001)).  The plaintiff "must actually

16  *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23, including (if

17  applicable) the predominance requirement of Rule 23(b)(3)."  *Halliburton Co. v. Erica P. John Fund,*

18  *Inc.*, --- S.Ct. ---, 2014 WL 2807181 (June 23, 2014) (citing *Comcast Corp v. Behrend*, 133 S.Ct. 1426,

19  1431-32 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011)).

20      The Court's "class certification analysis must be rigorous and may entail some overlap with the

21  merits of the plaintiff's underlying claim."  *Amgen Inc. v. Connecticut Retirement Plans and Trust*

22  *Funds*, 133 S.Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S.Ct. at 2551 (internal quotation marks

23  omitted)).  These analytical principles govern both Rule 23(a) and 23(b).  *Behrend*, 133 S.Ct. at 1342.

24  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification

25  stage."  *Amgen*, 133 S.Ct. at 1194-95.  "Merits questions may be considered to the extent – but only to

26  the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification

27  are satisfied."  *Id.*

28

1    Under Rule 23(a), the class may be certified only if: (1) the class is so numerous that joinder of

2 all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the

3 claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4)

4 the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ.

5 P. 23(a).  A plaintiff must also establish that one or more of the grounds for maintaining the suit are met

6 under Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that

7 declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common

8 questions of law or fact predominate and the class action is superior to other available methods of

9 adjudication.  See Fed. R. Civ. P. 23(b).

10

11                                          **DISCUSSION**

12    **I.    Wal-Mart's Piece-Rate Pay Policies**

13    Plaintiffs argue that Wal-Mart uniformly applies policies, detailed in its driver pay manuals, that

14 render the issues in this case appropriate for class treatment.  Plaintiffs allege that Wal-Mart's piece-rate

15 pay policies do not provide minimum wages and do not pay drivers for certain mandatory activities, in

16 violation of California law.

17    Wal-Mart pays its drivers based on mileage, activity pay (for duties Wal-Mart deems

18 compensable), and non-activity pay (for events at Wal-Mart dispatch and home offices or unplanned

19 events).  Wilson Dep. at 42-44, Ex. 2 at 2, Ex 14. at 1.  Plaintiffs contend that Wal-Mart's piece-rate pay

20 policies do not pay drivers minimum wage for all of the work they perform, specifically the following

21 tasks: pre- and post-trip inspections; rest breaks; fueling the tractors; washing the tractors; weighing the

22 tractors; completing mandatory paperwork; wait time; and layover periods.  Motion at 4.

23    Wal-Mart details its payment policies in Driver Reference and Pay Manuals and Driver Pay

24 Manuals, and several Wal-Mart employees testified about driver payment in their depositions.  Wal-

25 Mart does not pay drivers separately for performing pre-trip and post-trip inspections.  Wilson Dep. at

26 219-220.  The pre and post-trip inspections and paperwork are considered part of the driver's trip, and

27

28

United States District Court
For the Northern District of California

4

are included as part of the driver's "trip pay."  *Id.*[4]  These tasks are not classified as compensable activities for activity pay.  Aurit Dep. Ex. 2 at 5; Wilson Dep. Exs. 12, 13 at 2, 14 at 1.  The 2008 Driver Reference and Pay Manual states that all pre-trip inspections must be logged as on duty; accordingly drivers are compensated for inspections only as part of their trip pay.  Aurit Dep. Ex. 1 at 69.  Drivers are not separately paid for maintaining and completing required paperwork.  Wilson Dep. at 221. Instead, paperwork is a task that is covered under a driver's mileage pay.  Jackson Dep. at 14.

When Wal-Mart's drivers are given a driving assignment, they also receive a projected estimated time of arrival.  Aurit Dep. at 60.  Drivers are to look at the estimated time only as an estimate and adjust it with the knowledge that they need a ten-minute rest break and/or a meal break under California law.  *Id.*  The drivers have full autonomy to make these changes to the estimated times.  *Id.*  The 2008 Driver Reference and Pay Manual states: "Transit times for scheduled deliveries are calculated to allow adequate travel time and meal period/ rest breaks in route to your delivery."  Aurit Dep. at 57-58; Aurit Ex. 1 at 40.  Wal-Mart does not track its drivers' ten-minute rest breaks, and drivers are not required to mark the ten-minute break times taken on their timesheets.  Aurit Dep. at 151; Aurit Ex. 7 Batestamp 26076.

Tasks including fueling, washing, and weighing trucks are not separately paid.  The 2008 Driver Reference and Pay Manual states that no pay is earned when the driver is required to drop a trailer for fueling and then reconnect.  Aurit Dep. Ex. 2 at 14.  Additionally, drivers should remain in the tractor when fueling at a regional distribution center and may be required to fuel their own tractor when fueling at a grocery distribution center.  *Id.* at 88.  Drivers are responsible for the cleanliness of the tractor and trailer and must wash them once per week, or as often as needed.  *Id.* at 85.  Similarly, the 2008 Driver Reference and Pay Manual states that no pay is earned when at a weigh scale.  *Id.* at 14.

Drivers are not separately compensated for all time spent waiting.  The 2001 Driver Pay Manual states that the first two hours of wait time after arrival at a store, an hour after arrival at a vendor and when waiting at a return center is non-compensable time.  Wilson Dep., Ex. 12 at 13.  The 2001 Driver

---

[4]  "Q: And my next question is, does Wal-Mart's pay policies and guidelines separately pay truck drivers for performing pretrip inspections? A: It does not pay separately.  It's part of the trip pay. Q: Okay, is there anything in the pay manuals or on any of these daily– or biweekly payroll reports that show that pretrip inspections are paid?  A: Not– it does not single out that activity.  Q: Okay, and is it the same for post trip inspections?  A: That's correct."  Wilson Dep. at 219-220.

Pay Manual further states that drivers are not paid for wait time when routine scheduled maintenance is performed on equipment, when undergoing a Department of Transportation (DOT) inspection, or for any time spent at a highway weigh scale. *Id.* at 14. The 2006 Driver Pay Manual states that unscheduled time begins 45 minutes after the driver's arrival at a store or vendor. Wilson Ex. 14 at 4. Similarly, the 2008 Driver Reference and Pay Manual states that wait time "applies when waiting 45 minutes at any location (except the home domicile or Driver's First Load of the Week." Aurit Ex. 2 at 30.

Plaintiffs were paid $42.00 for ten-hour layover periods, and claim they should have been paid at least the minimum wage for each of those ten hours. FAC ¶¶ 27, 88; Wilson Dep. Ex. 2 at 2. The 2008 Driver Reference and Pay Manual defines layover time: "A layover is earned when taking a mandatory DOT break and is not paid in conjunction with any other type of pay. The intent is to pay Drivers for layovers taken in the tractor cab." Aurit Dep. Ex 2 at 13. The 2008 Driver Reference and Pay Manual states that drivers "should always park [the] tractor in a safe, legal and secure location." Aurit Dep. Ex. 1 at 59. Wal-Mart's general transportation manager testified regarding layover pay: "the intent is for them to be in their cab, but it's not mandatory that they do so." Jackson Dep. at 41.

**II.    Proposed Classes**

Plaintiffs seek to certify a driver class consisting of: all persons employed in California by defendant in the position of Private Fleet Driver at any time between October 10, 2004 and the date of trial. Motion at 11. Plaintiffs also seek to certify the following waiting-time penalty sub-class: all class members who have left their employment with defendant. *Id.*

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Defendant has not challenged the ascertainability of the proposed class. The Court finds that plaintiffs' proposed classes are ascertainable; the classes are clearly defined as all persons employed by Wal-Mart in California, and all class members who have left their employment with Wal-Mart. Further, Wal-Mart has produced to plaintiffs a list containing contact

**United States District Court**
For the Northern District of California

information for all members of the proposed classes. Accordingly, the class definitions are ascertainable, and the proposed class members identifiable.

### III.    Rule 23(a) Requirements

#### A.    Numerosity

In order to certify, the class must be so numerous that joinder of all members individually is "impracticable." *See* Fed. R. Civ. P. 23(a)(1). Plaintiffs seek to certify a class of over 500 members who worked as drivers for Wal-Mart during the proposed class period, and a waiting-time penalty sub-class of drivers who left their employment with Wal-Mart.[5] Wal-Mart does not dispute that plaintiffs have satisfied the numerosity requirement. Accordingly, the Court finds that the numerosity requirement is satisfied for both the proposed class and sub-class.

#### B.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157) (internal quotation mark omitted). Plaintiffs' claims "must depend on a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution– which means that determination of its truth or falsity will resolve an issue that is central to the validity of each other of the claims in one stroke." *Id.*

#### (1)    Driver Class

Plaintiffs have identified common questions of law and fact concerning minimum wages, including: whether Wal-Mart's piece-rate pay plan violates California's minimum wage laws by failing to pay drivers minimum wage for all hours worked; whether Wal-Mart's drivers are entitled to payment

---

[5] Wal-Mart does not dispute that it employed over 500 drivers in California during the proposed class period. Aurit Dep. at 23-24.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

of at least minimum wages for all hours worked; and whether Wal-Mart requires drivers to perform services during DOT mandated layovers, for which drivers are paid less than California's minimum wage.

The common questions of law and fact concerning wage statement penalties offered by plaintiffs are whether Wal-Mart is liable to pay penalties under California Labor Code section 226(e) for knowingly and intentionally failing to issue wage statements in compliance with § 226(a); and whether drivers suffered an injury as a result of Wal-Mart's knowing and intentional failure to issue wage statements that comply with § 226(a).

Plaintiffs identify the following common question of law and fact concerning liquidated damages: whether Wal-Mart believed in good faith that its failure to pay drivers at least minimum wage for all hours worked was not a violation of any labor code provision relating to minimum wage.

And finally, plaintiffs identified the common question of law and fact concerning Labor Code § 1197.1 penalties: whether Wal-Mart is liable for payment of civil penalties, restitution, and liquidated damages.

Wal-Mart argues that plaintiffs' questions are not capable of classwide resolution because the question of whether drivers were paid for various tasks requires individualized inquires. Opp. at 9. In support of its position, Wal-Mart argues that the policies written in its manuals are merely "guidelines" and that plaintiffs' inquiries require a driver-by-driver and task-by-task analysis. *Id*. According to Wal-Mart, the viability of plaintiffs' claims depends not on Wal-Mart's policies, but rather on each driver's own personal experiences and the discretionary decisions made by various managers. *Id*. at 11. Wal-Mart cites the deposition testimony of Ann Wilson, in which she states that the pay manuals differ from policies, and "are more of guidance for how we pay." Wilson Dep. at 33. Wilson further testified that general transportation managers have "leadership discretion to deviate from guidance if the situation warrants." Wilson Dep. at 100; 34. According to Wal-Mart, plaintiffs' claims rely not upon a policy but rather upon individual circumstances and discretionary decisions made by various managers. Opp. at 11-12.

Wal-Mart also cites the deposition testimony of Jerry Jackson, one of three general transportation managers (GTMs), in which he stated that the manuals "are guidelines. They're not, in my mind,

policy." Jackson Dep. at 23.  When asked about the issue of compensation for waiting time, Jackson provided an illustrative example.  He stated that "[a]n example would be a driver who was waiting at a vendor for an extended period of time.  The driver would call and ask if he would get any activity pay for an excessive wait time." Jackson Dep. at 31.  Jackson testified that depending on the situation, a driver would be compensated for "unscheduled activity pay" for wait time: "If he's waiting at a vendor, I believe it's after 45 minutes." *Id*. at 32.  Jackson then testified that the driver would not be paid for the first 45 minutes of wait time because that "would be part of his arrive pay, and/or hook pay, or part of his mileage.  I mean, it's all part of that trip." *Id*.  The Court notes that the particular example that Jackson described in his testimony adheres to the pay policies detailed in the 2006 and 2008 manuals, which state that a driver is not paid for the first 45 minutes of wait time.

Jackson further testified that there is "just not a need" to refer to the pay manual in the ordinary course of his work, and that he would look at the pay manual "[o]nly if someone's challenging something." Jackson Dep. at 55.  When asked if he ever had to look at the pay manual to determine whether or not an inspection is somehow paid to a driver through some sort of mileage or activity pay, he answered no, because it is "pretty much included in his pay already." *Id*.

The Court finds that plaintiffs have met the commonality requirement for the proposed class of drivers.  While Wal-Mart argues that there are varying circumstances in which individual drivers may be granted pay at the discretion of general transportation managers, this does not negate plaintiffs' assertion that there is a general default policy, defined in the driver reference and pay manuals, against paying drivers for certain tasks.  Plaintiffs have alleged a specific set of practices for not paying drivers for certain tasks that are applicable to all drivers in the proposed class.  That certain drivers may have been paid, after requesting discretionary payment from their manager, does not refute the broader questions of whether Wal-Mart's piece-rate pay plan violates California's minimum wage laws, whether Wal-Mart's drivers are entitled to payment of at least minimum wages for all hours worked, and whether drivers are entitled to damages for these claims.  These are the types of questions that can

be answered on a class-wide basis. Accordingly, the Court concludes that plaintiffs have satisfied the commonality requirement for the driver class.[6]

### (2)   Waiting-time Penalty Sub-Class

Plaintiffs have also identified a common question of law and fact concerning waiting-time penalties: whether Wal-Mart violated Labor Code § 203 by wilfully failing to pay all wages due and owing to each driver whose employment ended at any time during the class period. Defendant does not dispute the commonality of plaintiffs' proposed sub-class. Plaintiffs' question can be resolved on a class-wide basis, and so the Court finds that plaintiff has satisfied the commonality requirement for the waiting-time penalty sub-class.

### C.   Typicality

Rule 23(a)(3) requires the named plaintiffs to show that their claims are typical of those of the class. To satisfy this requirement, the named plaintiffs must be members of the class and must "possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (quotation marks and citation omitted). The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted). Rule 23(a)(3) is "permissive" and only requires that the named plaintiffs' claims be "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

---

[6] Defendant contends that plaintiffs did not allege either a violation of California Labor Code section 1197.1, or a claim for unpaid rest breaks in the operative complaint and therefore have not proved commonality for these claims. Opp. at 13. Upon review, the Court finds that plaintiffs's Fourth Amended Complaint alleged that Wal-Mart failed to pay its drivers the California minimum wage, FAC ¶¶ 86-92, and sought statutory damages and penalties available under each cause of action alleged in the complaint. FAC at 26. The Court finds plaintiffs sufficiently pled relief for Wal-Mart's purported violations of California's minimum wage law. Defendant previously raised its argument as to plaintiff's rest break claims in its motion for partial summary judgment. Docket No. 109. The Court has already concluded that plaintiffs stated these claims in their allegation that defendant failed to pay plaintiffs for rest breaks and failed to pay minimum wages for each hour plaintiffs worked. FAC ¶¶ 57-59; 86-89. Defendant's arguments fail.

Plaintiffs present a theory that involves Wal-Mart's common practice or policy denying all class members minimum wage for all hours worked; accordingly, the named plaintiffs were subject to the policies challenged in the lawsuit, and suffered the same injury as a result of the policies. Defendant has not challenged the typicality of the named plaintiffs. The Court finds that plaintiffs have met the typicality requirement.

### D.    Adequacy

Rule 23(a)(4) permits the certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class. *See Staton,* 327 F.3d at 954.

Defendants do not raise any challenges to the adequacy of the representative plaintiffs to serve as class representatives. There does not appear to be any evidence of conflicts of interest among the class representatives, their attorneys, or the proposed classes. And the sworn statements of the representative plaintiffs and their counsel indicate that they are capable and ready to represent the class. Jones Decl.;  Kopfman Decl. ¶ 14; Byers Decl. ¶¶ 18-20; Day Decl. ¶¶ 18-20; Famoso Decl. ¶¶ 18-20; Opitz Decl. ¶¶ 18-20; Ridgeway Decl. ¶¶ 18-20;  Thatcher Decl. ¶¶ 18-20. Accordingly, the Court finds that plaintiffs have met the requirements for adequacy under Rule 23(a)(4).

## IV.    Rule 23(b)

Along with the requirements of Rule 23(a), a plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b). Here, plaintiffs seek certification under Rule 23(b)(3), which provides that a case may be certified as a class action if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**A.**     **Predominance**

The predominance requirement of Rule 23(b) "is far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623. The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022) (internal quotation mark omitted). The Rule requires "that common questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 133 S.Ct. at 1196 (quoting Fed. R. Civ. P. 23(b)(3)) (emphasis in original).

**(1)**     **Driver Class**

Wal-Mart first argues that plaintiffs have not offered a way to determine which drivers performed which tasks or the amount of time spent on those tasks in California, so they cannot meet the predominance requirement. Opp. at 14. Defendant's argument is unpersuasive. The California Supreme Court has explained that the state's "territorial boundaries are relevant to determining whether IWC wage orders apply." *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996). "If an employee resides in California, receives pay in California, and works exclusively, or principally, in California, then that employee is a 'wage earner of California' and presumptively enjoys the protection of IWC regulations." *Id*. Here, plaintiffs are residents of California and worked out of distribution centers located in California. *See e.g.* Famoso Decl. ¶¶ 3, 5; Day Decl. ¶¶ 3, 5; Opitz Decl. ¶¶ 3, 5. The Court finds that plaintiffs presumptively enjoy the protections of IWC regulations, and defendant's argument presents no bar to the predominance requirement.

Next, Wal-Mart argues that plaintiffs' minimum wage claims require an hour-by-hour, driver-by-driver, task-by-task analysis of how each plaintiff spent his workday, and these individual questions would overwhelm any common questions. Opp. at 15. Wal-Mart contends that it is impossible to determine on a classwide basis which driver performed which tasks, the amount of time it took to perform those tasks, and whether as a result any driver was compensated below minimum wage. *Id.*

1      Plaintiffs maintain that Wal-Mart's policies are applied to all of its California drivers.  And

2    plaintiffs have provided evidence of these policies in the 2001, 2006, and 2008 Driver Reference and

3    Pay Manuals as well as the deposition testimony of Aurit and Wilson.  However, Wal-Mart argues that

4    the Driver Pay Manuals are not policies, but are simply guidelines for GTMs to utilize.  If GTMs, at

5    their discretion, granted drivers additional payment for requested tasks, this should be readily

6    discernable from Wal-Mart's payment records.  The Supreme Court has explained that when engaging

7    in a class certification analysis under Rule 23(b)(3), a court must be "rigorous" and its examination may

8    "entail some overlap with the merits of the plaintiff's underlying claim."  *Amgen*, 133 S.Ct. at 1194;

9    *Dukes*, 131 S.Ct. at 2551.  But Rule 23 "grants courts  no license to engage in free-ranging merits

10   inquiries at the certification stage."  *Amgen*, 133 S.Ct. at 1194.  The issue of whether GTMs ever

11   actually granted additional payment at their discretion is a factual question that should be addressed at

12   trial or summary judgment.

13       *Quezada v. Con-Way Freight, Inc.*, No. 09-3670, 2012 WL 4901423 (N.D. Cal. Oct. 15, 2012),

14   a case upon which plaintiffs rely, addressed arguments nearly identical to those presented here.  There,

15   the court determined on summary judgment, prior to class certification, that defendant's undisputed pay

16   scheme did not separately compensate its drivers for the time spent conducting pre- and post-trip

17   inspections.  *Quezada*, 2012 WL 4901423, at *4.  The court also determined that defendant's pay

18   scheme violated California law.  *Id*.  In addressing the predominance requirement, the court reasoned

19   that defendant's argument that some drivers were paid for some of their inspection time could not defeat

20   class certification because this "is an issue that goes to damages, not class certification."  *Id*.

21   Additionally, the court rejected defendant's argument that it would be difficult to determine, on a class-

22   wide basis, plaintiff's claim for compensation for time spent on mandatory paperwork.  *Id*. at *5.  There,

23   the court reasoned that to the extent the amount of time it takes each driver to complete the paperwork

24   is relatively uniform, it is appropriate to adjudicate the claim on a class-wide basis.  But if it later

25   becomes evident that there are more than minor variations in class-members' respective time completing

26   paperwork, defendant may move to decertify the class.  *Id*.

27       Similarly, the court in *Mendez v. R&L Carriers, Inc.*, No. 11-2478, 2012 WL 5868973 (N.D. Cal.

28   Nov. 19, 2012) reasoned that where defendants' linehaul pay formula applied to all of defendants'

drivers in California, plaintiffs' wage-and-hour claims "inherently raise many legal and factual questions common to all putative class members." *Mendez*, at *16. In its analysis of the predominance requirement, the court found that defendants' pay formula, which affected all drivers in the state, raised common questions including whether the formula adequately compensates drivers for non-driving time. *Id*. These common questions included whether the pay formula misrepresents drivers' working hours, whether the formula adequately compensates drivers for non-driving time. The court also noted defendants' legal questions, such as whether California law recognizes the lawfulness of piece-rate compensation for drivers, were relevant to all putative class members. *Id*. Taking these questions together, the court found that "the various common questions that Defendants' pay policies raise will likely predominate over individual questions." *Id*. at *17.

These cases are instructive here, where Wal-Mart's pay formula raises common questions including: whether the piece-rate pay formula adequately compensates drivers for tasks that are not included in trip-pay or unscheduled time; whether Wal-Mart's piece-rate pay plan violates California's minimum wage laws; whether drivers remained under Wal-Mart's control during layovers, rest breaks, and wait-times; and whether Wal-Mart's drivers are entitled to payment of at least minimum wages for all hours worked. These are common questions that predominate over individual questions of whether certain drivers received additional discretionary pay after requesting such payment for certain tasks, or whether some drivers completed tasks like paperwork during wait-time or attended to personal phone calls during layovers. Further, the evidence plaintiffs have provided regarding Wal-Mart's driver pay policy, as detailed in the 2001, 2006, and 2008 Driver Reference and Pay Manuals and as described by Wal-Mart witnesses Wilson and Aurit, show that there was a pay policy in place that applied to all California drivers. As the court in *Mendez* noted, "proof of a defendant's uniform pay policy [] is often sufficient to satisfy the predominance prerequisite in cases where a plaintiff-employee alleges underpayment." Accordingly, the Court finds that plaintiffs have satisfied the predominance requirement for their minimum wage claims. But, if it later becomes clear that there are major variations in the time class-members spent completing tasks like paperwork or fueling, defendant may move to decertify the class.

United States District Court
For the Northern District of California

As to plaintiffs' wage statement claims, Wal-Mart argues that plaintiffs merely assert that their pay stubs omitted certain information, but they must show how they will establish injury to the class with common proof. Opp. at 24. "The injury requirement in section 226, subdivision (e), cannot be satisfied simply because one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement." *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142-43 (2011). "By employing the term 'suffering injury,' the statute requires that an employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates *an injury* arising from the missing information." *Id*. at 1142-43 (emphasis in original). The Court granted partial summary judgment to defendants as to the wage statement claims of Day and Ridgeway, because neither plaintiff stated in his declaration or deposition testimony that he engaged in any mathematical calculation, nor that they were required to "engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid." *Id*. at 1143. The Court DENIES plaintiffs' motion for class certification for the claims for inaccurate wage statements because plaintiffs have not shown that putative class members shared a common injury as a result of the missing wage statement information that could be adjudicated on a class-wide basis nor that there are common legal question that predominates over the individualized issues for plaintiffs' wage statement claims.[7]

### (2)      Waiting-Time Sub-Class

Wal-Mart challenges whether plaintiffs have established predominance for their waiting-time claims under California Labor Code section 203, arguing individual issues predominate. Opp. at 25. Wal-Mart argues that plaintiffs have not provided evidence that any of the putative class members complied with the requirements of California Labor Code § 203. Under California Labor Code section 208, "[e]very employee who is discharged shall be paid at the place of discharge, and every employee who quits shall be paid at the office or agency of the employer in the county where the employee has

---

[7] Plaintiffs suggest that section 226(e)(2)(B), an amendment to the labor code that became effective January 1, 2013, creates a presumption of injury where required information is omitted from wage statements. Docket No. 151 at 3-4. According to plaintiffs, this presumption resolves the predominance question. *Id*. at 4. As previously explained in the Order granting in part and denying in part defendant's motion for partial summary judgment, Docket No. 143, the Court's analysis relies upon the text of the statute effective from July 21, 2005 to December 31, 2011.

been performing labor." Specifically, Wal-Mart points to plaintiff Day, who testified in his deposition that he did not pick up his final check because he had automatic deposit for his paychecks.[8] Day Dep. at 64. Wal-Mart argues that plaintiffs' failure to offer a way of proving that class members complied with these requirements means their waiting penalty claims cannot be certified.

At the motion hearing, and in their reply, plaintiffs clarified that their claim is not that Wal-Mart failed to tender final paychecks to terminated employees at the time of termination. Reply at 14. Rather, plaintiffs' theory is that when final checks were tendered, they failed to include all wages that were then lawfully due. *Id.* Plaintiffs maintain that the common question is whether Wal-Mart violated section 203 by wilfully tendering paychecks that failed to pay at least minimum wage for all hours worked by its drivers. According to plaintiffs, Wal-Mart's policy of failing to pay drivers at least minimum wage for all hours worked constitutes a violation of section 203. Motion at 17-18.

In *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005), the California Court of Appeal considered the lower court's award of waiting time penalties under section 203. There, evidence presented at trial showed that the employer was aware employees were not compensated for "nonproductive time" during which employees engaged in tasks including: travel time in company vehicles, loading equipment and supplies into company vehicles, completing paperwork, and maintaining company vehicles. *Armenta*, 135 Cal. App. 4th at 317. The court found that supervisors created an environment in which employees were strongly discouraged from recording time spent on "nonproductive tasks" and that employees testified that supervisors were told that they could not be compensated for "nonproductive time." *Id.* at 325. The court reasoned that the employer's failure to pay its employees for "nonproductive time" was intentional and willful, and thus supporting an award of waiting-time penalties. *Id.* at 326. As to the calculation of the waiting-time penalties, the court concluded that where the employees' claim was for a violation of California's minimum wage law, penalties under section 203 had to be assessed by arriving at a daily wage using the minimum wage claimed by each respondent. *Id.*

---

[8] The Court granted summary judgment to defendant as to Day's section 203 claims, because plaintiffs did not respond to Wal-Mart's argument as to Day's claim, and thus conceded by silence.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Similarly, in *Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36 (2013), the California

2  Court of Appeal reviewed an award of waiting-time penalties under section 203.  The employer in

3  *Gonzalez* utilized a piece-rate pay system that incorporated the types of repair tasks employees

4  completed and the number of hours employees spent at a work site (regardless of whether they were

5  engaged in a repair task).  *Gonzalez*, 215 Cal. App. 4th at 41.  The employer's stated policy was to

6  supplement its employees' pay when compensation fell below minimum wage, but the court found that

7  there was evidence the employer did not always provide this compensation.  *Id.* at 54-55.  In assessing

8  the trial court's grant of waiting-time penalties under section 203, the court found that there was

9  evidence in the record that the employer did not always cover shortfalls between the piece-rate wages

10  paid to its employees and the minimum wage.  *Id.* at 55.  The court reasoned that this was substantial

11  evidence to support "an implied finding of willfulness" by the employer and upheld the trial court's

12  grant of waiting-time penalties.  *Id.* at 55.

13  Plaintiffs offer a theory akin to those presented in *Armenta* and *Gonzalez*; they suggest that Wal-

14  Mart instituted a payment system that ensured its drivers were not paid the minimum wage.  Under this

15  framing of the waiting-time issue, the Court finds that common questions predominate and

16  individualized inquiries into each driver's underpayment are not required.  *See In re Wal-Mart Stores,*

17  *Inc. Wage and Hour Litigation*, No. 06-2069, 2008 WL 413749, at *11 (N.D. Cal. Feb. 13, 2008)

18  (reasoning that under the plaintiffs' theory that defendant engaged "in a systemic, corporate-level

19  scheme to intentionally underpay its employees," did not appear to require individual inquiries into the

20  circumstances surrounding each employee's final pay for a subclass of employees who were not paid

21  all wages they earned while employed by defendant).

22

23  **B.   Superiority**

24  "Rule 23(b) also requires that class resolution must be 'superior to other available methods for

25  the fair and efficient adjudication of the controversy."  *Hanlon*, 150 F.3d at 1023 (quoting Fed. R. Civ.

26  P. 23(b)(3)).  The Court must determine "whether the objectives of the particular class action procedure

27  will be achieved in the particular case."  *Id.* (citation omitted).  The four factors for the Court's

28  examination are: (1) the interest of each class member in individually controlling the prosecution or

17

1    defense of separate actions; (2) the extent and nature of any litigation concerning the controversy

2    already commenced by or against the class; (3) the desirability of concentrating the litigation of the

3    claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a

4    class action. *Zinser*, 253 F.3d at 1190-92.

5         Wal-Mart argues that the putative class members have sufficient monetary incentive to pursue

6    their own claims. Opp. at 27. Plaintiffs do not respond to this argument. Plaintiffs' Rule 26(a)(1)

7    disclosures provided estimates of the damages sought. Docket Nos. 110-6, 110-7, 110-8. Thatcher

8    estimates damages over $50,000, Ridgeway and Opitz estimate damages over $100,000, and Day and

9    Famoso estimate damages over $200,000. *Id.* The Supreme Court has noted that "the text of Rule

10   23(b)(3) does not exclude from certification cases in which individual damages run high," although "the

11   vindication of the rights of groups of people who individually would be without effective strength to

12   bring their opponents into court at all," are the potential plaintiffs the Advisory Committee had in mind

13   in effectuating the rule. *Amchem*, 521 U.S. at 617. While plaintiffs here estimate damages that may not

14   be small individual sums, the Court does not find this a bar to certification as some plaintiffs may be

15   unable to litigate as individuals "because of the disparity between their litigation costs and what they

16   hope to recover." *Judicial Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,

17   244 F.3d 1152, 1164 (9th Cir. 2001); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809

18   (1985) ("Class actions may also permit the plaintiffs to pool claims which would be uneconomical to

19   litigate individually."). Further, the amount of plaintiffs' estimated damages does not negate the judicial

20   economy of consolidating hundreds of individual actions into a class action lawsuit.

21        Wal-Mart next asserts that any concerns regarding retaliation against plaintiffs are irrelevant

22   because all named plaintiffs are former employees. Opp. at 27. Plaintiffs also fail to respond to this

23   argument. However, the proposed driver class includes present employees of Wal-Mart who may be

24   reluctant to file an individual lawsuit against their employer for fear of retaliation. *See Perez v. Safety-*

25   *Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008).

26        Finally, Wal-Mart argues that plaintiffs have not shown how this putative class action could be

27   manageable, as each class member would have to litigate numerous and separate issues to establish his

28   or her right to recover individually. Opp. at 27. The Court has found that common questions

18

United States District Court
For the Northern District of California

predominate over individual question as to plaintiffs' minimum wage claims.  Defendant's arguments pertain to the calculation of each individual's damages and thus do not prevent certification on the common questions concerning Wal-Mart's liability.

Plaintiffs have submitted the declaration of William Roberts and Sean Chasworth to demonstrate the manageability of their case.  Docket No. 133, Ex. 30; Docket No. 144 at 2.  Wal-Mart moves to exclude the declaration, first arguing that plaintiffs failed to disclose Roberts and Chasworth as witnesses under Rule 26(a).  Docket No. 134 at 2-3.  Rule 26(a)(2) addresses disclosure of expert witnesses that parties intend to use at trial.  Fed. R. Civ. P. 26(a)(2).  However, Rule 26(a)(2) does not require advance disclosure of expert witness reports for use in class certification briefing.  The Court agrees with plaintiffs' contention that no date has yet been set for disclosure of expert witnesses, and thus Wal-Mart's position as to the timeliness of the Rule 26 disclosures is false.[9]

Next, Wal-Mart argues that the declaration should be excluded on *Daubert* grounds, asserting that expert testimony offered in support of class certification must satisfy the admissibility requirements of the Federal Rules of Evidence.  Docket No. 134 at 3.  According to Wal-Mart, the declaration testimony is based on speculation and must be excluded.  *Id*.  Plaintiffs counter that defendant is attempting to obtain an early court determination of the permissibility of anticipated future expert testimony and further argue that this is not the point at which a *Daubert* inquiry can be made.  Docket No. 144 at 3.

Throughout its motion, Wal-Mart designates the declaration of Roberts and Chasworth as expert testimony.  The declaration states that Roberts and Chasworth were "asked by plaintiffs' counsel to design an appropriate methodology for the collection of data and analysis of this data."  Docket No. 113-30 ¶ 11.  The declaration states that Roberts and Chasworth were asked to compute damages from unpaid time spent while refueling, on hooks and similar events, layovers, waiting, unscheduled time, rest breaks, inspections, truck washing, and weigh time.  *Id*. ¶ 14.  From Wal-Mart's pay records, Roberts and Chasworth will be able to extract the number of miles driven, the number of times a task was performed, the number of layovers, waiting, and unscheduled time.  *Id*. ¶ 15.  Using spreadsheet software or custom programming language, an analysis could determine the  frequency of unpaid

---

[9] Wal-Mart offers no response to this argument in its reply brief.

activities. *Id*. The declaration notes that some information necessary to compute damages may not be documented by Wal-Mart, and that a survey of class members could provide common evidence regarding the time required to perform the undocumented tasks. *Id*. ¶ 18.

The cases Wal-Mart cites in support of its position did not consider expert testimony for manageability under Rule 23(b). *See Dukes*, 131 S.Ct. 2541, 2554 (2011) (considering expert testimony as to a "general policy of discrimination"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (addressing expert testimony offered as to the issue of commonality under Rule 23(a)); *In re AutoZone Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526, 544 (N.D. Cal. 2012) (assessing an expert witness' discussion of a study of employees about various allegations in the litigation). Here, plaintiffs do not offer the declaration of Roberts and Chasworth to demonstrate commonality or a common policy; in such circumstances, a *Daubert* analysis is appropriate. The Court finds that it is premature to assess whether Roberts and Chasworth qualify as experts and whether their testimony is sufficiently fact based to be reliable, and therefore DENIES Wal-Mart's motion to exclude.

In a related argument, Wal-Mart contends that plaintiffs' damages are not capable of measurement on a classwide basis, and individual damages issues will overwhelm questions common to the classes. Opp. at 26. Plaintiffs argue that damage calculations can be accomplished through competent survey and representative evidence. Reply at 14. The Ninth Circuit has explained, "damages determinations are individual in nearly all wage-and-hour class actions," and "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Levya v. Medline Industries Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). Wal-Mart argues that it will be impossible to calculate damages on a class-wide basis, but the declaration of Roberts and Chasworth, submitted by plaintiffs, explains a method for calculating damages. Docket No. 133, Ex. 30. The Court finds that any potential manageability issues arising from the calculation of each individual's damages do not defeat class certification.

Lastly, Wal-Mart asserts that plaintiffs have not met their burden to present to the Court a workable trial plan. Opp. at 28. However, the cases upon which Wal-Mart relies denied certification where plaintiffs failed to present manageable trial plans to address conflicts in state laws "adequate to deal with individualized issues and variances in state law." *See Zinser*, 253 F.3d 1180, 1191. As this

United States District Court
For the Northern District of California

1   Court has previously explained, "[w]here significant differences in applicable law will arise, plaintiffs

2   should propose 'a suitable and realistic plan for trial of the class claims.'" *In re Conseco Life Ins. Co.*

3   *Lifetrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010) (quoting *Zinser*, 253 F.3d

4   at 1189). Here, the proposed classes involved only California claims, so plaintiffs need not present a

5   trial plan. *See Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 572-73 (S.D. Cal. 2013).

6        Accordingly, the Court finds that plaintiffs have met the requirements under Rule 23(b)(3) as

7   to the driver class and waiting-time class minimum wage claims.

8

9                          **CONCLUSION**

10        For the foregoing reasons, the Court GRANTS certification of the driver and waiting-time

11   penalty classes as to the minimum wage claims, but DENIES certification as to the wage statement

12   claims. The Court also DENIES defendant's motion to exclude. This order disposes of Docket

13   Numbers 109 and 134.

14

15       **IT IS SO ORDERED.**

16

17   Dated: September 10, 2014

18                              _____

19                              SUSAN ILLSTON
                               UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28