UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RIDGEWAY, JAIME FAMOSO, JOSHUA HAROLD, RICHARD BYERS, DAN THATCHER, NINO PAGTAMA, WILLIE FRANKLIN, TIM OPITZ, FARRIS DAY, KARL MERHOFF, and MICHAEL KROHN,<br><br>Plaintiffs,<br>v.<br><br>WAL-MART STORES, INC., a Delaware Corporation dba WAL-MART TRANSPORTATION LLC and DOES 1-50, inclusive,<br><br>Defendant. | Case No. 08-cv-05221-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiffs' motion for partial summary judgment came on for hearing on May 1, 2015. For the reasons stated below, the Court hereby GRANTS in part and DENIES in part plaintiff's motion.

**BACKGROUND**

Plaintiffs are truck drivers in California previously employed by defendant Wal-Mart for some period of time between 1993 and the present. Fourth Amended Complaint ("FAC") ¶ 3-6. Plaintiffs allege Wal-Mart violated California law by failing to pay plaintiffs at least the minimum wage for each hour worked.

Plaintiffs initially filed this case in Alameda County Superior Court in October 2008. Docket No. 1. Wal-Mart removed the case to this Court under the Class Action Fairness Act, 28

U.S.C. § 1332(d)(2) in November 2008.[1]  *Id*.  Plaintiffs moved for remand, which the Court denied.  Docket No. 33.  In February 2009, the case was stayed pending a final decision by the California Supreme Court in *Brinker Restaurant Corp. v. Superior Court*, Case No. S166350.  Docket No. 32.  The California Supreme Court's decision in *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012) became final in May 2012, at which point proceedings in this case resumed.  Plaintiffs Carroll Hampton, Robert Rodriguez, Donald C. Bryan, Virgil Caldwell, and Jeffrey Hammond were terminated on November 27, 2012.[2]  Wal-Mart sought dismissal of plaintiff's Third Amended Complaint in December 2012, which the Court granted in part and denied in part.  Docket Nos. 65, 72.  Plaintiffs filed their Fourth Amended Complaint in May, 2013, and Wal-Mart again moved to dismiss.  Docket Nos. 73, 74.  In June 2013, the Court denied Wal-Mart's motion to dismiss as to plaintiffs' claims for meal and rest break violations, unpaid wages, wage statement violations, minimum wage violations, and UCL claims.  Docket No. 82.  The Court granted the motion as to plaintiffs' claims for punitive damages.  *Id*.

In December 2013, the Court granted the parties' stipulation to dismiss the claims of three plaintiffs: Richard Brown, Dennis Cole, and Thomas Bryson.  Docket No. 94.  In May 2014, Wal-Mart moved for partial summary judgment as to the claims of five plaintiffs: Farris Day, Charles Ridgeway, Tim Opitz, Dan Thatcher, and Jaime Famoso.  Docket No. 109.  The Court granted in part and denied in part Wal-Mart's motion for summary judgment.  The Court denied the motion as to plaintiffs' minimum wage claims for layovers, pre- and post-inspections and paperwork, wait periods, rest breaks, and moving trailers.

In September 2014, the Court granted in part and denied in part plaintiff's motion for class certification.  Docket No. 158.  Plaintiffs now move for partial summary judgment.

---

[1] This case was initially captioned: *Donald C. Bryan, Virgil Caldwell, Carroll Hampton, and Robert Rodriguez v. Wal-Mart Stores, Inc., a Delaware Corporation dba Wal-Mart Transportation LLC and DOES 1-50, inclusive.* Docket No. 1.

[2] The case caption then became: *Richard Brown, Charles Ridgeway, Jaime Famoso, Joshua Harold, Richard Byers, Dan Thatcher, Dennis Cole, Nine Pagtama, Willie Franklin, Tim Opitz, Thomas Bryson, Farris Day, Karl Merhoff, and Michael Krohn v. Wal-Mart Stores, Inc., a Delaware Corporation dba Wal-Mart Transportation LLC and DOES 1-50, inclusive.*

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c).

## DISCUSSION

Plaintiffs now for move summary judgment as to: (1) their minimum wage claims; and (2)

1  Wal-Mart's eighth affirmative defense. Plaintiffs contend that Wal-Mart's payment policies, as
2  articulated in Wal-Mart's Driver Pay Manuals, violate California wage law by failing to pay
3  drivers at least minimum wage for all of the time they work, including time spent on pre-trip and
4  post-trip inspections, rest breaks, wait time, fueling the tractor, washing the tractor and trailer,
5  weighing the tractor and trailer and completing mandatory paperwork. Plaintiffs further argue that
6  drivers are entitled to payment of minimum wages for the time spent taking mandatory layovers.
7  Plaintiffs have clarified that the present motion is limited to questions of liability and does not
8  seek any determination of damages.[1] Reply at 5. For the purposes of this motion for partial
9  summary judgment, plaintiffs seek a determination of whether the driver pay policies described in
10 the Driver Pay Manuals violate California minimum wage law.

### I.   Wal-Mart's Driver Pay Policies

At issue in this case are the 2001, 2006, and 2008 Wal-Mart Driver Pay Manuals. Each of these documents is labeled "Driver Pay Manual" or "Driver Reference and Pay Manual," details the activities for which drivers are paid, and specifies activities for which drivers are not paid. Wilson Dep., Exs. 12, 13, 14; Aurit Dep., Ex. 2. As explained in the Manuals, Wal-Mart pays its drivers based on mileage, activity pay, and non-activity pay. Wilson Dep. at 42-44. Activity pay is for duties like arrive, hook, layover, live load pay and chain pay. *See e.g.,* Wilson Dep., Ex. 13 at 2; Ex. 14 Driver Pay Manual 2006 at 1; Aurit Dep., Ex. 2 at 5. Non-activity pay includes scheduled time (events the Wal-Mart dispatch or home office schedules) and unscheduled time (unplanned events). *Id*.

The 2001 Driver Pay Manual details activities for which pay is earned, which include: drops (delivering a loaded trailer), backhaul (picking up a loaded trailer), relay, claims (returning merchandise), and chain pay. Wilson Dep., Ex. 12. The Manual specifies that drivers are paid for wait time after two hours. *Id*. at 13. It also states that drivers receive layover pay per occurrence

---

[1] Plaintiffs state in their reply: "This motion concerns two overarching undisputed facts: (1) Wal-Mart's Driver Pay Manual, on its face, does not provide for payment of at least minimum wage for every required job duty; and (2) Wal-Mart in fact applies the payment plan stated in its Driver Pay Manuals to all Drivers in the Plaintiff class." Reply at 5.

when away from their residence or domicile office, up to eight hours per layover. *Id*. at 12.

The 2006 Driver Pay Manual states that drivers are paid for mileage rate, activity pay, and non-activity pay (scheduled time and unscheduled time). Wilson Dep., Ex. 14. Activity pay is for: arrive, hook, stop, layover, live load, and chain pay. *Id*. at 1. This Manual states that drivers are paid for wait time after 45 minutes. *Id*. at 4.

The 2008 Driver Pay Manual includes the following categories for which drivers are paid: mileage rates, activity pay, unscheduled time, and scheduled time. Activity pay is earned for arrive, hook, stop, layover, live load, live unload, and chain pay. Aurit Dep., Ex. 2 at 5. The 2008 Pay Manual specifies that drivers are paid for wait time after waiting 45 minutes. *Id*. at 9. The pay Manual also specifies that a layover is earned when drivers take a mandatory DOT break and is not paid in conjunction with any other pay.[2] *Id*. at 13, 41. The pay Manual states that the "intent is to pay Drivers for layovers taken in the tractor cab." *Id*. Activities for which no pay is earned are also detailed. No pay is earned when: at a weigh scale, waiting for a work assignment at driver's home domicile, a driver is required to drop a trailer for fueling or maintenance. *Id*. at 14.

Ann Wilson, Wal-Mart's Senior Director of Regional Transportation for dispatching operations in the western half of the United States, testified about the Driver Pay Manuals in her deposition. Wilson Dep., Ex. B; Wilson Decl., Docket No. 190-2 ¶ 1. Wal-Mart identified Wilson as the person most qualified at Wal-Mart to answer questions about California-based driver compensation systems. Wilson Dep., Docket No. 181-7, Ex. B at 26. In her deposition, Wilson described the Driver Pay Manuals as guidance manuals for their offices to know how to pay the drivers. Wilson Dep. at 33. Specifically, Wilson stated in her deposition that the Manual "would be a guidance for them to follow. There's some discretion that the general transportation managers [GTMs] will use, but this gives them guidance." *Id*. at 34. Rick Aurit, Senior Director of Regional Transportation for the Central Plains region, was produced by Wal-Mart as the person

---

[2] The 2008 Driver Reference and Pay Manual states that drivers will not be compensated for a DOT break if any portion of it is taken at home. Aurit Dep., Ex. 2 at 41. The Manual also states that drivers must safely and legally park the tractor and trailer in a secure location. *Id*.

1   most qualified to discuss the work schedules of California-based drivers. Aurit Dep. at 130-131;
2   Aurit Decl., Docket No. 190-1 ¶ 1. Aurit stated in his deposition that the pay Manuals "are
3   definitely followed by the company." Aurit Dep. at 54. Aurit also noted that "[t]here can always
4   be exceptions" to guidelines. *Id*. at 54-55. The 2001 Driver Pay Manual states that "[a]ny method
5   or type of pay accumulation that deviates from this pay manual is not authorized." Wilson Dep.,
6   Ex. 12.

7   Plaintiffs argue that by using the Driver Pay Manuals as the basis on which class members
8   were paid, Wal-Mart has failed to pay at least minimum wage for all hours worked and services
9   performed. Motion at 8, 11. Specifically, plaintiffs contend that Wal-Mart has failed to pay class
10  members at least the minimum wage for completing the following duties and activities: pre-trip
11  and post-trip inspections, rest breaks, time spent completing paperwork, time spent fueling the
12  tractor, time spent washing the tractor and trailer, time spent at weigh scales, wait time and/or
13  unscheduled time, and layover time. Plaintiffs contend that the Driver Pay Manuals, on their face,
14  violate California law because they do not provide for payment for these mandatory duties.

15

16  **II.    Driver Pay Plans and California Minimum Wage Law**

17  Plaintiffs move for partial summary judgment, arguing that each of the Driver Pay
18  Manuals, on its face, fails to provide compensation to drivers for all job duties. Reply at 6. They
19  request the Court's determination of whether the published Manuals are inconsistent with
20  California law because they do not provide for payment of at least minimum wages for all
21  performed job duties. *Id*.

22  Employment in California is governed by the Industrial Welfare Commission (IWC) wage
23  orders. The transportation industry is government by IWC Wage Order 9-2001. Cal. Code Regs.,
24  tit. 8 § 11090. This Wage Order requires employers to pay employees at least the minimum wage
25  per hour for all hours worked. *Id*. § 2(G). "Hours worked" is defined as "the time during which
26  an employee is subject to the control of an employer, and includes all the time the employee is
27  suffered or permitted to work, whether or not required to do so." *Id*. "Wages" are defined as "all
28  amounts for labor performed by employees of every description, whether the amount is fixed or

6

ascertained by the standard of time, task, piece, commission basis, or other method of calculation." *Id*. § 2(O).

Plaintiffs describe the pay plans detailed in the Driver Pay Manuals as plans that are similar to those discussed in *Quezada v. Con-Way Freight, Inc.*, No. 09-03670- JW, 2012 WL 2847609 (N.D. Cal. July 11, 2012); *Cardenas v. McLane FoodServices, Inc.*, 796 F.Supp. 2d 1246 (C.D. Cal. 2011); and *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005).

The California Court of Appeal in *Armenta* addressed how minimum wage can be calculated to determine whether California minimum wage law had been violated. 135 Cal. App. 4th at 316. In *Armenta*, employee hours were classified as productive or nonproductive, depending on whether the hours were "directly related" to the work employees performed maintaining utility poles in the field. *Id*. The employees argued that they were not compensated for: travel time in company vehicles, time spent loading equipment and supplies into the company vehicle, time spent doing daily and weekly paperwork, and time spent maintaining the company vehicles. *Id*. at 317. The employer argued that the time spent on those tasks was considered nonproductive time and asserted that it should be entitled to divide the total number of hours worked into the amount the employee was paid to arrive at an average hourly wage to then determine whether compensation complied with the minimum wage law (the method utilized to determine minimum wage compliance under the FLSA). *Id*. at 322. The Court considered the minimum wage provisions of the FLSA and California law, finding that they differed significantly and that the method utilized for assessing violations of the FLSA did not apply to California. Instead, "the minimum wage standard applies to each hour worked" by an employee "for which they were not paid." *Id*. at 324. The court upheld the trial court's determination that the employer violated California law by refusing or failing to pay for the "nonproductive time" spent driving and completing paperwork. *Id*.

The Central District of California in *Cardenas* considered the lawfulness of the defendant's piece-rate pay formula for paying truck drivers. *Cardenas*, 796 F.Supp. 2d at 1248. There, the piece-rate formula for paying drivers consisted of: the number of cases of product delivered on a route, the number of miles driven on a route, and the number of delivery stops made

7

1   on a route. *Id*. Plaintiffs argued that the piece-rate pay formula failed to compensate them for
2   duties they were required to perform pre- and post-shift, including vehicle inspections and
3   completion of paperwork. *Id*. Defendant argued these duties were compensated as part of the
4   piece-rate formula. Plaintiffs also argued that they were not paid for rest breaks, and the first 30
5   minutes of delay time while waiting for customers, but defendant argued that drivers were paid for
6   rest breaks and delay time at hourly or other rates of pay. *Id*. Defendant argued that in
7   combination, plaintiffs were paid significantly more than minimum wage for all of their working
8   time. Both parties moved for summary judgment as to whether the pay formula violated
9   California law. The court addressed the defendant's argument that its piece-rate system did not
10  violate California law because, when averaged out, plaintiffs earned more than minimum wage.
11  *Id*. at 1250. Citing *Armenta* and a 2002 DLSE (Division of Labor Standards Enforcement)
12  opinion letter,[3] the court noted the clear legislative intent to protect the minimum wage rights of
13  California employees—specifically, that the averaging method used by federal courts to assess
14  violations of the federal minimum wage law does not apply to California minimum wage
15  violations. *Id*. at 1251. The court reasoned that "a piece-rate formula that does not compensate
16  directly for all time worked does not comply with California Labor Codes, even if, averaged out, it
17  would pay at least minimum wage for all hours worked." *Id*. at 1252.

18   In *Quezada*, the district court considered the parties' cross motions for summary judgment
19  on the question of whether defendant's compensation system was permissible under the California
20  Labor Code. 2012 WL 2847609, at * 2. The parties agreed that plaintiff, a linehaul truck driver,
21  was compensated at a "per-mile rate for all miles driven and at an hourly rate for some work
22  performed at Defendant's facilities." *Id*. The parties also agreed that plaintiff was not
23  compensated at the hourly rate "for vehicle inspections, paperwork completion, and the first house
24  of wait time in a shift." *Id*. The court addressed the question of "whether Defendant's pay scheme
25  of 'building in' compensation for these activities to the per-mile rate is permissible under the

---

[3] This letter analyzed both federal and California law on averaging of wages for piece-rate formulas and concluded that the averaging of wages paid within a particular pay period to determine if the employer complied with minimum wage violations is not permitted.

United States District Court
Northern District of California

California Labor Code." *Id*. The court concluded that "California law does not allow an employer to 'build in' time for non-driving tasks into a piece-rate compensation system" and that "employees must be directly compensated for all time worked." *Id*. at *6. The court noted that because the defendant admitted that the pay scheme of "building in" compensation for non-driving tasks on a per-mile rate was its practice, liability was established.

### III.     Wal-Mart's Pay Policy

Wal-Mart argues that this case is distinguishable from the pay policies discussed in *Armenta*, *Cardenas*, and *Quezada*. Specifically, Wal-Mart contends that: (1) activities like inspections, fueling, washing, weighing, and paperwork are subsumed within other activities for which drivers are paid; (2) drivers are not subject Wal-Mart's control during layovers, and thus need not be paid at least minimum wage; and (3) plaintiffs ignore pay records that demonstrate that plaintiffs were paid for time spent on these activities through discretionary pay. Opp. at 7, 13-14, 16-17. Plaintiffs assert that the Wal-Mart pay policies do not pay minimum wages for all hours worked and all services performed and therefore violate California law. Motion at 5; 14.

#### A.  Activities Subsumed into Other Paid Activities

Wal-Mart first argues that its pay plan compensated drivers for inspections, washing and cleaning, wait time, and fueling because they are subsumed into other activities for which they earn activity pay. For example, Wal-Mart asserts that inspections are subsumed within other activities for which drivers are paid, citing the declarations of drivers Mitchell and Suvanto which state that they perform inspections at the same time as they perform other activities like "arrive," "hook," "live unload," and "live load" and are paid for the time spent on the inspection through that activity code. Opp. at 7; Mitchell Decl. ¶ 9; Suvanto Decl. ¶ 10. Similarly, Wal-Mart states that washing and cleaning were part of "live load," "wait time," or "hook." Opp. at 9, n.7. Wal-Mart also argues that drivers were paid for wait time as part of an activity, like live load or live unload. Opp. at 20. As to rest breaks, Wal-Mart argues that drivers were permitted to take rest breaks during "wait time" or during any other paid task, such as a stop." Opp. at 16. Wal-Mart

9

1      also argues that the driver declarations reveal that some drivers did not want to and did not take
2      rest breaks.
3              Wal-Mart asserts trucks are fueled by a fueling associate in connection with a hook, arrive,
4      depart or other activity. Opp. at 14 citing Aurit Dep. 96-97; Suvanto Decl ¶ 6; Mitchell Decl. ¶ 4.
5      As to weighing tractors and trailers, Wal-Mart states that this an act performed when drivers are
6      completing other activities, like hook or live load. Opp. at 14. Additionally, Wal-Mart argues that
7      drivers receive mileage pay for time spent weighing because the wheels of the truck are moving as
8      they drive across the scale. *Id*. citing Ridgeway Dep. 91-92; Opitz Dep. 140; Second Hammann
9      Decl. ¶ 5.
10             Again, Wal-Mart argues that paperwork is an act that drivers perform "in connection with
11     and at the same time" as other activities, like arrive, hook, live load or while on wait time,
12     unscheduled time, or down time. Opp. at 14. Wal-Mart cites the declarations of Hammann ¶ 23,
13     Mitchell ¶ 7, and Suvanto ¶ 10 to argue that drivers received activity pay for paperwork. Opp. at
14     14. Wal-Mart also cites the declaration of Red Bluff GTM Baker who stated that drivers "fill out
15     paperwork in connection with and at the same time as arriving at a location, hooking and departing
16     from a location, during a live load or while on paid wait time, unscheduled time or down time."
17     Baker Decl. ¶ 4.
18             The argument Wal-Mart has presented here—that the activities are paid through activity
19     pay for other tasks—is analogous to the argument brought by the employer in *Quezada*. In
20     *Quezada*, driver compensation was calculated by multiplying a pre-set mileage rate by the number
21     of miles in a trip; drivers also received a separate hourly rate for work performed at the company
22     facilities, like loading and unloading. *Quezada v. Con-Way Freight, Inc.*, 2012 WL 4901423, at
23     *1. The drivers in *Quezada* were not paid at their hourly rate for the non-driving activities, and
24     the employer argued the time spent on these activities was built into the per-mile rate. *Id*. at *2.
25     Similarly, in the present case the Driver Manuals explain that drivers are paid by mileage rate and
26     for activity pay, unscheduled time, and scheduled time. Wilson Dep. at 42-44. Activity pay is for
27     duties like arrive, hook, layover, live load pay and chain pay. *See e.g.,* Wilson Dep., Ex. 13 at 2;
28     Ex. 14 Driver Pay Manual 2006 at 1; Aurit Dep., Ex. 2 at 5. The Driver Pay Manuals specify

activities for which drivers are not paid, and Wal-Mart here argues that the time drivers spend on these activities are subsumed into activity pay.

In *Quezada*, the court reasoned that California law requires that employees must be directly compensated for all time worked, and therefore does not allow an employer to "build in" time spent on non-driving tasks into a piece-rate compensation system. 2012 WL 2847609, at *6. California minimum wage standards apply to each hour worked by an employee, thus an employer may not refuse to pay for time spent on tasks like completing paperwork. *Armenta*, 135 Cal. App. 4th at 316. Although Wal-Mart contends its pay method should not be characterized as a "piece-rate compensation plan," the Court finds that the differences in pay structure are non-dispositive of the issue at hand: whether plaintiffs must be paid for all hours worked. *See Cardenas*, 796 F.Supp. 2d at 1249. Here, certain required tasks are specifically designated as unpaid activities.[4] "[A] piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked." *Id*. at 1252. The Court finds that activities that are not separately compensated (and are explicitly listed and recognized as unpaid activities) may not properly be built in or subsumed into the activity pay component of Wal-Mart's pay policies, under California law.

### B. Layovers

Pursuant to Department of Transportation regulations, drivers must take mandatory "layover" periods. "A driver may not drive without first taking 10 consecutive hours off duty." 49 C.F.R. § 395.3(a)(1). Plaintiffs were paid $42.00 for these layover periods. Plaintiffs argue

---

[4] For example, the 2008 Driver Reference and Pay Manual specifically states that "no pay is earned when" a driver: drops a trailer for fueling, is at a weigh scale, or is waiting on a work assignment at driver's home domicile. Aurit Dep., Ex. 2 at 14. The 2001 Wal-Mart Driver Pay Manual states that wait time is a compensable job duty after 2 hours of waiting after arrival at a store, but drivers are not compensated for the first 2 hours of wait time. Wilson Dep. Ex. 12 at 13. Similarly, the 2008 Wal-Mart Pay Manual states that wait time "applies when waiting 45 minutes at any location (except the home domicile or Driver's First Load of the Week)." Aurit Dep. Ex 2. at 30. Paperwork and inspections are also not separately compensated. Wilson Dep. at 219-221; Aurit Dep. Ex. 2 at 5; Wilson Dep. Exs. 12, 13 at 2, 14 at 1. Washing the trailer is not included in the listings of paid activities, but drivers "are responsible for the cleanliness of the tractor cab and driving [the] tractor and trailer through the automatic wash… once per week." Aurit Dep., Ex. 1 at 85. Similarly, the Manuals do not separately identify and pay rest breaks. Wilson Dep. 217-18.

11

that under California law, drivers must be paid for all of the time that they are subject to the control of their employer and that drivers were subject to Wal-Mart's control during layover periods. Wal-Mart contends that plaintiffs are not subject to Wal-Mart's control during layovers, and therefore are not entitled to minimum wage payment for each hour of the layover. Opp. at 16-18.

Under California law, employers must pay employees at least the minimum wage per hour for all hours worked. Cal. Code Regs., tit. 8 § 11090. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id*. In *Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), the California Supreme Court explained that the phrases "time during which an employee is subject to the control of an employer" and "time the employee is suffered or permitted to work, whether or not required to do so" each define "whether certain time spent is compensable as 'hours worked.'" *Morrillion*, 22 Cal. 4th at 582. Accordingly, "an employee who is subject to an employer's control does not have to be working during that time to be compensated." *Id*.

"The level of the employer's control over its employees, rather than the mere fact that the employer requires the employee's activity, is determinative." *Morrillion*, 22 Cal. 4th at 587 (citations omitted). In *Morrillion*, the employer required its agricultural worker employees to meet for work each day at specific parking lots or assembly areas and transported them to and from the fields on buses the employer provided and paid for. *Id*. at 579. Employees were prohibited from using their own transportation to get to and from the fields. *Id*. The employer argued that employers were not subject to its control during bus rides because "they could read on the bus or perform other personal activities." *Id*. at 586. The California Supreme Court rejected this argument, and found that "[p]ermitting plaintiffs to engage in limited activities such as reading or sleeping on the bus does not allow them to use 'the time effectively for [their] own purposes.'" *Id*. (quoting *Bono Enterprises v. Bradshaw*, 32 Cal. App. 4th 968 (1995)). The Court reasoned that when "an employer requires employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation" the employees are "subject to the

12

1   control of an employer" and the time spent traveling on the buses "is compensable as 'hours
2   worked.'" *Id*. at 587.

3   Similarly, in *Bono Enterprises v. Bradshaw*, 32 Cal. App. 4th 968 (1995), the California
4   Court of Appeal considered a policy where workers had to remain on the work-site premises
5   during their 30-minute lunch period unless they made prior arrangements. The workers were
6   relieved of all work duties during the lunch period and an on-site cafeteria and relaxation area was
7   available for them to use during the lunch period. *Bono*, 32 Cal. App. 4th at 972. The court
8   reasoned that "[w]hen an employer directs, commands or restrains an employee from leaving the
9   work place during his or her lunch hour and thus prevents the employee from using the time
10  effectively for his or her own purposes, the employee remains subject to the employer's control,"
11  and therefore must be paid. *Bono*, 32 Cal. App. 4th at 975.

12  Here, plaintiffs argue that they remain under Wal-Mart's control during layovers. To
13  support their position, plaintiffs cite the 2008 Driver Pay Manual which defines layover time: "A
14  layover is earned when taking a mandatory DOT break and is not paid in conjunction with any
15  other type of pay. The intent is to pay Drivers for layovers taken in the tractor cab." Aurit Dep.
16  Ex 2 at 13. The 2008 Manual further states that any exceptions, such as taking a layover at the
17  driver's residence "must be approved prior to the Layover." *Id*. Additionally, the 2008 Manual
18  states that drivers "should always park [the] tractor in a safe, legal and secure location" and the
19  Tractor Assignment Forms that states drivers are responsible for the safekeeping of the vehicle at
20  all times. Aurit Dep. Ex. 1 at 59; Docket No. 181-2, Ex. E. Similarly, the 2001 Driver Pay
21  Manual states that a layover will not be paid when the driver "takes a layover at their residence"
22  and "any layover at home requires prior management approval." Aurit Dep. Ex. 12 at 13.

23  The intent of the policy, as stated in the 2008 Driver Pay Manual, is for drivers to be paid
24  for layovers when they are taken in the tractor cab. The 2008 and 2001 Manuals explicitly state
25  that layovers are not paid when taken at the driver's residence, without management approval
26  prior to the layover. Aurit Dep. Ex 2 at 13; Ex. 12 at 13. Wal-Mart argues that driver admissions
27  and witness testimony confirm that drivers often left their trucks during layovers to eat at
28  restaurants, hang out with other drivers, exercise, go shopping, or watch movies. Opp. at 18-19

United States District Court
Northern District of California

citing Mitchell Decl. ¶ 18; Suvanto Decl. ¶ 11. While drivers may have been able to leave their trucks to eat a meal, shop, or exercise, the physical location of the layover—inside the tractor cab and not at the driver's residence—was specified and controlled by Wal-Mart. Drivers were not paid for layovers taken at their residences without prior approval from management and the 2008 Manual states that the intent of the policy is for drivers to take the layover in a specific location— inside the tractor cab. Wal-Mart exercised a high level of control over its drivers by specifying the location for a paid layover and prohibiting payment for layovers taken at the driver's residence without prior authorization. The policies described in the Driver Pay Manuals are analogous to the policies enforced upon the employees in *Morrillion*; Wal-Mart's drivers were required to take layovers in "designated places" and were prohibited from taking layovers at their own homes. *See Morrillion*, 22 Cal. 4th at 587 (where an employer required employees "to meet at designated places to take its buses to work" and "prohibit[ed] them from taking their own transportation," the employees were "subject to the control of an employer."). And like the employees in *Bono*, the Wal-Mart drivers were relieved of work duties during layovers and may have engaged in relaxation or taken meals during the layover. *See Bono*, 32 Cal. App. 4th at 972. However, the Manuals restrict the location of the layover to the tractor cab and specifically exclude the driver's residence. The drivers, like the employees in *Bono*, were restricted and directed to specific locations by the policies described in the Manuals. The Court finds that the policies in the Driver Pay Manuals subjected drivers to Wal-Mart's control during layover periods. Under California law, the drivers must be paid for all of the time that they were subject to Wal-Mart's control.

### C. Discretionary Pay

Wal-Mart also argues that its pay policy differs from those discussed in *Armenta*, *Cartenas*, and *Quezada* because GTMs regularly used their discretion to provide separate and additional pay to drivers, and contend that plaintiffs ignore these pay records. Opp. at 3. Wal-Mart cites the GTM declarations to support this argument. For example, Wal-Mart cites the declaration of Robert Mosley, the GTM for the Apple Valley, California distribution center. Mosley Decl. ¶ 4. His declaration cites specific pages of the attached exhibits as examples of

14

instances where drivers received separate pay for fueling, trailer weighing, inspections, and wait time. Mosley describes these as "examples of which I am aware of ways in which Apple Valley management exercised discretion in paying drivers separately for tasks performed in ways that are different than, or go above and beyond, what is set forth in the pay manuals." Mosley Decl. ¶ 4. Wal-Mart also cites the declaration of John Vincent, GTM for the Red Bluff, California distribution center. His declaration cites examples in the attached documents where drivers were awarded additional pay for certain activities, including fueling and weighing the trailer. Vincent Dec., Ex. A at 420, 379, 333, 114.

Plaintiffs contend that the examples of individual discretionary exceptions to the pay Manuals may present factual questions pertaining to the amount of damages an individual driver may be entitled to but have no bearing on the issue of liability for the purposes of this motion. Reply at 5. The Court agrees. That Wal-Mart has identified some examples of instances where drivers were awarded discretionary pay cannot defeat summary judgment as to the issue of whether the pay policies, as enunciated in the Driver Pay Manuals, violate California law. Further, that the pay drivers received in these instances was discretionary indicates that payment for these tasks was a deviation from the standard pay policy. The Court finds that the pay policies detailed in the Manuals violate California wage law by failing to pay drivers at least minimum wage for all of the time they work and GRANTS the motion as to plaintiffs' minimum wage claims.

### IV. Wal-Mart's Good Faith Defense

In their motion, plaintiffs seek summary judgment as to Wal-Mart's eighth affirmative "good faith" defense, arguing that Wal-Mart has refused to respond to Plaintiff's Special Interrogatory No. 16, seeking facts, witnesses or documents to support this defense. Motion at 19. In its opposition, Wal-Mart counters that it has responded to the interrogatory. Opp. at 24 (citing Docket No. 190, Ex. 16). A review of Wal-Mart's cited exhibit reveals that it was submitted April 9, 2015, nearly a month after plaintiffs filed their motion for summary judgment. In their reply plaintiffs do not provide any response to the argument raised in Wal-Mart's opposition. The Court

cannot grant the motion for summary judgment as to Wal-Mart's eighth affirmative defense solely upon the argument offered by plaintiffs, as Wal-Mart has responded to the interrogatory. The Court DENIES the motion as to Wal-Mart's eighth affirmative defense.

## CONCLUSION

The Court GRANTS the motion for partial summary judgment as to plaintiff's minimum wage liability claims and DENIES the motion for partial summary judgment as to Wal-Mart's eighth affirmative defense.

Dated: May 28, 2015

_____
SUSAN ILLSTON
United States District Judge