**GIBSON, DUNN & CRUTCHER LLP**
CATHERINE A. CONWAY, SBN 98366
cconway@gibsondunn.com
JESSE A. CRIPPS, SBN 222285
jcripps@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

**SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PC**
JAMES H. HANSON (admitted *pro hac vice*)
jhanson@scopelitis.com
10 West Market Street, Suite 1500
Indianapolis, IN 46204
Telephone: 317.492.9205
Facsimile: 317.687.2414

Attorneys for Defendant
WAL-MART STORES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RIDGEWAY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a Delaware corporation dba WAL-MART TRANSPORTATION LLC, and Does 1-50, inclusive,<br><br>Defendants. | CASE NO. 3:2008-CV-5221 SI<br><br>**CLASS ACTION**<br><br>**JOINT STATEMENT CONCERNING DISCOVERY DISPUTE** |

Plaintiffs are past and present California-based Wal-Mart truck drivers. On April 18, 2016, Plaintiffs served notices of site inspections of Wal-Mart's Red Bluff, Apple Valley, and Porterville distribution centers requesting to videotape the process of drivers fueling and washing their trucks over a seven-day period from May 21, 2016, to May 27, 2016. (*See* Exhibit A.) Plaintiffs intend to set up a video camera that will be rolling 24-hours per day and will be pointed toward the fueling island and wash bays at each distribution center. Plaintiffs wish to have a videographer present on site with the video camera at all times. Wal-Mart believes the site inspections noticed by Plaintiffs are unwarranted and requests the Court to resolve this dispute between the parties.

WAL-MART'S POSITION:  Plaintiffs' request is not sanctioned by Rule 34:  it does not seek inspection of any property or any object or operation on that property.  *See* Fed. R. Civ. P. 34(a)(2).  Rather, Plaintiffs seek a demonstration of how drivers fuel and wash their vehicles.  But "Rule 34 does not require a party to perform tests or demonstrations for a requesting, opposing party."  *L.H. v. Schwarzenegger*, 2008 WL 782734, at *5 (E.D. Cal. Mar. 20, 2008); *see E.E.O.C. v. Burlington N. Santa Fe R.R.*, 2014 WL 988770, at *2-3 (D. Kan. Mar. 13, 2014) (site inspection to observe job-related tasks improper because it would require a demonstration).  The Federal Rules do not require Wal-Mart to allow the videotaping of employees at work—and while it would not do so, it would be well within its rights to cease all fueling and washing on site during the site visit.  Rule 34 simply does not permit the request Plaintiffs seek here, which is really not an inspection at all.  It is unsurprising that Plaintiffs offer no case law or authority supporting a 24/7 inspection.

Neither of the cases they cite is relevant to the current dispute.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) and *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) involve defendants who were *required* to record time worked and failed to do so.  *Tyson Foods*, 136 S. Ct. at 1042-44; *Anderson*, 328 U.S. at 688.  In those cases, discovery was directed toward remedying the employer's failure to comply with its recordkeeping obligation.  Here, there is no such obligation, as Wal-Mart requires its drivers to log all work time consistent with Federal Motor Carrier Safety Administration regulations.  Moreover, in *Tyson Foods*, the parties *stipulated* to the two-day videotaped site inspections.  *See Acosta v. Tyson Foods, Inc.*, No. 8:08-cv-00086 (D. Neb.) (Dkt. 95) (attached hereto as Exhibit F).  Neither case speaks in any way to a Rule 34 inspection, nor does *Anderson* address videotaped evidence at all.

Even if Plaintiffs' unprecedented week-long site visit was authorized by the Federal Rules, its utility (if any) is outweighed by the unnecessary burdens created by the requested inspections.  *See E.E.O.C. v. U.S. Bakery*, 2004 WL 1307915, at *2 (D. Or. Feb. 4, 2004) ("the degree to which the proposed inspection will assist the moving party and the search for truth must be weighed against the concordant hardships and hazards created by the inspection").

***The proposed inspections are of no utility***.  Plaintiffs have already utilized a process where they have subpoenaed more than 44 drivers to fill out so-called "surveys," which request information

about the frequency and timing of washing and fueling. (ECF 253.) In addition, 40 drivers have provided sworn deposition testimony about their survey answers. This deposition testimony makes clear that a week-long videotape could never capture the extreme differences in practices among class members. For example, driver Charles Fox testified that the number of times he washes his truck per month varies based on the weather, road conditions, and routes driven. Fox Dep. 37:24-38:12. So videotaping a driver who cleans his vehicle in any given week—for example, when it is raining— would not be reflective of any "usual" washing process. *See, e.g.,* Goodman Dep. 67:14-68:4 (washing takes 10-90 minutes depending on method and thoroughness). The same is true of fueling: drivers have testified that "[e]very time [they] fueled, it was different." Lopez Dep. 109:18-20. It varied, for example, with the type of routes driven, as well as with the number of trucks in line at the fuel island. *See* McKee Dep. 60:14-61:9; *see also Burlington N. Santa Fe R.R.*, 2014 WL 988770, at *2-3 (refusing site inspection where "work performed on any given day … varies").

Plaintiffs' requests also have no bearing on their expert report, which was due May 13, 2016 (ECF 242). Yet Plaintiffs noticed the site inspections for the week of May 21. Any argument that the inspections are necessary for their expert report is, at best, implausible.

***The proposed inspections are unnecessarily duplicative***. Because "entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection" is required. *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978). And where, as here, discovery can be—and indeed has been—"obtained through other means that is more convenient or less burdensome," the court should deny an invasive discovery request. *Burlington N. Santa Fe R.R.*, 2014 WL 988770, at *2; *see also Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 659 (C.D. Cal. 2005) (site inspection unwarranted where information could be obtained from other sources).[1]

***The proposed inspections would be unnecessarily burdensome.*** Plaintiffs' unprecedented request for a week of 24-hour site inspections would also significantly disrupt Wal-Mart's business

---

[1] Even if Plaintiffs had not already obtained all the information they need, they offer no explanation as to how the physical features of Wal-Mart's distribution centers have any bearing on their minimum wage claims. This is reason enough to deny their request. *See U.S. Bakery*, 2004 WL 1307915, at *4.

Gibson, Dunn & Crutcher LLP

3
JOINT STATEMENT CONCERNING DISCOVERY DISPUTE                    Case No. 3:08-cv-05221-SI

operations and would pose safety concerns. Not only would Wal-Mart be forced to dedicate employees with other responsibilities to supervise the site inspections, it would also have to ensure the safety of the videographers on its private property day and night. *See Hofmann v. Fifth Generation, Inc.*, 2015 WL 7582425, at *3 (S.D. Cal. Nov. 25, 2015) ("a videotaped site inspection would unnecessarily disrupt Defendant's business operations by requiring supervision and assistance by Defendant's employees"); *U.S. Bakery*, 2004 WL 1307915, at *4 (same). These burdens are particularly pronounced given the "24/7" length of the proposed inspections.[2]

*The requests unreasonably impose on privacy interests affecting non-class members*. Plaintiffs' request to videotape the specified activities also threatens the privacy interests of Wal-Mart employees uninvolved in the litigation. The video will not only capture class members, but will also capture other drivers and employees who are not part of the class. Plaintiffs offer no means by which they would determine the difference between such third-party employees and class members.

In sum, even if the request was permissible under Rule 34, the hardships created by Plaintiffs' requested site inspections clearly outweigh any negligible utility or relevance they might have.

PLAINTIFFS' POSITION: The court has entered partial summary judgment ruling the time class members spend washing and fueling, *inter ilia,* is unpaid. ECF Nos. 211, 286. The issue remaining to be determined is the frequency and duration of the fueling and washing processes.

**Plaintiffs' Site Inspections Are Sanctioned By Fed. R. Civ. Proc. § 34**: The scope of discovery under the Fed. R. Civ. Proc. 26(b) is broad: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 34 grants entry onto property to "inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it. Fed. R. Civ. Proc. 34(a)(2); *Langer v. McHale*, 2014 WL 4922320 at *3 (S.D. Cal. Aug. 6, 2014).

Where the employer fails to keep accurate records, the solution is not to penalize the employee, but to permit the employee to obtain evidence to show the amount and extent of

---

[2] If the Court is inclined to allow video, there are a number of less burdensome options, including allowing Wal-Mart to set up, at Plaintiffs' cost, a camera directed at the fuel islands and wash bays for a specified period of time and then provide that footage to Plaintiffs pursuant to the confidentiality order.

uncompensated work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Potters Co.,* (1946) 328 U.S. 680.  In *Tyson Foods, Inc., v. Bouaphakeo* 136 S. Ct. 1036 (2016), Tyson failed to pay overtime wages for time spent donning and doffing protective equipment.  At trial, Plaintiffs presented representative evidence which included "employee testimony, video recordings of donning and doffing at the plant, and, most important, a study performed by an industrial relations expert, …" *Id.,* at 1043.  The jury awarded the plaintiffs $2.9 million in lost wages and Tyson appealed. *Id.,* at 1044.  The Supreme Court held that the plaintiffs' use of representative evidence filled the evidentiary gap created by Tyson's failure to keep accurate records. *Id.,* at 1047.

**Plaintiffs' Site Inspections Seek Relevant Information.**  Wal-Mart does not keep records sufficient to demonstrate how much time the processes of washing and fueling take.  See, Exhibit "B" Wal-Mart's Supplemental Response to Special Interrogatory Nos. 2 and 8; Exhibit "C" Wal-Mart's Response and Objections to Plaintiffs' Requests for Admission, Set Ten Nos. 179 – 183, 189 – 193.  In addition, Plaintiffs deposed Mr. Antony Fantasia, identified by Wal-Mart in response to Special Interrogatory Nos. 2 and 8, who testified he cannot estimate the frequency and duration of the fueling and washing process.  [Anthony Fantasia 43:17-44:21; 46:17-47:11; 48:2-6; 67:21-68:7, 69:5-23] Relevant portions of Mr. Fantasia's deposition transcript is attached hereto as Exhibit "D".

Plaintiffs' site inspections are designed to obtain information directly relevant to a determination of the frequency and duration of the fueling and washing processes. In *Tyson,* the plaintiffs obtained video observations of 744 donning and doffing events.  The plaintiffs' expert analyzed the video observations to produce an estimate of the average minutes per day spent donning and doffing. *Tyson, supra,* at 1043.  This estimate was used by the jury in awarding damages. *Id.,* at 1044. Here, Plaintiffs intend to use the video to allow Plaintiffs' expert to present an estimate of the time class members spend fueling and washing.

Wal-Mart argues that the 40 class member survey responses and subsequent depositions did not result in the acquisition of representative evidence of the frequency and duration of the fueling and washing process.  Wal-Mart has reserved all rights regarding to the deposition process and expressly objects to the use of information collected in the process in this litigation, "including as to the admissibility of any survey or survey results at trial." ECF No. 252 para. 1.  If Wal-Mart's contention ultimately proves accurate, a site inspection to video the frequency and duration of the fueling and washing processes may well be the only practicable means to collect and present a

representative sample that can be used to calculate aggregate class wide damages. See *Tyson, supra,* at 1046.

**Plaintiffs' Site Inspections Are Not Unnecessarily Burdensome.** Wal-Mart's contention that Plaintiffs' site inspection would disrupt business and pose safety concerns is unsupported by any admissible evidence and lacks merit. The Google Earth aerial views of Wal-Mart's California distribution centers can be found here:

Apple Valley - https://www.google.com/maps/place/Walmart+Distribution+Center/@34.5991323,-117.2011945,139m/data=!3m1!1e3!4m5!3m4!1s0x0:0xb597734d93346f51!8m2!3d34.5975643!4d-117.1980517

Porterville - https://www.google.com/maps/@36.0429974,-119.0179075,123m/data=!3m1!1e3

Red Bluff - https://www.google.com/maps/@40.1098887,-122.19199,140m/data=!3m1!1e3

A cursory review of the aerial views shows that there are numerous safe locations to set up a camera to video the fueling and washing processes. Additionally, Plaintiffs intend to work with Wal-Mart to select a suitable location. Plaintiffs seek a one week site inspection because class members work around the clock and a weeklong inspection will minimize any short term changes in the flow of Wal-Mart's business. A shorter site inspection risks obtaining video of the fueling and washing processes during the busiest and/or least busy time of the work week. Wal-Mart's threat of "cease all fueling and washing on site during the site visit", if carried out, would unreasonably obstruct Plaintiffs discovery.

**Plaintiffs Site Inspections Do Not Unreasonably Impose On Privacy Interests Affecting Non-Class Members.** The parties are bound by a stipulated protective order. ECF No. 90. Any video obtained during the site inspection will be designated "CONFIDENTIAL" and subject to the stipulated protective order. Furthermore, Wal-Mart has already disclosed voluminous information on non-class member drivers. There are approximately 805 class members. Wal-Mart produced summary pay records for 947 drivers of whom 792 are class members; DOT Driver Log data for 788 drivers of whom only 570 were class members, and Trip Detail data for 1484 drivers of whom only 567 were class members. Plaintiffs' expert, Dr. Phillips report at p. 5 a copy of which is attached hereto as Exhibit "E". Plaintiffs do not intend to use the trip and pay data of non-class members for any purpose while keeping it subject to the stipulated protective order. Moreover, Wal-Mart is free to

identify any fueling or washing event that is not conducted by a class member at the time of the site inspection or any time thereafter.

Dated: May 20, 2016                    Respectfully submitted,

                                       GIBSON, DUNN & CRUTCHER LLP

                                       /s/ Jesse A. Cripps
                                       Jesse A. Cripps
                                       Attorney for Defendant
                                       WAL-MART STORES, INC.

                                       I, Jesse A. Cripps, attest that concurrence in the filing of this document has been obtained from the other signatory.


Dated: May 20, 2016                    Respectfully submitted,

                                       WAGNER JONES KOPFMAN & ARTENIAN

                                       /s/ Daniel Kopfman
                                       Daniel Kopfman
                                       Attorney for Plaintiffs and the Class.