# EXHIBIT 2

# EXHIBIT A

DK

G. Michael Phillips, Ph.D.
David T. Fractor, Ph.D.

PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

*Of Counsel*
Dennis Halcoussis, Ph.D.
H. Drew Fountaine, CPA, Ed.D.
Ross S. Selvidge, Ph.D.
William W. Roberts, Ph.D.
David T. Russell, Ph.D.
Robert K. Neff, CPA, ABV
Edward T. Garcia, M.S.
A. Lynn Phillips, M.S.
Sean Chasworth
Steve Klein
George Arzumanyan

**Introduction**

I am G. Michael Phillips, Ph.D., and this document is my initial report pursuant to FRCP Rule 26 of my expert analysis and findings in the matter of *Ridgeway et al v Walmart*. I am a statistician and economist with Phillips, Fractor, and Company, LLC, (PFC), which was retained by Wagner, Jones, Kopfman, and Artenian to perform various data analysis and computational tasks related to the estimation and computation of possible damages in this case.

Besides my affiliation with PFC, I am Professor of Finance, Financial Planning, and Insurance and Director of the Center for Financial Planning and Investment at the David Nazarian College of Business and Economics, California State University, Northridge. I also serve as Chief Scientist for the Center for Computationally Advanced Statistical Techniques (c4cast.com, Inc.) in Pasadena, California. I have had over 50 scholarly articles published, have made more than 80 conference presentations, and have coauthored several books and monographs. In addition, I am co-inventor of approximately two dozen patents primarily regarding various kinds of data analysis, computation, and data presentation methods.

Since I began providing expert services, I have qualified and testified in numerous federal courts, state courts, administrative hearings, and private arbitrations and mediations. From time to time my work has been favorably cited in various opinions and decisions. Recently, one of my co-authored papers was cited by the Duran court regarding potential issues with non-random sampling and non-respondents.

My Ph.D. training is in economics with an emphasis on applied econometrics, the application of mathematics, statistics, computation, and economics particularly to economic and financial data. I have extensive experience in the creation, maintenance, use, and analysis of large databases, particularly using employment related data. I have frequently needed to create and analyze custom databases assembled from disparate corporate and public records. To that end, I have created a team of specialists including database programmers, IT hardware specialists, survey specialists, and other database and research professionals to assist me with such projects.

750 East Walnut Street | Pasadena, CA 91101 | (626) 744-3540 | (626) 744-3530 fax | www.rule26.com



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

Over the years, a few of the "big data" litigation related projects my team and I have performed include an analysis of all the automobile lease documents for a major automotive manufacturer, an analysis of all existing asbestos cases at the time to assess the impact of "market share liability" rules, an analysis of the Hollywood script writers to assess possible age discrimination, and numerous analyses of corporate records regarding compensation, hours worked, and compliance with company policy. In addition, I have analyzed employment and compensation records for the California Employment Development Department (EDD) covering millions of paychecks to California workers and I served as the external assessment consultant for the State of California and U.S. Department of Labor "Performance Based Accountability" reporting system which integrated employment, training, and compensation records across numerous public agencies. I have also created and analyzed numerous large databases as part of my ongoing academic research.

A copy of my curriculum vitae and a list of my court testimony and depositions during the past four years is attached as Appendix A.

This assignment is being performed by my colleagues and me on an hourly basis. We have different rates which are reflected on the invoices. Copies of the engagement letter, invoices, and payment records to date for this case are included as Appendix B. Neither PFC nor I have any financial stake in the outcome of this case. We do not work on a contingency basis.

**The Assignment**

I have been requested to assemble various Walmart corporate records and other data into an analytical database and to analyze it. I was particularly requested to estimate how much time private fleet drivers for Walmart spent performing various activities and then, under various assumptions, to estimate dollar equivalent values for such time and corresponding simple interest charges. We were also asked to compute various penalties that might be determined to apply. These penalty calculations were performed by my associate, Edward T. Garcia, and are summarized at the end of this report. Mr. Garcia's report regarding these penalty calculations can be found in Appendix C. Most of this declaration presents my findings and estimates.



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

My analysis will discuss each of the calculation areas separately. My analysis is such that if it is determined that a particular item in the Complaint is not allowed, then the corresponding estimated value for such an item can be easily removed. Similarly, because my computations are generally done at the individual person level (although also reported in aggregate for convenience), were an individual to be removed from the class for whatever reason it would be a simple matter of subtraction to adjust my computations for the new class membership.

Voluminous documents were provided to me throughout this engagement and it is my understanding that even more may still be provided. File memoranda regarding aspects of the project are attached in Appendix E.

I have been requested by Plaintiffs' Counsel to consider layovers, pre- and post-trip inspections, rest breaks, time spent fueling, wait time, and other activities such as breaks, weighing, washing, CHP/DOT inspections, and driver coordinator meetings as categories for damage computation.

In a perfect world with perfect company records, each of these would be a relatively straightforward computation. In each instance, one would merely identify on each class date how much unpaid time each class member spent on each activity, multiply by the appropriate wage rate, and sum appropriately. Unfortunately, almost no company has perfect records and Walmart appears to be no exception.

Consequently, I have attempted to use such corporate records as were available but I have also needed to use some data obtained through deposition responses and other sources. When adequate company data were not provided to me, I employ a multi-modal approach to provide a range of estimates based on a variety of underlying assumptions. I believe that my analysis, including the multi-modal approach, uses current and appropriate methodology that would be consistent with publication in modern academic journals.

I anticipate that I may perform additional analysis as other data are provided to me. In addition, I have been told that a "Person Most Qualified" deposition may be conducted which might clarify the meaning of various codes and data fields in the company information we have



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

been provided. In addition, I am holding off on performing some particularly intensive and time-consuming computations until after it is apparent that no additional data are forthcoming.

I reserve the right to update or revise my analysis as I become aware of additional relevant information or identify any area where feasible updating or revision is necessary to substantially improve the accuracy or communication of my analysis and reported results.

**Key Data Sources**

A key dataset we were given was a copy of a preliminary class list and a list of opt-outs. We then created a list of class members who had not opted out of participation in the class. There are 805 names on the resulting class list (attached as Appendix F).

In December, 2015, I randomized the 805 names on the class list to create a randomized list for purposes of depositions. I understood that 40 depositions would be initially taken, perhaps to be augmented by other depositions or trial testimony, in case it was needed to use this class member testimony to compute the frequency and duration of various activities.

Copies of these electronic files are included in a hard-disk that functions as an attachment to this report. A listing of files on this disk is included in Appendix G (File name: "Randomized List of Class Member Drivers").

A questionnaire was developed to aid in the deposition questioning of Walmart private fleet drivers regarding their personal estimates of the frequency and duration of various activities they performed as Walmart private fleet drivers. When this questionnaire was created, no other alternative sources were provided to determine the aforementioned information. The questionnaires were initially filled out by the randomly selected deponents which served as a basis for deposition inquiry. During these depositions, responses to the questionnaire were clarified and/or modified. These responses, given during depositions, were then recorded and analyzed to determine the average and the median response given by deponents (Appendix G - File Name "Deposition Responses"). At this writing, we have not received and processed all the scheduled deposition transcripts.



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

The next major set of information we were provided was access to three separate Walmart document storage facilities which contained hundreds of boxes of paper copies of payroll documentation. We created a sampling plan for those document boxes and supervised the random selection of boxes containing approximately 32,411 green-bar and pay files which a service scanned into PDF format (see attached Sean Chasworth Report in Appendix H). We then manually entered key information from those paper records which could have been used as a basis for our calculations in case other company records in fact did not exist or were not forthcoming. Our manual entry of these data began in November and was completed in January 2016 (See Appendix G - File Name "Paper Data Entry Database").

In February, after the deposition process was well underway and after copying and entering the paper-based "greenbar data", we were provided with several electronic data files from Walmart. The coding of deposition answers is discussed later in this document and in greater detail in Appendix E (File Name "Procedure for Documenting Responses to PFC Questionnaires and Depositions").

Our random sample of company records provided pay summary records for 947 drivers of whom 792 were on the class list. These data sampled the period from 5/1/2004 through 7/25/2015.

We were also provided data from an electronic version of driver pay data covering the period 11/4/2004 through 1/12/2016. This electronic file included information on 1,863 drivers of whom 712 were on the class list. Of the 712 on the class list, six class-member drivers, included in this electronic data, did not appear in the sampled pay data. Consequently, there were 86 class-member drivers, in the sampled pay data, who do not appear in the electronic data. Still, the electronic dataset appears to provide information for almost every week for the subset of the class list that it covers.

Other data we were provided include a driver log database ("ET Driver Log") which contained data from 7/12/2013 through 12/31/2015 for 788 drivers of whom 570 were class members, a trip detail database ("Trip Dtl") which contained data from 7/11/2013 through 1/15/2016 for 1,484 drivers of whom 567 were class members, and a GPS database ("Positions") which



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

included information from 11/2/2008 through 1/14/2016 for 812 drivers of whom 585 were class members.

To further complicate matters, these various company electronic records did not have consistent identifiers across the data sets. For most of the class members, we were able to use the information that we manually entered from the paper records to determine which names matched which "driver ID number" or, alternatively, "WIN number", which we were then able to use to extract electronic data just for class members. (The resulting spreadsheet including the combined source data used for analysis had about 48,000,000 rows of data in its largest table. This datafile is "Master Datafile.gsb" on the hard-drive accompanying this report.) Besides the document production, the deposition data, and the manually entered written records sample, we utilize minimum wage information from the State of California which is included in Appendix I.

For some calculations, we incorporate specific assumptions we were asked to maintain which we understand may be established by evidence introduced elsewhere in the case or by experts besides us. Those assumptions are indicated when they are being made.

**Layovers**

The first computation I present is my estimation of the damages from Layovers.

I have been asked by class counsel to assume that a "Layover" takes 10 hours and that drivers are paid $42 for each layover. If drivers should be paid at least minimum wage for time spent in a layover, then for each arrive date for each driver the unpaid component would be calculated as:

Equation 1: $Basic\ Loss = Sum\ of\ Layovers\ \times [(10\ Hour\ Layover \times Minimum\ Wage) - \$42\ Paid\ per\ Layover]$ where the minimum wage varies across time.

An initial estimate for this computation can be obtained using the electronic pay data which reports a number of paid layovers per arrive date. This number was computed for each of the



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

712 class member drivers in the electronic pay data for all the data from 11/4/2004 through 10/15/2015, which we understand to be the end of the class period. This estimate of total unpaid layovers is $25,568,794. Using a 10% simple interest from each date to September 1, 2016, we estimate prejudgment interest to be $15,550,818. The total, aggregated across the 712 drivers, is $41,119,612.

As part of our data quality process, our forensic accounting team worked under my direction to compare a sample of 500 scanned paper files of green-bar data to the corresponding records in the electronic pay data. Details of this analysis is presented in Appendix D. The analysis showed that in almost every case the total amount paid matched between the paper green-bar data and the electronic driver pay data but sometimes the paper data reported more layovers than was reported on the electronic driver pay data records (there were 29,582 class member pay dates sampled; of those just 66 had greater layovers in the electronic file than in the corresponding paper records, but 9,866 had fewer layovers recorded in the electronic file than in the corresponding paper records).

The analysis then recomputed sample pay amounts based on data provided in the green-bar data and the electronic pay data and determined that the pay amounts were consistent with the number of layovers on the paper records rather than the electronic records.

Consequently, we compared all the layover data from the manually entered paper records to the corresponding layover data from the electronic driver pay data and determined that on average there were 8.76% more layovers in the paper records than in the electronic records. This allows a second estimate of driver layover damages by increasing the number of layovers using a factor of 8.76%. Doing this results in estimated total layover damages of $27,808,620 (=1.0876 x $25,568,794) plus $16,913,069 in interest (=1.0876 x $15,550,818) for a total of $44,721,690 after scaling for the average difference in layovers between the two sets of company records. Here, as throughout this report, prejudgment interest is computed as 10% simple interest from each date of loss to September 1, 2016, an assumed date for trial. These interest calculations will be updated if necessary to reflect actual trial dates.

One way to compute a margin of error for this projection is to use a regression method in which the common set of electronic and paper layovers were regressed with a forced zero intercept.



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

The resulting 95% confidence interval for the estimated percentage, expressed as a percentage, was used to compute the estimated margin of error for the layover undercount ratio of 0.17%. An estimate of a 95% confidence interval, about the total loss with interest of $44,721,690, would be from $44,645,663 to $44,797,716. This assumes symmetric distributions. An alternative method is to perform a resampling Monte Carlo analysis to estimate the empirical sampling distribution for the ratio. This method identifies the multiplier as 1.1614 with a margin of error of 0.35%. Using this alternative, the estimated 95% confidence interval would be from $44,165,164 to $44,878,215.

Another adjustment to make is to correct for the under-representation of class members in Walmart's electronic driver pay data provided to us. One way would be to simply scale estimates by (792/706 = 1.1218) but a more accurate way is to compute the ratio of "paper data layovers" for the 792 compared to the "paper data layovers" of the drivers found in both the paper data and the electronic data. This "ratio of layovers" is 1.0535, suggesting that the excluded drivers may have had fewer layovers than the drivers found in both sets of corporate records. Adjusting the first damage estimates to show the value scaled to the 792 class members results in $26,936,724 total layover damages (=1.0535 x $25,568,794) and similarly interest of $16,382,787 (=1.0535 x $15,550,818) for a total of $43,319,511.

Combining both adjustments, for both the larger number of class members in the paper data and the larger number of layovers reported on the paper data, results in $29,296,382 (=1.0535*1.0876*$25,568,794) total layover damages plus $17,817,919 (=1.0535*1.0876*$15,550,818) interest for a total of $47,114,300.

Yet another way to estimate the layover damages is to compute the ratio of the total number of layovers reported in our sampled paper records as a ratio of the corresponding total number in the corresponding electronic records. There were 179,384 layovers in the paper records and 153,344 in the corresponding paper records. The ratio is 1.169814. Multiplying the base "electronic data" layover loss with interest to scale this way results in an estimated loss with interest of $48,102,298. Applying similar +/- 0.17% (or +/- 0.35%) margins of error would also result in an estimate of a 95% confidence interval for damages using this approach. These numbers may also be understating the total number of layovers to the extent that some class members for whatever reason did not appear in the sampled paper records.



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

The above computations are based strictly on the assumption that drivers were paid $42 for each 10 hour layover but should have been paid at least minimum wage for that time, and then evaluated using two different sets of Walmart company data. These calculations did not depend on deposition input or other input from the drivers but were a direct, albeit burdensome, calculation from company records provided by Walmart.

The summary of layover loss calculations using different methods is below:

| Method | Basic Loss | 10% Simple Interest | Total Loss Including Interest |
|---|---|---|---|
| Total Layovers Taken (electronic pay data only) | $25,568,794 | $15,550,818 | $41,119,612 |
| Total Layovers Taken (electronic pay data only) Scaled Up 5.35% for the larger number of class members in the paper data | $26,936,724 | $16,382,787 | $43,319,511 |
| Total Layovers Taken (electronic + class drivers from paper data) | $25,835,055 | $15,747,673 | $41,582,728 |
| Total Layovers Taken Scaled Up 8.76% for extra # of layovers in paper data (electronic pay data only) | $27,808,620 | $16,913,069 | $44,721,690 |
| Total Layovers Taken Scaled Up 8.76% for extra # of layovers on paper data (electronic + class drivers from paper data) | $28,098,205 | $17,127,169 | $45,225,375 |
| Total Layovers Taken Scaled Up 8.76% for extra # of layovers on paper data and 5.35% for the larger number of class members in the paper data (electronic + class drivers from paper data) | $29,296,382 | $17,817,919 | $47,114,300 |
| Total Layovers in Paper Data as Ratio of Class Electronic Pay Data Layovers (corresponding | $29,910,733 | $18,191,564 | $48,102,298 |



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

| dates, but not necessarily in both files on a date); scaled up 16.9814% | | | |
|---|---|---|---|

**Pre- and Post-trip Inspections**

We have been asked to assume that drivers are required to perform a "pre-trip inspection" at the beginning of each driving day and a "post-trip inspection" at the end of each driving day.

Electronic pay data, provided by Walmart, contains information from 11/4/2004 through 10/15/2015 for 712 of the 805 possible class members. Using this dataset, I identified the days each driver worked by looking whether one or more trips were completed on any given arrive date within the class period for each class ember. This estimate of days worked is conservative because it does not include all those dates worked by a driver during which he did not complete a trip (e.g., a trip that takes more than one day to complete). This estimate results in conservative loss calculations for any categories that utilize the number of days worked (e.g., pre-trip inspection, post-trip inspection, and other alternative methods).

Unfortunately, we have not identified any specific message code or other indicator to allow us to directly measure how long employees took for their pre- and post-trip inspections so to estimate the duration of a pre-trip inspection we have several other methods.

The formula used to calculate basic losses for pre- and post-trip inspections is:

Equation 2: $Basic\ Loss = Count\ of\ Class\ Days\ Worked \times$
$Number\ of\ Occurrences\ per\ \mathrm{Day} \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

The number of occurrences per day is assumed to be one, and the minimum wage varies across time.

My first method for estimating the length of a pre-trip inspection is to use 8 minutes per inspection, the length of time on an official Walmart Training Video describing such inspections (VTS_01_1" video file (VOB format) provided in volume two). Unfortunately, I have yet to identify a similar corporate source describing post-trip inspections. Using this approach, for the



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

given 712 class members, I find that the total estimated unpaid pre-trip inspection time, valued at minimum wage, is $953,585 for which $597,374 interest is computed for a total of $1,550,959.

My second method is to assume that pre-trip inspections take 15 minutes and post-trip inspections take 5 minutes apiece. I am informed that other experts may provide such an opinion. Using these assumed values, the total time for pre-trip inspections valued at minimum wage is $1,787,972 for which $1,120,077 interest is computed, for a total of $2,908,048. Correspondingly, post-trip inspections would be valued at $595,991 with $373,359 interest, for a total of $969,349.

A third group of methods is to use an estimate obtained from the 40 deponents. I understand that depositions are still under way, and so we do not yet have all of these deposition responses to code. However, once these are obtained, I anticipate providing a revised calculation including estimates based on those answers along with the corresponding margin of error. Based on an initial review of the respondents that I have been provided to date, I anticipate that the resulting values for pre-trip inspection will be somewhere between the values for 8 minutes and 15 minutes per pre-trip inspection. I anticipate that the resulting values for the post-trip inspections will be between 5 minutes and 12 minutes per post-trip inspection.
Once all the deposition transcripts are completed, the results will need to be processed to determine a representative value from the representative class members. The mean and median are both statistics that I anticipate providing and using as the basis for damage computations. I anticipate using two different versions of the respondents list. One would just include those respondents who appeared at the depositions and provided answers. Another would be to include as "zero time" or "zero instances" those people who were not successfully served following an attempt of service, those who failed to appear after service, and those who appeared but did not provide answers to the deposition questions. A possible third method would be to include those from the sample who were deceased as "zero" though I believe a reasonable argument can be made that the death of possible deponents seems uncorrelated with their answers to questions about frequency and timing and therefore it should not impact the results in either direction to exclude them from consideration. Then, following the proper



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

coding of class list values, computational methods can be used to determine the margins of error or, preferably, the confidence intervals about the resulting estimates.

I offer another computation to assist the court with respect to pre-trip and post-trip inspections, computations for a single minute for each day worked. In the shorter class, a minute per workday is $119,198 when valued at minimum wage, with corresponding prejudgment interest of $74,672 for a total of $193,870 per minute. This figure multiplied by how many minutes per day are attributed to unpaid daily activity provides an estimate of the total lost compensation. As stated earlier, since this calculation involves the number of days worked, these are conservative estimates because they do not include days during which drivers did not complete trips (e.g., a driver completes three trips on day 1 and begins another trip one day 1 which takes him three days to complete, the days worked in this case would be counted as two even though the driver worked four days in this case).

The summary of pre-trip inspection loss calculations using different methods is below:

| Method | Basic Loss | 10% Simple Interest | Total Loss Including Interest |
|---|---|---|---|
| Deposition Average Response | $1,720,029 | $1,077,514 | $2,797,543 |
| Deposition Median Response | $1,489,976 | $933,397 | $2,423,374 |
| Pre-trip Inspection Video (8 minutes) | $953,585 | $597,374 | $1,550,959 |
| Assumed 15 minutes | $1,787,972 | $1,120,077 | $2,908,048 |
| Assumed 1 minute | $119,198 | $74,672 | $193,870 |

The summary of post-trip inspection loss calculations using different methods is below:

| Method | Basic Loss | 10% Simple Interest | Total Loss Including Interest |
|---|---|---|---|
| Deposition Average Response | $1,263,500 | $791,521 | $2,055,021 |



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

| Deposition Median Response | $1,489,976 | $933,397 | $2,423,374 |
|---|---|---|---|
| Assumed 5 minutes | $595,991 | $373,359 | $969,349 |
| Assumed 1 minute | $119,198 | $74,672 | $193,870 |

**Rest Breaks**

I understand that drivers allegedly do not have an activity code for required 10 minute rest breaks and so allegedly are not paid for a 10 minute rest break for every four hours working. The formula used to calculate basic losses for rest breaks when the frequency is given per 10 trips is:

Equation 3: $Basic\ Loss = Sum\ of\ Trips \times (Number\ of\ Occurrences\ in\ 10\ Trips/10) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

The formula when the frequency is given per day is:

Equation 4: $Basic\ Loss = Count\ of\ Class\ Days \times (Number\ of\ Occurrences\ per\ Day) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

An approach to estimate this is to assume that each driver should have at least two 10 minute breaks for every work day. Then, by looking at the number of driver-days worked and multiplying by the value of 20 minutes, valued at the appropriate minimum wage, an estimate for the missed 10 minute breaks is obtained. Doing this for the class members in the electronic pay data results in an estimated value of $2,383,962 with simple interest of $1,493,436 for a total damage estimate of $3,877,398.

An alternative approach can be performed by using the results from the available deponents in a similar fashion to the estimation of time spent on pre- and post- trip inspection. The same caveats apply and I anticipate providing these computations, including confidence intervals, when the data become available. A preliminary computation based on estimating a number of minutes of unpaid rest-breaks per trip, using the number of trips contained within the



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

electronic pay data for class members, produces an estimate between $694,458 and $3,620,571 for the basic loss and simple interest between $427,629 and $2,268,111, for a total damage plus interest for 10 minute rest breaks as reported by the deponents so far of $1,122,087 to $5,888,682. After the collection of data at depositions is complete, I will recompute these damages including confidence intervals and the alternative class list adjustments.

The summary of uncompensated rest breaks loss calculations using different methods is below:

| Method | Basic Loss | 10% Simple Interest | Total Loss Including Interest |
|---|---|---|---|
| Deposition Average Response (per 10 trips) | $1,722,345 | $1,060,574 | $2,782,919 |
| Deposition Median Response (per 10 trips) | $694,458 | $427,629 | $1,122,087 |
| Deposition Average Response (per day) | $3,620,571 | $2,268,111 | $5,888,682 |
| Deposition Median Response (per day) | $3,128,950 | $1,960,134 | $5,089,085 |
| Assumed 2 Per Day and 10 Minutes Each (10-minute rest break every four hours on duty (Walmart Pay Manual, appendix c, WM0016693, page 19)) | $2,383,962 | $1,493,436 | $3,877,398 |

*This table present methods that utilize different frequencies regarding the performance of various activities given by deponents. In response to deposition questions, some deponents provided frequencies per 10 trips, per day, etc.

**Fueling**

We were recently provided with a single month of "GasBoy" data which indicated instances when the included drivers fueled their vehicles at a Walmart location. As an initial estimate, I computed the number of fuelings in that period for class members and compared that to the number of class member trips reported in the Electronic Pay Data for the corresponding period.



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

From that I computed an initial multiple of 4.7 fueling events per 10 trips (an average of .47 fuelings per trip).

On a per-minute basis, using minimum wage for valuation, each unpaid minute spent fueling would be worth $87,039 with an associated $53,596 interest for a total of $140,635.

For now, I was asked to assume that on average it takes at least 15 minutes for a fueling event. Were that the case, the total estimated value of time spent fueling for the subset of drivers in the electronic pay data would be at least $1,305,581 plus $803,942 for a total of at least $2,109,523. Were one to adjust these results for the missing drivers from the electronic pay data, the total damage would be about 8.76% higher, for a total with interest of at least $2,294,318.

As one alternative approach, the available deponent-provided deposition answers regarding the frequency and duration of fueling events. The preliminary answers lead to a range of total damages from about $2,880,023 to about $3,316,452.

As a completely different approach, we considered the total miles driven for each class member available during each trip within the class period and used information regarding fuel capacity. Assuming 7 miles per gallon with the information we were provided about fuel capacity, we determined how many fuelings would be needed if the vehicle was refueled whenever it reached 25% remaining. Using the preliminary deposition responses from the 40 representative deponents for time spent refueling at Walmart with the estimated number of fillings based on average fuel tank capacity and miles driven, I compute that the average loss per minute that it takes for fueling is $49,790 with an additional $31,923 for interest, with a total of $81,713 per minute. If it took an average of 15 minutes for fueling, then the total estimated damage including interest would be $1,225,701. Were one to assume that refueling happened more frequently, perhaps when the tanks were half empty, this estimate would increase.

I have been informed that more complete GasBoy data may be provided and that there may be other information available regarding the amount of time for fueling events. If additional data or different data sources become available, I anticipate recomputing these estimates to reflect the updated or expanded information and I would compute appropriate confidence intervals at



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

that point. In addition, I anticipate finalizing the computations based on the deposition answers of the 40 representative deponents to include confidence intervals and the previously described alternatives after the depositions are completed and I receive and process the transcripts.

The formula used to calculate losses for fueling at Walmart when the frequency is given per 10 trips is:

Equation 5: $Basic\ Loss = Sum\ of\ Trips\ \times (Number\ of\ Occurrences\ in\ 10\ Trips/10) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

The formula used when the frequency is given per week is:

Equation 6: $Basic\ Loss = Count\ of\ Class\ Pay\ Periods\ Worked\ \times (Number\ of\ Occurrences\ in\ \text{a Week} \times 2) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

The formula used when tank capacity and total miles driven are considered is:

Equation 7: $Basic\ Loss = \{\text{Sum of Miles} \div [(Total\ Tank\ Capacity \times Miles\ Per\ Gallon) \times (1 - Assumed\ \%\ of\ Fuel\ Left\ Before\ Refuel)]\} \times (Time\ Spent\ in\ Minutes \div 60) \times Minimum\ Wage$

The miles per gallon is assumed to be seven, and the minimum wage varies across time.

The summary of fueling at Walmart loss calculations using different methods is below:

| Method | Basic Loss | 10% Simple Interest | Total Loss Including Interest |
|---|---|---|---|
| Deposition Average Response (per 10 trips) | $2,052,548 | $1,263,904 | $3,316,452 |
| Deposition Median Response (per 10 trips) | $1,782,443 | $1,097,581 | $2,880,023 |



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

| | | | |
|---|---|---|---|
| Deposition Average Response (per week) | $1,903,122 | $1,198,405 | $3,101,527 |
| Deposition Median Response (per week) | $2,027,105 | $1,276,477 | $3,303,582 |
| Gas Boy Data Average Occurrence and Deposition Response for Average Time Spent | $1,578,883 | $972,234 | $2,551,117 |
| Gas Boy Data Median Occurrence and Deposition Response for Median Time Spent | $1,468,084 | $904,007 | $2,372,092 |
| # of Refuels Considering Average Tank Capacity and 25% Fuel Left Before Refuel and Deposition Response for Average Time Spent | $903,197 | $579,084 | $1,482,281 |
| # of Refuels Considering Median Tank Capacity and 25% Fuel Left Before Refuel and Deposition Response for Median Time Spent | $801,224 | $513,704 | $1,314,928 |
| # of Refuels Considering Average Tank Capacity and 25% Fuel Left Before Refuel and Assumed 1 Minute to Refuel | $49,790 | $31,923 | $81,713 |
| # of Refuels Considering Average Tank Capacity and 25% Fuel Left Before Refuel and Assumed 15 Minutes to Refuel | $746,855 | $478,846 | $1,225,701 |

*Other methods can be found in Appendix G (File Name: "Preliminary Loss Calculations by Sub-Category").

**Other trip based computations**

There are a variety of other trip-based possible damage components including waiting while trucks are loaded, waiting while trucks are unloaded, CHP/DOT inspections, washing the truck, weighing at locations outside of a Walmart facility, fueling outside of a Walmart facility, and adjusting the truck outside of a Walmart facility. In addition, there may be unpaid meetings with coordinators at the beginning and end of trips.

Using the total number of trips from the electronic pay data, a minute per trip valued at minimum wage for those class members in the electronic pay data, is worth $185,189. The



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

corresponding interest is worth $114,034, for a total per minute per trip damage of $299,233. For these particular numbers, equation 3, mentioned earlier, is utilized where the number of occurrences per 10 trips is assumed to be 10 (i.e., one occurrence per trip), and the time spent performing an activity is assumed to be one minute.

If the amount of unpaid time waiting, meeting with driver coordinators, adjusting the truck, and similar trip-based activities amounted to 30 minutes per trip, a number generally consistent with the median deposition results on those of the currently completed deponents, then "other trip based" damages would be $5,555,665 plus $3,421,031 interest, for a total of $8,976,696. As additional representative deponents respond and provide deposition testimony, I anticipate computing each of the above "other trip based" damages separately including confidence intervals and revising these computations.

The presentation of loss calculations for these trip-based categories can be found in Appendix G (File Name: "Preliminary Loss Calculations by Sub-Category").

**Summary of basic damage estimates**

I was asked to consider a wide range of categories for damages and they require a variety of data and assumptions to compute their corresponding values. In the above discussion, I have presented a range of estimates for the various damage components. Some, such as Layover damages, are based entirely on a database that was assembled from corporate records provided by Walmart. Some, such as pre-trip inspections, have a range of estimates based on just corporate data or a blend of corporate data and information from others including representative deponents. The external fueling data is based on one-month of data and partial deponent responses. Others are based on a blend of other company data with deponent responses.

When company data are as poor as these, with inconsistent employee coverage and short time periods, and with no indicators in the data that I am aware of to allow using company data to indicate frequency and duration of numerous activities (e.g., truck washing, CHP/DOT inspections), it may be impossible to provide a precise, accurate, statistical estimate of



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

damages without using a variety of non-Walmart information including deposition answers from representative deponents or testimony from other experts.
That said, I am comfortable with the estimates of layover and pre-trip inspection damages. These have the strongest corporate data, including the training video demonstrating a pre-trip inspection to establish a minimum time to be spent. These two categories sum to $42,670,571 base loss and interest, without using the various multipliers, and $48,665,259 base loss and interest, including the impact of the various multipliers. Similarly, the estimated damage for 10 minute rest breaks seems reasonable, $3,877,398.

The above computations are effectively direct computations from company data rather than statistical projections from samples. The remaining damage categories currently rely on statistical sampling of deponents in addition to extrapolations from company data. It is my opinion that these other estimates are indicative but may be subject to significant change when additional data are obtained or depending on information provided in the future. As additional data become available, I will revise the estimates and compute confidence intervals for the individual and total damage estimates. However, as of now, my estimates of the current total loss for each sub-category are as follows:

| **Total Loss Including Basic Loss and 10% Simple Interest** | | | | |
|---|---|---|---|---|
| **Loss Sub-category** | **Minimum** | **Median** | **Average** | **Maximum** |
| Pre-trip Inspection | $1,550,959 | $2,610,458 | $2,419,981 | $2,908,048 |
| Post-trip Inspection | $969,349 | $2,055,021 | $1,815,915 | $2,423,374 |
| Unpaid Rest Breaks | $1,122,087 | $3,877,398 | $3,752,034 | $5,888,682 |
| Load Truck | $4,039,513 | $6,489,392 | $6,681,696 | $9,708,486 |
| Unload Truck | $2,431,782 | $3,918,705 | $3,999,871 | $5,730,292 |
| CHP/DOT Inspection | $168,313 | $213,134 | $213,134 | $257,954 |
| Washing the Truck | $1,618,081 | $2,550,419 | $2,459,852 | $3,150,820 |
| Weighing Outside Walmart | $412,948 | $819,976 | $812,750 | $1,198,102 |
| Adjustments Outside Walmart | $470,646 | $871,876 | $873,801 | $1,280,807 |



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

| | | | | |
|---|---|---|---|---|
| Fueling at Walmart | $1,225,701 | $2,372,092 | $2,478,513 | $4,446,842 |
| Fueling Outside Walmart | $215,407 | $627,923 | $588,584 | $883,082 |
| Beginning of the Day | $3,438,056 | $3,943,762 | $5,148,125 | $10,712,440 |
| End of the Trip | $1,005,233 | $2,915,002 | $3,633,592 | $7,699,131 |
| Uncompensated Layovers | $41,119,612 | $44,721,690 | $44,455,073 | $48,102,298 |
| **Total** | **$59,787,687** | **$77,986,848** | **$79,332,921** | |
| | | | | **$104,390,358** |

A detailed presentation of all the damage components computed using a variety of statistics obtained from the first representative depositions is included as Appendix G ("File Name: "Preliminary Loss Calculations by Sub-Category").

**Penalties and Statutory Damages**

We were also asked to compute various penalties and statutory damages. For purposes of this report, we have reported penalties based on the 712 identified class members within the electronic pay data as well as an estimation for the 802 uniquely identified class members. Details are provided in Appendix C but the totals are as follows:

| Based on Minimum Total Loss Estimate | | |
|---|---|---|
| **California Labor Code** | **Minimum** | **Maximum** |
| | | |
| *712 Class Members within Electronic Pay Data* | | |
| California Labor Code § 203, Waiting Time Penalties | $1,978,705 | $2,826,721 |
| California Labor Code § 1197.1, Underpayment Penalties | $28,893,650 | $31,740,950 |
| California Labor Code § 1194.2, Liquidated Damages | $59,787,687 | $59,787,687 |
| **Total** | **$90,660,042** | **$94,355,358** |
| | | |

- 20 -



PHILLIPS, FRACTOR & COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

| | | |
|---|---|---|
| *Estimation to 802 Identified Class Members* | | |
| California Labor Code § 203, Waiting Time Penalties | $2,233,733 | $3,191,047 |
| California Labor Code § 1197.1, Underpayment Penalties | $32,986,400 | $36,564,950 |
| California Labor Code § 1194.2, Liquidated Damages | $59,787,687 | $59,787,687 |
| **Total** | **$95,007,820** | **$99,543,684** |

| **Based on Median Total Loss Estimate** | | |
|---|---|---|
| **California Labor Code** | **Minimum** | **Maximum** |
| | | |
| *712 Class Members within Electronic Pay Data* | | |
| California Labor Code § 203, Waiting Time Penalties | $1,978,705 | $2,826,721 |
| California Labor Code § 1197.1, Underpayment Penalties | $28,893,650 | $31,740,950 |
| California Labor Code § 1194.2, Liquidated Damages | $77,968,848 | $77,968,848 |
| **Total** | **$108,841,203** | **$112,536,519** |
| | | |
| *Estimation to 802 Identified Class Members* | | |
| California Labor Code § 203, Waiting Time Penalties | $2,233,733 | $3,191,047 |
| California Labor Code § 1197.1, Underpayment Penalties | $32,986,400 | $36,564,950 |
| California Labor Code § 1194.2, Liquidated Damages | $77,968,848 | $77,968,848 |
| **Total** | **$113,188,981** | **$117,724,845** |

| **Based on Average Total Loss Estimate** | | |
|---|---|---|
| **California Labor Code** | **Minimum** | **Maximum** |
| | | |
| *712 Class Members within Electronic Pay Data* | | |

PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

| | | |
|---|---:|---:|
| California Labor Code § 203, Waiting Time Penalties | $1,978,705 | $2,826,721 |
| California Labor Code § 1197.1, Underpayment Penalties | $28,893,650 | $31,740,950 |
| California Labor Code § 1194.2, Liquidated Damages | $79,332,921 | $79,332,921 |
| **Total** | **$110,205,276** | **$113,900,592** |
| | | |
| *Estimation to 802 Identified Class Members* | | |
| California Labor Code § 203, Waiting Time Penalties | $2,233,733 | $3,191,047 |
| California Labor Code § 1197.1, Underpayment Penalties | $32,986,400 | $36,564,950 |
| California Labor Code § 1194.2, Liquidated Damages | $79,332,921 | $79,332,921 |
| **Total** | **$114,553,054** | **$119,088,918** |

| **Based on Maximum Total Loss Estimate** | | |
|---|---:|---:|
| **California Labor Code** | **Minimum** | **Maximum** |
| | | |
| *712 Class Members within Electronic Pay Data* | | |
| California Labor Code § 203, Waiting Time Penalties | $1,978,705 | $2,826,721 |
| California Labor Code § 1197.1, Underpayment Penalties | $28,893,650 | $31,740,950 |
| California Labor Code § 1194.2, Liquidated Damages | $104,390,358 | $104,390,358 |
| **Total** | **$135,262,713** | **$138,958,029** |
| | | |
| *Estimation to 802 Identified Class Members* | | |
| California Labor Code § 203, Waiting Time Penalties | $2,233,733 | $3,191,047 |
| California Labor Code § 1197.1, Underpayment Penalties | $32,986,400 | $36,564,950 |
| California Labor Code § 1194.2, Liquidated Damages | $104,390,358 | $104,390,358 |
| **Total** | **$139,610,491** | **$144,146,355** |

PLTFEXPERTDESIGNATION000022

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

**Anticipated Additional Computations**

It is my understanding that discovery in this case may continue for several months. I reserve the right to revise this report as additional data is provided or as I become aware of information that would change my calculation methodology or assumptions. I anticipate performing additional computations to complete the statistical description of the representative deponent information from their depositions, including appropriate confidence intervals on any extrapolations, and to incorporate that information into relevant damage calculations. In addition, any other data provided for my additional analysis, such as additional GasBoy data, may lead to revisions to the estimates in this report and additional computations to complete the statistical analysis including confidence intervals as appropriate.

**Other Team Members**

I have been assisted on this analysis and report by several of my professional colleagues at Phillips, Fractor and Co., LLC, and they have provided their own detailed reports covering technical aspects of the process that they performed under my general direction which are included in the appendices to this report.

Signed this 11th day of May, 2016, in Pasadena, California,

G. Michael Phillips, Ph.D.



PHILLIPS,
FRACTOR
& COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

**Appendices**

Appendix A – CV, testimony list
Appendix B – Engagement letter, invoices, payments
Appendix C – Edward T. Garcia Report
Appendix D – Data Quality Analysis
Appendix E – Memoranda
Appendix F – A List of Class Members
Appendix G – A List of Documents Produced by Phillips, Fractor & Company, LLC
Appendix H – Sean Chasworth Report
Appendix I – Minimum Wage Information from the State of California