# EXHIBIT 3

Case 3:08-cv-05221-SI   Document 366-3   Filed 07/29/16   Page 1 of 18

G. Michael Phillips, Ph.D.
David T. Fractor, Ph.D.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

*Of Counsel*
Dennis Halcoussis, Ph.D.
H. Drew Fountaine, CPA, Ed.D.
Ross S. Selvidge, Ph.D.
William W. Roberts, Ph.D.
David T. Russell, Ph.D.
Robert K. Neff, CPA, ABV
Edward T. Garcia, M.S.
A. Lynn Matthews, M.S.
Sean Chasworth
Steve Klein
George Arzumanyan

**Introduction**

This document is a supplement to the initial report of G. Michael Phillips, Ph.D., containing my expert analysis and findings in the matter of *Ridgeway et al v Walmart*. The underlying report was signed May 11, 2016. Like my original report, this supplement is submitted pursuant to FRCP Rule 26.

My qualifications and background, billing rates, original assignment, and similar information were provided in my initial report and are unchanged at this writing. An updated copy of my curriculum vitae and a list of my court testimony and depositions during the past four years is attached as Appendix A. This assignment is being performed by my colleagues and me on an hourly basis. We have different individual rates which are reflected on the invoices. Copies of the engagement letter, invoices, and payment records to date for this case are included as Appendix B. Neither Phillips, Fractor & Company, LLC (PFC) nor I have any financial stake in the outcome of this case. We do not work on a contingency basis.

**The Reason for this Supplemental Report**

Since my original report was prepared, the remaining deposition transcripts from the 40 class member depositions were provided to me, allowing the preparation of a dataset of deposition responses regarding frequency and duration of various events associated with loss computations in my report. These additional transcripts were anticipated, and extensive analysis previously described but not performed is now completed, resulting in extended analysis for those loss computations that could rely on deposition testimony as an information source.

Also during this time, electronic payroll data ("Table D data") was produced for the more than 10% of the original class list who were originally left out and two large additional datasets were also produced, a "GasBoy data" file that documents the frequency of on-site fueling, and approximately 1,200 "DOT Inspection" PDFs of various formats that provide documentation of the frequency, and duration, of DOT inspections.

750 East Walnut Street | Pasadena, CA 91101 | (626) 744-3540 | (626) 744-3530 fax | www.rule26.com



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

Subsequent to my earlier report, 42 additional class members were identified and selected data was provided for most of those drivers. Finally, one additional driver previously in my computations was removed from the class and so is not included in the estimates presented in this report. This supplemental analysis incorporates the more complete company records that have been provided and provides more complete coverage of the expanded class.

My supplemental report does not replace my original analysis. Rather, it extends the analysis to incorporate the additional information and data we have been provided so far as it has been possible to do so. Even so, the original report still reflects the data and assumptions available at the time it was submitted.

Along with this supplemental report, my associate Edward T. Garcia has updated the various penalty calculations he previously provided. His supplemental report is attached as Appendix D to this report. His findings are summarized at the end of this report.

This supplement discusses each of the loss areas separately. My analysis is such that if it is determined that certain losses are disallowed, then the corresponding estimated value for such an item can be easily removed.

Computations are made at the individual level and then aggregated. Where appropriate, 95% confidence intervals based on empirical sampling distributions are provided for aggregated loss and individual losses. It is worth noting that it is statistically unlikely that everybody would fall at the lower, or upper, end of their individual confidence intervals at the same time; therefore, it is statistically inappropriate to attempt to aggregate the individual confidence intervals to obtain an aggregate 95% confidence interval. Similarly, it is worth noting that while individual confidence intervals may be quite large, the 95% confidence intervals for the aggregate losses tend to be tighter.

If for some reason an individual included in these aggregated loss computations needs to be removed from the class aggregate losses, it is appropriate to simply subtract the individual's "mean value" for the specific loss from the aggregate.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

As in the original report, losses can be associated with different observation frequencies. This report has various calculations based on days, pay periods, weeks, months, years, trips, and layovers taken.

Appendix C presents values of possible losses, valued using minimum wage, for 1 hour of uncompensated activity per unit of time for various measures of time (e.g., 1 hour per day, 1 hour per trip). These data are presented at the individual and aggregate level and represent each individual's unique experience as reflected in the payroll data we were provided. They also incorporate changes in California's minimum wage as appropriate. As in the original report, the simple interest computations are provided assuming 10% simple interest. The Appendix C results could be used as the basis for loss estimates or loss scenarios besides those otherwise covered in my report.

Voluminous documents were provided to me throughout this engagement. Those available in May when my underlying report was filed were previously provided. Additional data we were provided by the defendant is reference throughout this report. File memoranda regarding data tables we created or other data we relied upon are attached in Appendix E.

I reserve the right to update or revise my analysis as I become aware of additional relevant information or identify any area where feasible updating or revision is necessary to substantially improve the accuracy or communication of my analysis and reported results.

**Key Data Sources**

At this writing, I am aware of 847 individuals on the class list. Of those, we were able to match driver IDs for 839 drivers. We have "Table D" data for 828 individuals. An additional individual has limited data from the randomly sampled and entered paper copies of Green Bar data discussed in my original report. There remain seven drivers from the original class list for whom we do not have payroll data and three of the newly added drivers for whom we do not have electronic payroll data nor were they in our sampled records. Computations and estimates in this supplemental report are based on the actual electronic or sampled data that we have been provided. Those drivers who are only present in the sampled data only are



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

counted for losses to the extent that we have documentation in the sampled data. Those who are not in either the sampled or electronic data are not included in loss computations.

The various estimates of the amount of unpaid time spent on various activities also rely on estimates or assumptions regarding the frequency at which the activities take place and then the duration of such activities when they do occur. If the activities were identifiable from individual company data provided to us, that would be our first choice for computation. However, after extensive analysis of the company data we were provided, I was unable to find individual frequency and duration data for the items I have been asked to analyze and therefore am using estimates or assumptions regarding the frequency and duration parameters.

There are various sources for these frequency and duration parameters but many are based on deposition testimony from 40 randomly selected deponents selected from the original class list. The deposition process was discussed in my original report but at that time the deposition data was incomplete. According to documents regarding the scheduling and completion of class member depositions, included as Appendix F, it was necessary to attempt to contact two or three drivers for each one who was deposed. Observed job characteristics of those who were deposed were not statistically different from those on the randomized list who were not deposed. I have no evidence of any systematic bias in the selection of deponents and it is my opinion that the 40 who were deposed are a random sample of the original class list.

In the depositions, a questionnaire was initially provided before deposition questioning began. Many of the deponents answered a selection of these questions. In most of the depositions, questioning was conducted regarding the same topics as on the questionnaire. Appendix G documents how these depositions were coded. For this analysis, I am using a "hybrid answer", which is the final deposition answer if a topic was covered in deposition questions, or the questionnaire answer if the topic was not addressed in the deposition questioning or if the deposition testimony did not change the questionnaire answer. The documentation includes excerpts from individual depositions and details regarding what was coded for each deponent.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

Following the creation of the deposition database, an additional statistical analysis was conducted to determine whether there was a statistical basis for treating drivers from different domiciles differently in terms of their estimated parameters. For most of the activities considered, there were no statistical differences between domiciles but domicile was important for both the number of times refueling at Walmart or outside Walmart per 10 trips, the number and length of beginning meetings, the number of loadings per 10 trips, and the number and length of rest breaks.

When the deposition testimony was included in loss computations, a statistical method known as "resampling", which is a form of "bootstrapping", as part of a type of stochastic simulation known in the scientific literature as a "Monte Carlo" simulation. Such computationally intensive simulations are widespread in statistical and scientific analysis and represent modern scientific practice. In this application, individual losses are calculated many times (in this instance 1,000 iterations per person per scenario) where each iteration is allowed to vary randomly according to the distribution of answers from the deposition.

Heuristically speaking, the deposition values for a given topic are put in a computer bucket. The first class member is examined. If the class member was a deponent who provided an answer, then that value is used for that person's calculations. If the class member did not provide a deposition answer, then one of the deposition answers is sampled, with replacement, and used for that iteration for that person. After all the class members' individual values are computed, they are summed to become the aggregate value for that iteration.

All the iterations for each person and the aggregate are kept in another computer bucket and at the end of the simulation, the average value of the 1,000 trials is computed; that is the point estimate of losses for each individual and for the aggregate. Of the 1,000 trials, the trials are ranked from the smallest outcome to the largest and then the 25th and 975th observations are separately reported as the 95% confidence interval; of the 1,000 trials, 95% of the iteration results are between these two values.

Subsequent to my original report, we have been provided with "GasBoy data" from January, 2012, through December, 2015. Our procedure to match drivers to the GasBoy data is discussed in Appendix I. From this dataset, we were able to determine for those drivers



**ECONOMICS / STATISTICS / FINANCE**
**CONSULTING / RESEARCH / TESTIMONY**
A Limited Liability Company

included in the dataset estimates of how often they fueled at a Walmart facility. The resulting individual rates were used in a resampling procedure similar to that used for deposition answers.

We also were recently provided 1,199 scanned paper documents regarding DOT inspections. We were able to match records to driver IDs for 355 drivers, of whom 301 were class members. Inspection records were provided from the period August 21, 2012 through June 16, 2016 (although we only used data through October 15, 2015). This date range included approximately 997 inspections, with only one inspection occurring during 2014. This database creation is discussed in Appendix J. We were able to use the resulting class-member database in a resampling procedure similar to that used for deposition answers.

Finally, there are various assumptions used in calculations that are described in their respective loss area.

Most of the remainder of this report will parallel my original report and will present aggregate loss computations for each loss category. Values at the individual level are included in Appendix K.

**Layovers**

The first computation I present is my estimation of the losses from Layovers.

I have been asked by class counsel to assume that a "Layover" takes 10 hours and that drivers are paid $42 for each layover. If drivers should be paid at least minimum wage for time spent in a layover, then for each arrive date for each driver the unpaid component would be calculated as:

Equation 1: $Basic\ Loss = Sum\ of\ Layovers \times [(10\ Hour\ Layover \times Minimum\ Wage) - \$42\ Paid\ per\ Layover]$ where the minimum wage varies across time.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

A basic estimate for this computation can be obtained using the electronic pay data which reports a number of paid layovers per arrive date. This number was computed for each of the 828 class member drivers in the electronic pay data for all the data from 11/4/2004 through 10/15/2015, which we understand to be the end of the class period. In addition, computations were also performed for class drivers in our paper sample but not in the electronic data; no attempt was made to extrapolate these observed paper Green Bar data to other periods. This direct computation of total unpaid layovers is $29,105,865.

Using a 10% simple interest from each date to September 1, 2016, we compute prejudgment interest to be $17,705,943. The total, aggregated across the 829 (=828 electronic data + 1 sampled data) drivers, is $46,811,808. Individual computations are in Appendix K.

We previously identified that the layover data in the manually entered paper records, when compared to the corresponding electronic driver pay data, sometimes had greater number of layovers reported per pay period than in the corresponding electronic records. That ratio was recomputed using data for the 828 drivers and for every driver-paydate where there was both a paper "Green Bar" and an electronic "Table D" record. The average ratio across drivers was 1.077297, and the ratio of the total layovers in these paper records to the total layovers in the corresponding electronic records was 1.088191.

Multiplying the basic loss estimate from Equation 1 by 1.077297 results in a basic loss of $31,355,661 and simple interest of $19,074,559 for a total loss of $50,430,220. Multiplying the basic loss estimate from Equation 1 by 1.088191 results in a basic loss of $31,672,740, simple interest totaling $19,267,448, for a total of $50,940,188.

The above computations are based strictly on the assumption that drivers were paid $42 for each 10-hour layover but should have been paid at least minimum wage for that time, and then evaluated using the Walmart "Table D" electronic data for 828 drivers and our sampled paper data for 1 additional driver.

These calculations did not depend on deposition input or other input from the drivers but were a direct calculation from company records provided by Walmart.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

**Pre- and Post-Trip Inspections**

We have been asked to assume that drivers are required to perform a "pre-trip inspection" at the beginning of each driving day and a "post-trip inspection" at the end of each driving day.

Using the payroll records we were provided, I identified the days each driver worked by looking at whether one or more trips were completed on any given arrive date within the class period for each class member. This estimate of days worked is conservative because it does not include any dates worked which did not include completing a trip (e.g., a trip that takes more than one day to complete). This approach results in conservative loss calculations for any categories that utilize the number of days worked (e.g., pre-trip inspection, post-trip inspection, and other alternative methods).

The formula used to calculate basic losses for pre- and post-trip inspections is:

Equation 2: $Basic\ Loss = Count\ of\ Class\ Days\ Worked \times Number\ of\ Occurrences\ per\ Day \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

We use individual class days worked to compute individual loss estimates. We remain unaware of any specific message codes or other indicators in the data we were provided which would allow us to directly measure how long employees took for their pre- and post-trip inspections. Consequently, we use the resampling approach to use the deposition responses from the randomly selected deponents as a source for duration data for these computations. We use individual class days worked to compute individual loss estimates. The number of occurrences per day is assumed to be one, and the minimum wage varies across time.

Using the updated data, I find a basic aggregate loss for pre-trip inspections (the beginning of the day inspections) to be $1,926,191, with simple interest of $1,206,942, and a total loss of $3,133,133.



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

Similarly, for post-trip inspections, I find a basic loss of $1,465,078 and simple interest of $917,945, and a total loss of $2,383,023.

As a first alternative, we recomputed pre-trip losses assuming that pre-trip inspections took a minimum of 8 minutes per day as discussed in my previous report. This resulted in $1,089,263 as the basic loss, with $682,139 simple interest, for a total loss of $1,771,402.

As a second alternative, I assume that pre-trip inspections take 15 minutes and post-trip inspections take 5 minutes apiece. I am informed that other experts may provide such an opinion. The 15 minutes per day results in an estimate of $2,042,367 basic loss, with simple interest of $1,279,011, for a total of $3,321,378. The 5 minutes per day results in an estimate of $680,789 basic loss, with simple interest of $426,337, for a total of $1,107,126.

For convenience, a single minute per day loss would equate to $ 226,930 basic loss, with $142,112 simple interest, for a total loss per minute of $369,042.

**Rest Breaks**

I understand that drivers allegedly do not have an activity code for required 10-minute rest breaks and so allegedly are not paid for a 10-minute rest break for every four hours working.

The formula when the frequency is given per day was given in my first report as

Equation 4: $Basic\ Loss = Count\ of\ Class\ Days \times (Number\ of\ Occurrences\ per\ Day) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

For this computation, I assume that each driver should have at least two 10 minute breaks for every work day. Then, by looking at the number of driver-days worked and multiplying by the value of 20 minutes, valued at the appropriate minimum wage, an estimate for the missed 10 minute breaks is obtained. Doing this for the class members in the electronic



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

pay data results in an estimated value of $2,723,156 with simple interest of $1,705,348 for a total loss estimate of $4,428,504.

The formula used to calculate basic losses for rest breaks when the frequency is given per 10 trips is:

Equation 3: $Basic\ Loss = Sum\ of\ Trips \times (Number\ of\ Occurrences\ in\ 10\ Trips/10) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$

Using the deposition data regarding frequency and duration of rest breaks results in a basic loss of $2,500,627 with interest of $1,537,631 for a total of $4,038,258.

**Fueling in Walmart Facilities**

Subsequent to my previous report, we were provided a large amount of "Gas Boy " data providing selective information for fueling at Walmart sites between January, 2012, and the end of the class period. These data were matched to drivers and converted into a database as described in Appendix I.

Actual fueling rates were used for those drivers included in the database. These rates were resampled in a Monte Carlo simulation to estimate corresponding fueling rates for drivers not included in the Gas Boy data we were provided.

This loss computation is made according to

Equation 5: $Basic\ Loss = Sum\ of\ Trips \times (Number\ of\ Occurrences\ in\ 10\ Trips/10) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage$ .

With the updated data, I use the Gas Boy data to provide estimates of occurrences in 10 trips and each individual driver's actual experience for the sum of trips portion of the computation. To estimate the time spent in minutes fueling, I use deposition answers in a



PHILLIPS, FRACTOR & COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

resampling Monte Carlo simulation. I also compute losses assuming that fueling takes 1 minute so that the resulting estimates could be used for finding the total losses for other duration assumptions.

Using the deposition estimates of duration, I find a basic fueling loss of $1,482,755, with simple interest of $915,067. The total estimated loss is $2,397,823. Alternatively, assuming a 1-minute duration with frequency obtained from the Gas Boy data results in a total basic loss for the class of $373,241 per minute, with simple interest of $229,501 per minute, for a grand total of $602,742 for each minute average duration for fueling.

Another approach is to use the deposition estimates of duration and frequency, applying

Equation 6: $Basic\ Loss = Count\ of\ Class\ Pay\ Periods\ Worked \times (Number\ of\ Occurrences\ in\ \text{a Week} \times 2) \times (Time\ Spent\ in\ Minutes/60) \times Minimum\ Wage.$

Using the updated data results in an estimated basic total loss for the class of $2,224,055 with simple interest of $1,399,877, for a total loss of $3,623,932.

**Loading and Unloading**

Deposition data was provided regarding the duration and frequency of waiting for loading per ten trips. Deposition answers were coded to exclude estimates of "live loads" for which we understand compensation was already provided. Appendix H demonstrates that there were statistical differences between domiciles regarding loading. Consequently, a resampling Monte Carlo simulation was performed for loading, but treating each of the three major domiciles separately. A fourth category of class members, not associated with one of those three domiciles, were assigned values from the entire collection of responses across domiciles.

Using this method, the basic loss is $7,499,793, with total interest of $4,616,941. The total estimated loss is $12,116,734. In contrast, if the analysis was performed not considering



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

domicile differences, the basic loss is $2,536,661 with $1,560,279 simple interest and total losses of $4,096,941. An alternative set of answers addressed loading on a per week basis. Using that approach, the basic loss is $5,883,277 with interest of $3,702,396 and a total loss of $9,585,673.

There was not a statistically significant domicile effect in the unloading data. Using the deposition testimony regarding unloading per ten trips results in basic loss of $2,940,195 with interest of $1,806,283 and a grand total of $4,746,478. An alternative is computed using the per week testimony which leads to a basic loss of $1,438,750 and interest of $905,026 for a total loss of $2,343,776.

## CHP/DOT Inspections

Subsequent to the initial report, I was provided with the DOT inspection data described above. Using that data in a resampling simulation resulted in an estimate of basic loss of $6,961 and interest of $4,378 for a total damage of $11,339.

## Washing the Truck

I have been told that other testimony indicates that Walmart trucks should be washed a minimum of one time per week. Using that with the deposition responses regarding how long it takes for a truck-wash, results in an estimate of basic loss of $1,100,663 with interest of $693,568 for a grand total of $1,794,231. If instead one uses both the duration and frequency data from deposition testimony, again in a resampling Monte Carlo simulation, the result is a basic loss of $1,917,150 with interest of $1,209,433 for a total of $3,126,583.

## Weighing Outside of Walmart

Deposition testimony addressed the number of times per month that trucks were weighted outside of Walmart facilities. Using those data regarding frequency and duration results in a basic loss of $790,573 with interest of $498,107 for a total of $1,288,680.



ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

**Adjustments Outside of Walmart**

Deposition testimony describes the duration and frequency of truck adjustments outside of Walmart facilities. Using those data in a resampling Monte Carlo simulation, provides a basic loss estimate of $972,671 with interest of $598,693 for a total of $1,571,364.

**Fueling Outside of Walmart Facilities**

Deposition testimony is available regarding the frequency and duration of fueling outside of Walmart facilities. As described in Appendix H, there is a statistical difference in these values across domicile. Using a resampling Monte Carlo simulation incorporating domiciles results in an estimate of basic loss from fueling outside of Walmart facilities of $707,487, with $440,512 interest, for a total of $1,147,999. Deposition testimony regarding outside fueling per month was also available. Using those data provides estimates of basic loss of $436,735 with interest of $275,062 for a total loss of $711,797.

**Beginning of the Day/End of the Day (Driver Coordinator Meetings)**

Deposition testimony addresses beginning of the day driver coordinator meetings. The data for "beginning of the day" (per ten trips) statistically varied by domicile.   Using the "beginning of the day" deposition testimony, considering domiciles, results in an estimate of basic loss of $2,042,020 with interest of $1,260,799 for a total loss of $3,302,819.   Using the "beginning of the day driver coordinator meetings" (per week) results in an estimate of basic loss of $4,209,329 with total interest of $2,647,772 for a total of $6,857,101.

Data were also provided regarding "end of the day driver coordinator meetings". The "per week" version of these data result in an estimate of basic loss of $3,486,986 with $2,265,510 interest for a total of $5,852,496. The "per ten trips" version of the "end of the day driver coordinator meetings" data result in an estimate of basic loss of $1,717,922 with interest of $1,055,833 for a total of $2,773,755.



# PHILLIPS, FRACTOR & COMPANY, LLC

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

**Summary of Basic Damage Estimates**

Detailed information, including confidence errors where appropriate, and estimates at the individual driver level, are provided in Appendix K. A summary of aggregate class damages is below. The table shows the lowest, highest, and the average estimates for each category.

| Total Loss Including Basic Loss and 10% Simple Interest | | | |
|---|---|---|---|
| **Loss Sub-category** | **Minimum** | **Maximum** | **Average** |
| Pre-trip Inspection | $1,107,126.03 | $3,321,378.09 | $2,333,259.77 |
| Post-trip Inspection | $2,383,022.74 | $2,383,022.74 | $2,383,022.74 |
| Unpaid Rest Breaks | $4,038,258.45 | $4,428,504.12 | $4,233,381.29 |
| Load Truck | $4,096,940.52 | $12,116,733.87 | $8,599,782.53 |
| Unload Truck | $2,343,775.54 | $4,746,478.19 | $3,545,126.87 |
| CHP/DOT Inspection | $11,339.10 | $11,339.10 | $11,339.10 |
| Washing the Truck | $1,794,231.87 | $3,126,583.72 | $2,460,407.80 |
| Weighing Outside Walmart | $1,288,679.80 | $1,288,679.80 | $1,288,679.80 |
| Adjustments Outside Walmart | $1,571,364.30 | $1,571,364.30 | $1,571,364.30 |
| Fueling at Walmart | $602,741.71 | $3,623,931.95 | $2,208,165.53 |
| Fueling Outside Walmart | $711,796.77 | $1,147,999.18 | $929,897.98 |
| Beginning of the Day | $3,302,819.64 | $6,857,101.25 | $5,079,960.44 |
| End of the Trip | $2,773,754.66 | $5,852,496.03 | $4,313,125.34 |
| Uncompensated Layovers | $46,811,807.96 | $50,940,188.12 | $49,394,071.98 |
| **Total** | **$72,837,659.09** | **$101,415,800.45** | **$88,351,585.46** |



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

## Penalties and Statutory Damages

Because the class size has changed and because basic loss estimates have been revised, various penalty calculations have also been revised by my associate, Ed Garcia. The following table summarizes the various penalty calculations. Details are provided in Appendix D which contains his updated report.

| Based on Minimum Total Loss Estimate | | |
|---|---|---|
| California Labor Code | Minimum | Maximum |
| California Labor Code § 203, Waiting Time Penalties | $2,420,626 | $3,458,038 |
| California Labor Code § 1197.1, Underpayment Penalty | $32,846,900 | $36,128,300 |
| California Labor Code § 1194.2, Liquidated Damages | $72,837,659 | $72,837,659 |
| Total | $108,105,185 | $112,423,997 |

| Based on Maximum Total Loss Estimate | | |
|---|---|---|
| California Labor Code | Minimum | Maximum |
| California Labor Code § 203, Waiting Time Penalties | $2,420,626 | $3,458,038 |
| California Labor Code § 1197.1, Underpayment Penalty | $32,846,900 | $36,128,300 |
| California Labor Code § 1194.2, Liquidated Damages | $101,415,800 | $101,415,800 |
| Total | $136,683,327 | $141,002,138 |

| Based on Average Total Loss Estimate | | |
|---|---|---|
| California Labor Code | Minimum | Maximum |
| California Labor Code § 203, Waiting Time Penalties | $2,420,626 | $3,458,038 |
| California Labor Code § 1197.1, Underpayment Penalty | $32,846,900 | $36,128,300 |
| California Labor Code § 1194.2, Liquidated Damages | $88,351,585 | $88,351,585 |
| Total | $123,619,112 | $127,937,923 |



**PHILLIPS, FRACTOR & COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

**Anticipated Additional Computations**

It is my understanding that discovery in this case may continue. Any additional information provided to me, including the results of additional discovery or document production, might lead to revisions to this report. I reserve the right to revise this report as additional data is provided or as I become aware of information that would change my calculation methodology or assumptions.

Signed this 12th day of June, 2016, in Pasadena, California,

_____
G. Michael Phillips, Ph.D.

# Table of Contents for Appendices

**Appendix A – CV, Testimony List**

**Appendix B – Invoices, Payments**

**Appendix C – Table: Value of Losses at Minimum Wage for 1 Hour of Uncompensated Activity per Unit of Time**

**Appendix D – Edward T. Garcia Supplemental Report**

**Appendix E – A List of Files Produced by PFC**

**Appendix F – Scheduling and Completion of Class Member Depositions**

**Appendix G – Memo re Procedure for Documenting Responses to PFC Questionnaire and Depositions**

**Appendix H – Variation of Activity Frequency and Duration by Domicile**

**Appendix I – Memo re Gas Boy Driver Matching**

**Appendix J – DOT Inspection Report Data Entry**

**Appendix K – Detailed Calculations**