1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    CHARLES RIDGEWAY, et al.,
                                              Case No.  08-cv-05221-SI
8              Plaintiffs,

9        v.                                   **ORDER:**
                                              **-- GRANTING IN PART AND DENYING**
10                                            **IN PART DEFENDANT'S MOTION TO**
                                              **DISMISS;**
11   WAL-MART STORES, INC.,                    **-- DENYING DEFENDANT'S MOTION**
                                              **FOR SUMMARY JUDGMENT AND**
12             Defendant.                      **GRANTING PLAINTIFFS' MOTION**
                                              **FOR SUMMARY JUDGMENT;**
13                                            **--DENYING DEFENDANT'S MOTION**
                                              **TO DECERTIFY THE CLASS; AND**
14                                            **--GRANTING DEFENDANT'S MOTION**
                                              **TO SEAL**
15

16

17                                            Re: Dkt. Nos. 321, 324, 325, 346

18

19

20       Defendant Wal-Mart Stores, Inc. ("Wal-Mart") has filed a motion to dismiss, a motion for

21   summary judgment, and a motion to decertify the class.  Dkt. Nos. 321, 324, 325.  This matter

22   came on for hearing on August 12, 2016.  For the reasons set forth below, the Court rules as

23   follows.

24                                   **BACKGROUND**

25       Plaintiffs are truck drivers in California previously employed by defendant Wal-Mart for

26   some period of time between 1993 and the present.  Dkt. No. 72, Fourth Am. Compl. ¶¶ 3-6.

27

28

*United States District Court*
*Northern District of California*

Plaintiffs allege Wal-Mart violated California law by failing to pay plaintiffs at least the minimum wage for each hour worked.

The facts and procedural history of this case are summarized in numerous prior orders of the Court. *See*, *e.g.*, Dkt. No. 211.  In September 2014, the Court granted in part and denied in part plaintiffs' motion for class certification.  Dkt. No. 158.  On May 28, 2015, the Court granted plaintiffs' motion for summary judgment on their seventh cause of action (minimum wage claims pursuant to the Industrial Welfare Commission ("IWC") orders).  Dkt. Nos. 181, 211.  The Court denied plaintiffs' motion as to Wal-Mart's eighth affirmative defense.  On April 25, 2016, the Court granted plaintiffs' motion for partial summary judgment on their fourth cause of action, violation of the Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200 et seq.  Dkt. Nos. 255, 286.

In June 2016, the Court denied Wal-Mart's motion to stay the case pending the appeal of *Ortega v. J.B. Hunt Transport, Inc.*, No. 14-56034 (9th Cir.).  Dkt. No. 313.  Shortly thereafter, the parties informed the Court that Wal-Mart had recently identified forty-two additional class members who were inadvertently not included in the previous class list.  Upon plaintiffs' motion, the Court issued an order directing issuance of supplemental class notice and making schedule adjustments.  Dkt. No. 320.  The dispositive motion deadline of July 8, 2016, remained in place. *Id.* at 3.

On July 8, 2016, Wal-Mart filed the following motions: (1) a motion to dismiss the claims of named plaintiffs Nino Pagtama and Michael Krohn and the claims of class members Steve Williams, Mark Taylor, Vance Eason, and Kevin Putnam, Dkt. No. 321 ("Mot. to Dismiss"); (2) a motion for summary judgment, Dkt. No. 324 ("Def.'s Mot. for Summ. J."); and (3) a motion to decertify the class, Dkt. No. 325 ("Mot. to Decert.").  Trial is currently set for October 5, 2016.

## DISCUSSION

**I.    Motion to Dismiss**

**A.    Named Plaintiffs Pagtama and Krohn**

Defendant moves to dismiss named plaintiffs Nino Pagtama and Michael Krohn based on

United States District Court
Northern District of California

1  Federal Rules of Civil Procedure 37(b) and 41(b).  Mot. to Dismiss at 4.  According to defendant,

2  Pagtama and Krohn have each twice failed to appear for scheduled depositions, have not provided

3  verified responses to written discovery or initial disclosures, and did not join in plaintiffs' motions

4  for summary judgment or class certification.  *Id.*

5

6  ### 1.    Legal Standard

7  The Ninth Circuit has set forth the test for analyzing whether to dismiss a claim for failure

8  to prosecute:

> [T]he Court must weigh the following factors: (1) the public's interest in
> expeditious resolution of litigation; (2) the court's need to manage its docket; (3)
> the risk of prejudice to defendants/respondents; (4) the availability of less drastic
> alternatives; and (5) the public policy favoring disposition of cases on their merits.

12  *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d

13  1258, 1260-61 (9th Cir. 1992)).  The Ninth Circuit reasoned, "[t]he first two of these factors favor

14  the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal

15  sanction.  Thus the key factors are prejudice and availability of lesser sanctions."  *Wanderer v.*

16  *Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

17  The court must consider alternatives to dismissal.  *Malone v. U.S. Postal Serv.*, 833 F.2d

18  128, 131-32 (9th Cir. 1987) (citing *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912

19  (9th Cir. 1986)).  In determining whether the court has considered alternatives, the following

20  factors are relevant:

> (1) Did the court explicitly discuss the feasibility of less drastic sanctions and
> explain why alternative sanctions would be inadequate? (2) Did the court
> implement alternative methods of sanctioning or curing the malfeasance before
> ordering dismissal? (3) Did the court warn the plaintiff of the possibility of
> dismissal before actually ordering dismissal?

24  *Id.* at 132.

25

26  ### 2.    Named Plaintiff Krohn

27  Defendant asserts that Krohn failed to prosecute his claims and did not comply with

28  discovery obligations, including twice failing to appear for scheduled deposition.  Mot. to Dismiss

1    at 4. According to counsel for defendant, the day before Krohn's deposition, plaintiffs' counsel

2    "informed our firm that Mr. Krohn would not be appearing for his deposition." Dkt. No. 322,

3    Cripps Decl. ¶ 4. After rescheduling the deposition for the following week, plaintiffs' counsel

4    informed defendant's counsel the day before the deposition "that they had made repeated attempts

5    to contact Mr. Krohn about his deposition but he had not returned any of the phone calls . . . ." *Id.*

6    Defendant further states that plaintiffs' counsel "stated that counsel for Plaintiffs would not

7    oppose dismissal of Mr. Krohn from this action." *Id.*

8        In their opposition, plaintiffs dispute this last assertion. Counsel for plaintiffs states, "I

9    told defense counsel, Jesse Cripps, that Plaintiffs would stipulate to have named class

10   representatives, Nino Pagtama and Michael Krohn, dismissed as class representatives but to

11   remain as class members." Dkt. No. 337-1, Wagner Decl. ¶ 4. Plaintiffs argue that defendant has

12   not shown sufficient evidence that it would be prejudiced by keeping Krohn on as a class member.

13   Plaintiffs assert, "Were [he] not [a] class representative[], [he] would not have been noticed for

14   depositions so there is no prejudice . . . ." Dkt. No. 337 ("Pls.' Opp'n to Mot. to Dismiss") at 4.

15       The Court disagrees with plaintiffs that there is no prejudice, when defendant has been

16   unable to depose a named plaintiff before the discovery deadline of July 7, 2016. *See* Dkt. No.

17   242 at 1. Plaintiffs' counsel filed a declaration stating that counsel had contacted Krohn and he

18   stated that "he did not attend his deposition because he has a PTSD disability and is unable to

19   withstand the deposition process." Dkt. No. 337-1, Wagner Decl. ¶ 6. However, counsel has filed

20   nothing from Krohn directly. When questioned at the hearing about whether there was some way

21   to make Krohn available for deposition while accommodating his disability, the parties agreed to

22   meet and confer regarding this matter. The Court has heard nothing further.

23       Even if Krohn were to continue as a class member rather than as a named plaintiff, it

24   would still be within Wal-Mart's rights to seek his deposition. At this time, the Court will not

25   grant Wal-Mart's motion to dismiss Krohn from the lawsuit, but Wal-Mart may again move for

26   his dismissal if he continues to fail to meet his discovery obligations. The parties are ORDERED

27   to meet and confer regarding Krohn's deposition and to file an update with the Court **no later**

28   **than September 2, 2016.** If Krohn's deposition will proceed, plaintiffs are ORDERED to provide

United States District Court
Northern District of California

4

Krohn's disclosures under Rule 26 and his responses to the written discovery that has been served, *see* Mot. to Dismiss at 2, no later than one week in advance of the deposition.

### 3.    Named Plaintiff Pagtama

In addition to the above reasons for requesting dismissal of named plaintiff Krohn, defendant states that "[d]ismissal of Pagtama is particularly appropriate because he has affirmatively and expressly made clear his intent to exclude himself from the class."  Mot. to Dismiss at 6.  Defendant attaches an exclusion postcard signed by Pagtama and postmarked February 23, 2015.  Dkt. No. 322-1, Cripps Decl. Ex. A.  The postcard notes, "To be effective, this postcard must be postmarked on or before February 27, 2015."  *Id.*  Plaintiffs' opposition is silent on Pagtama's opt-out.

Because Pagtama affirmatively opted to exclude himself from the class prior to the exclusion deadline, the Court GRANTS defendant's motion to dismiss Pagtama from the case.

### B.    Class Members Williams, Taylor, and Eason

Defendant next asks the Court to dismiss the claims of class members Steve Williams, Mark Taylor, and Vance Eason because each stated on the record during his deposition that he did not wish to remain in the lawsuit.  Mot. to Dismiss at 4.  In its motion, Wal-Mart does not cite specific authority for its request for dismissal, but in the opposition and the reply both parties construe the request as one for a late opt-out under Rules 6(b)(2), 60(b)(1), and 23.  *See* Pls.' Opp'n to Mot. to Dismiss at 5-6; Dkt. No. 358 ("Def.'s Reply re: Mot. to Dismiss") at 4.

### 1.    Legal Standard

Under Federal Rules of Civil Procedure 6(b) and 60(b), courts have discretion to allow class members to opt out of proceedings after the agreed upon opt-out date.  Rule 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).  Additionally, Rule 60(b) provides that "[o]n motion and

just terms, the court may relieve a party . . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect, . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

The Supreme Court set forth the standard for determining whether neglect is "excusable" under Rule 60(b). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395 (1993). "[T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2009) (citing *Pioneer*, 507 U.S. at 395).

### 2.    Class Members Williams and Taylor

On June 23, 2016, when asked at his deposition if he had had an opportunity to opt out of the lawsuit, Williams testified, "Actually, I didn't read any of the mail that came . . . . I just pretty much trashed it, to be honest with you. So I didn't realize there was an opt out or what have you." Dkt. No. 322-2, Cripps Decl. Ex. B, Williams Dep. at 10:7-15. When asked, "And do you want to be in the lawsuit now?" Williams answered, "I really don't care to be in the lawsuit." *Id.* at 10:16-18.

That same day, Taylor testified similarly at his deposition that he "just started getting things in the mail asking if [he] wanted to be a part of [the lawsuit].    And basically [he] just ignored them." Dkt. No. 322-3, Cripps Decl. Ex. C, Taylor Dep. at 8:2-5. When asked, "Do you still wish to be a part of the lawsuit?" Taylor replied, "I never wanted to be a part of the lawsuit. I just kind of thought it would go away, knowing that I feel good about who I work for and am real happy with who I work for." *Id.* at 8:8-15.

Plaintiffs oppose the motion to dismiss Williams and Taylor, arguing that there is no authority for defendants to seek this late opt-out. Pls.' Opp'n to Mot. to Dismiss at 5. The cases that plaintiffs cite, however, do not stand for the proposition that courts may not permit late opt-outs prior to settlement or trial. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. Of San*

6

*Francisco*, 688 F.2d 615, 635 (9th Cir. 1982), for instance, involved a named plaintiff seeking to opt out of a class after the case had settled.  Unlike the plaintiff in *Officers for Justice*, however, class members Williams and Taylor are not attempting to opt out after the deadline in order to avoid an unsatisfactory settlement agreement.  *See id.*  Although the Ninth Circuit in that case found that due process does not "*require*[] that members of a Rule 23(B)(3) class be given a second chance to opt out," nor did the appellate court hold that class members may *never* belatedly opt out of a class.  *See id.* (emphasis added).  Indeed, the opinion does not address the application of Rules 6(b) and 60(b) to late opt-outs.

The second case cited by plaintiffs states the opposite of what plaintiffs assert.  While plaintiffs suggest that "no authority" exists to support giving class members a second chance to opt out, plaintiffs also write that the Ninth Circuit in *Silber* concluded, "appellant also had the option . . . of seeking discretionary relief from the district court's opt-out deadline."  Pls.' Opp'n to Mot. to Dismiss at 6 (citing *Silber v. Mabon*, 957 F.2d 697, 702 (9th Cir. 1992)).  *Silber* therefore acknowledges that "discretionary relief from missed opt-out deadlines is available under Fed. R. Civ. P. 6(b)(2) and 60(b)(1) as well as generally under Rule 23."  957 F.2d at 700 (citations and internal quotation marks omitted).

Likewise, plaintiffs rely on a case out of the Second Circuit, *Manhattan-Ward, Inc. v. Grinnell Corp.*, 490 F.2d 1183, 1186 (2d Cir. 1974) (per curiam).  Citing Rules 6(b)(2) and 60(b)(1), the court there found that "whether neglect in a particular case is excusable rests within the sound discretion of the district judge . . . ."  *Manhattan-Ward*, 490 F.2d at 1186.  Plaintiffs thus fail to cite authority which suggests that this Court may not utilize its discretion under Rules 6(b), 60(b), and 23 to grant defendant's motion to dismiss Williams and Taylor.

The Court finds that the *Pioneer* factors weigh in favor of allowing Williams and Taylor to opt out at this stage due to excusable neglect.  There would be little danger of prejudice to plaintiffs, as they would be in the same position as if these two class members had timely opted out.  *See Pioneer*, 507 U.S. at 395.  There is no prejudice to defendant, as Wal-Mart is the party that is facilitating the late opt-out.  Williams and Taylor's neglect has not caused significant delay in the proceedings and there is no evidence that they engaged in bad faith by ignoring their mail.

7

1    Accordingly, the Court GRANTS defendant's motion to dismiss the claims of class

2    members Williams and Taylor based on their requests to be excluded from this action.

3

4                    **3.      Class Member Eason**

5    During his deposition on February 25, 2016, class member Vance Eason testified that he

6    wanted to opt out of this litigation.  *See* Dkt. No. 322-4, Cripps Decl. Ex. D, Eason Dep. at 6:22-

7    7:5 ("Q. . . . you want to opt-out of being a class member in this litigation.  A.  Correct.  Q.  Is that

8    correct?  A. Correct.  Q.  Okay.  And that if we represent to the court on your behalf that that's

9    what you want to do, that's agreeable with you?  A. Yes.").  The transcript shows that during the

10   deposition both parties planned to stipulate to the Court that Eason would be withdrawn as a class

11   member.  *Id.* at 9:14-18.  The Court did not receive any such stipulation.

12   Alongside their opposition, plaintiffs now attach a declaration from Eason, stating that he

13   does not wish to opt out of the lawsuit but rather wishes to remain a class member.  Dkt. No. 337-

14   2, Eason Decl. ¶ 3.  Eason explains in his declaration, "I made statements in my deposition about

15   what I thought about the case and I gave some personal opinions about the case.  However, I did

16   not know all the facts of the case and did not understand how the law pertained to those facts."  *Id.*

17   ¶ 4.

18   Given Eason's declaration, the Court finds there is no reason under Federal Rule of Civil

19   Procedure 6(b) or 60(b) to allow a late opt-out here.  At the hearing, the parties represented that a

20   new deposition for Eason has been set.  The Court therefore DENIES defendant's motion to

21   dismiss Eason as a class member from the present litigation.

22

23           **C.      Class Member Putnam**

24   Wal-Mart moves to dismiss class member Kevin Putman based on a previous lawsuit by

25   Putman against Wal-Mart in an unrelated case.  Mot. to Dismiss at 7-8.  That case was resolved by

26   a settlement that included a general release of all claims against Wal-Mart.  Wal-Mart has moved

27

28

United States District Court
Northern District of California

8

1   to file the document under seal, citing confidentiality concerns.[1]  Dkt. No. 346.  At the hearing,

2   plaintiffs' counsel agreed that the settlement released Putnam's claims, including the claims raised

3   in this lawsuit.  Following the hearing, plaintiffs filed a declaration from Putnam agreeing that the

4   settlement is confidential and objecting to its being filed publicly.  Dkt. No. 398.  The Court

5   therefore GRANTS defendant's motion to seal Exhibit F to the declaration of Jesse Cripps.  *See*

6   Dkt. Nos. 322-6, 346.  The Court also GRANTS Wal-Mart's motion to dismiss class member

7   Putnam from this lawsuit.

8

9   **II.      Motion for Summary Judgment**

10          Wal-Mart has moved for summary judgment on two grounds.  First, it argues that the

11  Federal Aviation Administration Authorization Act ("FAAAA") preempts California's minimum

12  wage laws.  Def.'s Mot. for Summ. J. at 1.  Second, it argues that even if California minimum

13  wage law applies, "that law imposes on each plaintiff the burden of proving '[t]he amount of

14  wages owed' to him" and that the named plaintiffs have failed to present evidence of their actual

15  damages.  *Id.*  Plaintiffs have filed an opposition, styled also as a cross-motion for summary

16  judgment, seeking an affirmative order from the Court that the FAAAA does not preempt

17  California minimum wage law.  Dkt. No. 345 ("Pls.' Opp'n to Def.'s Mot. for Summ J.") at 1.

18

19          **A.      Preemption under the FAAAA**

20          This is not the first time the Court has examined FAAAA preemption in this case.  In

21  February 2013, Wal-Mart moved to dismiss plaintiffs' Third Amended Complaint in part based on

22  preemption of California's meal and rest break laws.  Dkt. No. 65 at 1.  In April 2013, the Court

23  denied Wal-Mart's motion as to FAAAA preemption, finding that the meal and rest break laws

24  "do not 'relate to' motor carrier rates, routes, or services . . . ."  Dkt. No. 72 at 6.  Wal-Mart then

25  renewed its argument in its motion to dismiss plaintiffs' Fourth Amended Complaint.  Dkt. No. 74

26

27          [1] Defendant previously filed a fully redacted version of the settlement agreement.  Dkt. No.

28  323.  After the Court denied the motion to seal that document, finding the redactions to be
    overbroad, defendant re-filed a less redacted version.  *See* Dkt. Nos. 335, 346.

United States District Court
Northern District of California

1    at 2, 12.  The Court denied the motion as to preemption, finding that Wal-Mart had not properly

2    sought leave for reconsideration.  Dkt. No. 82 at 4-5.

3         For reasons similar to those stated in the Court's prior orders on the motions to dismiss,

4    and based on Supreme Court and Ninth Circuit case law, the Court finds that the FAAAA does not

5    preempt California minimum wage law.

6         The FAAAA provides, in part, that "a State . . . may not enact or enforce a law, regulation,

7    or other provision having the force and effect of law related to a price, route, or service of any

8    motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

9    "Preemption analysis begins with the assumption that Congress does not intend to supplant state

10   law.  Although Congress clearly intended FAAAA to preempt some state regulations of motor

11   carriers who transport property, the scope of the preemption must be tempered by the presumption

12   against the pre-emption of state police power regulations."  *Dilts v. Penske Logistics, LLC*, 769

13   F.3d 637, 642-43 (9th Cir. 2014) (quoting *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir.

14   2005)).  Preemption may occur if a state law's effect on rates, routes, and services is indirect, but

15   such effect must be more than "tenuous" or "remote."  *Californians for Safe Dump Truck Transp.*

16   *v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998) ("a state law dealing with matters traditionally within

17   its police powers, and having no more than an *indirect, remote, and tenuous* effect on motor

18   carriers, are not preempted.").  "Wage and hour laws constitute areas of traditional state regulation

19   . . . ."  *Id.* at 643 (citing *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*,

20   519 U.S. 316, 330-34 (1997)).

21        Wal-Mart argues that the Court's prior rulings, finding that Wal-Mart's Driver Pay

22   Manuals violate California minimum wage law by failing to pay drivers at least minimum wage

23   for all of the time they worked, have forced Wal-Mart to move away from its prior "activity-

24   based" pay system for its California truck drivers.  In October 2015, Wal-Mart moved to a system

25   in which it "pay[s] drivers a flat hourly rate at the applicable minimum wage for all hours on duty,

26   a flat rate for rest breaks, a flat rate for meal breaks, and additional productivity pay based on their

27   mileage, stops, and other activities incidental to delivering the load."  Def.'s Mot. for Summ. J. at

28   7 (citing Parrish Decl. ¶ 6).  It argues that this new system "decreases efficiency[] and limits driver

productivity . . . ."  Dkt. No. 324, Notice of Mot. at 2.  Because of this, Wal-Mart says, California's minimum wage laws are "related to" its pricing, routes, and services and are therefore preempted by the FAAAA.  *Id.*  Wal-Mart states, among other things, that it had to hire at least five new employees to manage the new payment system it put into place in October 2015.  Dkt. No. 324-1, Parrish Decl. ¶ 8.

The Ninth Circuit has evaluated FAAAA preemption and its interaction with California wage and hour law on several occasions.  In *Mendonca*, based on the text of the FAAAA, its legislative history, and Supreme Court cases interpreting the "related to" language, the Ninth Circuit held that the FAAAA did not preempt California's prevailing wage law.  152 F.3d at 1189.  Thus, a motor carrier association's members were not exempt from complying with California law requiring that they pay their workers "not less than the general prevailing rate . . . for work of a similar character in the locality in which the public work is performed."  *Id.* at 1186 (quoting Cal. Lab. Code § 1771).

Roughly sixteen years later, the Ninth Circuit revisited the preemption question as it applies to California's meal and rest break laws in *Dilts*.  There, the Ninth Circuit reversed a grant of summary judgment on FAAAA preemption grounds where a certified class of truck drivers sued their trucking company employer based on alleged violations of California's meal and rest break laws.  769 F.3d at 640.  Again, the appeals court looked to legislative history, as well as to Supreme Court decisions issued since the Ninth Circuit decided *Mendonca* and to case law involving the analogous Airline Deregulation Act.  Having thoroughly examined the state of the law, the Ninth Circuit concluded that the FAAAA does not preempt California's meal and rest break laws.  The appeals court reasoned, in part:

> Although we have in the past confronted close cases that have required us to struggle with the "related to" test, and refine our principles of FAAAA preemption, we do not think that this is one of them.  In light of the FAAAA preemption principles outlined above, California's meal and rest break laws plainly are not the sorts of laws "related to" prices, routes, or services that Congress intended to preempt.  They do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide, either directly or indirectly.  They are "broad law[s] applying to hundreds of different industries" with no other "forbidden connection with prices[, routes,] and services."  *Air Transp. Ass'n,* 266 F.3d at 1072.  They are normal background rules for almost *all* employers doing business in the state of California.  And while motor carriers may have to take into

United States District Court
Northern District of California

account the meal and rest break requirements when allocating resources and scheduling routes—just as they must take into account state wage laws, *Mendonca,* 152 F.3d at 1189, or speed limits and weight restrictions, 49 U.S.C. § 14501(c)(2)—the laws do not "bind" motor carriers to specific prices, routes, or services, *Am. Trucking,* 660 F.3d at 397.  Nor do they "freeze into place" prices, routes, or services or "determin[e] (to a significant degree) the [prices, routes, or] services that motor carriers will provide," *Rowe,* 552 U.S. at 372, 128 S.Ct. 989.

*Dilts*, 769 F.3d at 647.

Wal-Mart fails to meaningfully distinguish the Ninth Circuit's decisions in *Mendonca* and *Dilts*.  It argues that the minimum wage law in this case is distinct from the prevailing wage and meal and rest break laws that the Ninth Circuit previously considered because compliance with minimum wage law "requires Wal-Mart not just to brook increased costs, but to either risk significant liability or otherwise abandon entire pay systems that undisputedly foster productivity and efficiency . . . ."  Dkt. No. 363 ("Reply in Support of Def.'s Mot. for Summ. J.") at 1.  However, the Ninth Circuit already considered and rejected similar arguments.  *See Dilts*, 769 F.3d at 646-47 ("Such laws are not preempted even if they raise the overall cost of doing business or require a carrier to re-direct or reroute some equipment. . . .  Nor does a state law meet the 'related to' test for FAAAA preemption just because it shifts incentives and makes it more costly for motor carriers to choose some routes or services *relative* to others . . . .").  As Justice Scalia observed in *Dillingham*, "everything is related to everything else."  519 U.S. at 335 (Scalia, J., concurring).  But to be "related to" for purposes of FAAAA preemption, a state law must rise to the level of having "more than an *indirect, remote, and tenuous* effect on motor carriers." *Mendonca*, 152 F.3d at 1185.

For that reason, the Court declines Wal-Mart's invitation to follow the Central District of California's lead in *Ortega v. J.B. Hunt Transp., Inc.*, No. 07-cv-8336-BRO, 2014 WL 2884560 (C.D. Cal. June 4, 2014).  As this Court previously observed, that decision was issued before that court had the benefit of the Ninth Circuit's guidance in *Dilts*.  *See* Dkt. No. 313 at 1-2.  Since *Dilts*, the same judge who previously found FAAAA preemption in *Ortega* has ruled in another case that the FAAAA did not preempt the plaintiff truck drivers' claims under the California Labor Code, including minimum wage claims, in light of *Dilts*.  *See Taylor v. Shippers Transp. Exp., Inc.*, No. 13-cv-2092-BRO, 2014 WL 7499046, at *2, 8-9 (C.D. Cal. Sept. 30, 2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Wal-Mart is correct that the defendants in *Dilts* presented little evidence in support of their

2    preemption argument.  Wal-Mart, by contrast, has presented declarations and expert reports to

3    support its argument that changing its payment practices to comport with California minimum

4    wage law would increase its costs.  However, the majority of Wal-Mart's evidence and arguments

5    are premised on the assumption that Wal-Mart must abandon using an activity pay-based system,

6    which is something this Court has never held.  Nor is it clear from what Wal-Mart has presented

7    that the new pay system it implemented in October 2015 is the only way to comply with California

8    minimum wage law.  It is not persuasive that Wal-Mart had to hire five new employees based on

9    the new compensation system it has chosen to put into place, *see* Parrish Decl. ¶ 8, as the Ninth

10   Circuit found a similar argument unpersuasive in *Dilts*.  *See* 769 F.3d at 648 ("Motor carriers may

11   have to hire additional drivers or reallocate resources in order to maintain a particular service

12   level, but they remain free to provide as many (or as few) services as they wish.").

13   Wal-Mart also cites to the declaration of Billy Deatherage and the report of its expert Dr.

14   Robert Topel.  Def.'s Reply in Support of Mot. for Summ. J. at 3.  Wal-Mart cites the declaration

15   of Deatherage, a Wal-Mart Senior Strategy Manager for Fleet Optimization, as support for its

16   assertion that the lost productivity from switching from an activity-based pay system "translates

17   into losses of millions of dollars across Wal-Mart's California distribution centers."  *Id.* (citing

18   Dkt. No. 324-2, Deatherage Decl. ¶¶ 17, 19).  However, Deatherage's declaration addresses the

19   impact of complying with California *meal break laws* and the financial impact it has had on the

20   company *since 2006*.  *See* Deatherage Decl. ¶¶ 16-19.  Meal breaks are not at issue in the present

21   motion, and the declaration is silent as to any concrete dollar impact of Wal-Mart's post-October

22   2015 pay system.  Likewise, Dr. Topel's report does not outright assert that Wal-Mart has incurred

23   a 9 to 22% productivity loss from implementing a new pay system, as Wal-Mart appears to argue.[2]

24   _____

25   [2] The portions of its expert report that Wal-Mart cites in its papers, to support its argument
     that a new pay system would decrease productivity and increase costs, also rely on hypothetical
26   scenarios or scenarios that will not necessarily come to pass under a pay system that comports
     with California minimum wage law.  *See, e.g*, Def.'s Mot. for Summ. J. at 15 ("Shifting to a less
27   efficient system that does not foster productivity '*might* also cause [Wal-Mart] to raise the rates . .
     .'"; "Forcing Wal-Mart to forgo industry-standard compensation methods inhibits its ability to
28   compete against companies with distribution centers outside of California, which, as Plaintiffs'
     own purported expert, Dr. Belzer[,] agreed, '*could* send drivers into California to make deliveries'

13

United States District Court
Northern District of California

1   *See* Reply in Support of Def.'s Mot. for Summ. J. at 3 (citing Dkt. No. 330-22, Cripps Decl. Ex.

2   82, "Topel Rep." at 14-15).   Rather, Topel cites to various studies showing the impact on

3   productivity in switching away from a purely activity-based pay system to "other payment

4   systems" (without saying what those other systems might be).[3]   *See* Topel Rep. at 14-15.  Even if

5   Topel's report did assert a 9 to 22% productivity loss for Wal-Mart, in *Mendonca*, the Ninth

6   Circuit rejected the trucking association's argument that the prevailing wage claim was "related

7   to" its prices, routes, and services because compliance with the law "increases its prices by 25% . .

8   . ."  *See* 152 F.3d at 1189.

9          Complying with State minimum wage law may impose a cost on businesses and have the

10  effect of increasing a business's costs which, necessarily, may be reflected in the prices that it

11  charges to customers.  This does not mean that State minimum wage laws are sufficiently "*related*

12  *to* a price, route, or service of any motor carrier . . . with respect to the transportation of property."

13  *See* 49 U.S.C. § 14501(c)(1) (emphasis added).   Complying with meal and rest break laws also

14  imposes a cost on businesses, as Wal-Mart has attempted to show with the Declaration of Billy

15  Deatherage, *see* Dkt. No. 324-2, Deatherage Decl. ¶ 17, but this does not mean that those laws are

16  preempted.  *See Dilts*, 769 F.3d at 647.  Likewise, state safety regulations could be expected to

17  have an impact on a carrier's prices, but again the Ninth Circuit has said that "[t]he FAAAA

18  expressly does *not* regulate a state's authority to" enact such regulations.  *Dilts*, 769 F.3d at 644.

19         At the hearing, Wal-Mart emphasized that California minimum wage law differs from

20  meal and rest break laws because the latter are "laws of general applicability."  Wal-Mart argued

21  that California minimum wage laws are not generally applicable because they target trucking

22  companies in a unique way, given that trucking companies traditionally use activity-based pay

23  systems and must account for driver layovers.  The Court is not persuaded.  California minimum

24  wage laws are no less generally applicable than meal and rest break laws.  "They are normal

25  _____

26  without complying with California law") (emphases added).

27         [3] Plaintiffs have countered with deposition testimony from Dr. Topel that drivers are doing
    the same work in the pre- and post- October 2015 pay systems and that the inefficiency lies in
28  increased administrative costs related to HR and payroll.  Dkt. No. 339-1, Artenian Decl. Ex. A
    ("Topel Dep.") at 67:8-68:23.

background rules for almost *all* employers doing business in the state of California." *See Dilts*, 769 F.3d at 647.  And arguably, the prevailing wage laws that were found not to be preempted in *Mendonca* were less generally applicable than minimum wage law because they applied specifically to contractors awarded public works contracts.  *See* 152 F.3d at 1186.  The bottom line of Wal-Mart's argument is that complying with California minimum wage law imposes extra costs on trucking companies, and the Ninth Circuit has found that preemption does not always follow where a state law imposes costs on a trucking company.  As explained in *Dilts*, "even if state laws increase or change a motor carrier's operating costs, 'broad law[s] applying to hundreds of different industries' with no other 'forbidden connection with prices[, routes,] and services'—that is, those that do not directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or services—are not preempted by the FAAAA."  769 F.3d at 647 (quoting *Air Transp. Ass'n of America v. City & Cnty. of San Francisco*, 266 F.3d 1064, 1072 (9th Cir. 2001)). California's minimum wage law is such a law.

Finding the Ninth Circuit's reasoning in *Mendonca* and *Dilts* to apply with equal force here, the Court finds that the FAAAA does not preempt California minimum wage law.  As such, defendant's motion for summary judgment on the issue of preemption is DENIED and plaintiffs' cross-motion for summary judgment is GRANTED.

### B.    Named Plaintiffs' Individual Damages

Wal-Mart has also moved for summary judgment based on its argument that each named plaintiff has failed to offer evidence to prove "'[t]he amount of wages owed' to him, which," Wal-Mart argues, "is an essential element of a minimum wage claim under California law."  Def.'s Mot. for Summ. J. at 20 (citing Judicial Council of Cal. Civil Jury Instructions, CACI No. 2701 (2014 ed.)).  Plaintiffs oppose, arguing that Wal-Mart fails to cite any authority making it a requirement that class representatives must prove their individual damages, and that in any event plaintiffs' economic expert has produced the necessary information.  Pls.' Opp'n to Def.'s Mot. for Summ J. at 22.

Upon closer examination, Wal-Mart's motion is more properly construed not as a motion

for summary judgment but rather as a motion for sanctions under Rule 37.  *See* Def.'s Reply in Support of Mot. for Summ. J. at 14.  Defendant argues in its motion that plaintiffs' expert disclosures, due on May 13, 2016, *see* Dkt. No. 242, do not state the amount of actual damages that the named plaintiffs seek and that plaintiffs' experts have not offered any opinions regarding the named plaintiffs' actual damages.  Def.'s Mot for Summ. J. at 20.  In their opposition, plaintiffs state that their expert Dr. G. Michael Phillips filed "extensive reports and calculations of damages made on a classwide basis, derived from individual damage computations for all class members."  Pls.' Opp'n to Def.'s Mot. for Summ J. at 23.  Further, plaintiffs note that on July 12, 2016, Dr. Phillips filed a supplemental report containing individual damage calculations at Appendix K.  *Id.* at 25 (citing Dkt. No. 338, Phillips Decl. ¶¶ 16-18).  In its reply, Wal-Mart's argument shifts slightly.  Rather than disputing that plaintiffs have provided the individual damages calculations that Wal-Mart seeks, it now argues that, because Dr. Phillips did not offer the individual damages calculations in his initial report filed in May, that evidence is now inadmissible.  Reply in Support of Def.'s Mot. for Summ. J. at 14-15.

Federal Rule of Civil Procedure 26(a)(2) states, in part, that a party's expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them . . . ."  Fed. R. Civ. P. 26(a)(2)(B)(i).  As explained in one of the cases cited by defendant, "[t]he requirement of a detailed report [under Fed. R. Civ. P. 26(a)(2)] serves several functions.  It helps the opposing party to meaningfully depose the expert; it helps the opposing party to determine its own expert needs; and it prevents the expert from 'lying in wait' with new, last-minute opinions."  *Harrelson v. Dupnik*, Case No. 11-cv-0411-TUC-FRZ (BPV), 2014 WL 2510530, at *4 (D. Ariz. Mar. 12, 2014), *report and recommendation adopted as modified by* 2014 WL 2510569 (D. Ariz. June 4, 2014).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  However, information that is not disclosed under Rule 26(a)(2) may still be introduced at trial "if the parties' failure to disclose the required information is substantially justified or harmless."  *Id.* (citing Fed. R. Civ. P.

16

37(c)(1)); *see also Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010) ("Rule 37(c)(1) did not . . . strip the district courts of discretion to allow expert testimony in appropriate circumstances . . . ."). In determining whether a discovery deadline violation is justified or harmless, the district court may consider: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys*, 375 Fed. App'x at 713 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). The party facing sanctions bears the burden of proving justification or harmlessness. *Yeti*, 259 F.3d at 1107.

A number of the cases that Wal-Mart cites in support involved motions in limine, where the district court faced the question of whether information that was completely absent from an expert report could be the subject of testimony at trial. *See U.S. Fidelity & Guaranty Co.*, 641 F.3d 1126, 1138 (9th Cir. 2011); *Harrelson*, 2014 WL 2510530, at *4 (limiting scope of expert testimony to exclude opinions not contained in expert report where the "testimony goes to much more than merely supplementing, elaborating upon, and explaining his report"); *Therasense, Inc. v. Becton, Dickinson & Co.*, No. 04-cv-2123-WHA, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008) (experts' testimony on direct examination to be limited "to the four corners of their report," with trial roughly two weeks away). Other cases, involving late disclosed information, presented more extreme situations than what the Court has before it here. *See Yeti*, 259 F.3d at 1105-07 (not abuse of discretion to exclude initial expert report that was not disclosed until almost two years after close of discovery and just twenty-eight days before trial); *Churchill v. U.S.*, No. 09-cv-1846-LJO-JLT, 2011 WL 444849 (E.D. Cal. Feb. 8, 2011) (granting in part motion to strike where party failed to file anything by the expert disclosure deadline and filed the report forty days late, eight days after the deadline for supplemental expert reports).

Here, even if plaintiffs should have disclosed the individual damages awards in the initial expert report, the Court finds that the failure to do so was harmless. The parties agree that Dr. Phillips filed an initial report by the disclosure deadline of May 13, 2016. That report contained aggregate damages figures and stated that the report may be amended as additional data became

available.  Dkt. No. 341, Phillips Decl. Ex. A.  Dr. Phillips has filed a declaration stating that he received production of "a large quantity of 'GasBoy' data" as well as final deposition transcripts on June 21, 2016, and that he "received further production of DOT/CHP paper records" on July 6, 2016.  Phillips Decl. ¶¶ 5, 6, 9.  In June, Wal-Mart disclosed that it had discovered forty-two previously unidentified class members, and the parties approached the Court regarding supplementing expert reports and making schedule adjustments.  The Court agreed to allow supplemental expert reports, with plaintiffs' supplemental report due July 12, 2016, and defendant's due July 19, 2016.  Dkt. No. 320.  The Court also agreed, over plaintiffs' objections, to move the trial date back by several weeks.  *See id*.  Dr. Phillips produced his supplemental report on the deadline of July 12, 2016.  *See* Phillips Decl. ¶ 10.  This report contained an "Appendix K – Detailed Calculations," which broke down the damages estimates by individual driver.  Phillips Decl. Ex. B.  Defendant then sought, and received, an extension of time for its own expert to rebut the supplemental report of Dr. Phillips; the Court agreed to move the deadline for defendant's supplemental report from July 19, 2016, to July 29, 2016.  Dkt. No. 334.  Therefore, defendant's expert had over two weeks to review and respond to the supplemental report of Dr. Phillips.  Dr. Phillips's deposition was scheduled for August 5, 2016, and the papers filed since then indicate that the deposition went forward.

From what the Court can see, no harm has fallen to defendant by the supplemental report filed on July 12, 2016.  Defendant has not been deprived of its ability to meaningfully depose Dr. Phillips as to the individual damages claims set forth in his supplemental report.  And defendants sought and received an extension of time for their expert to file a supplemental rebuttal report.  Therefore, the Court will not order the sanction of excluding Dr. Phillips's testimony.[4] [5]  The

---

[4] Plaintiffs also apparently argue that the late filed supplemental report was substantially justified because Dr. Phillips received additional data from defendant after the filing of the initial report.  Having found that the late supplementation of the report under the circumstances described above was harmless, the Court makes no finding as to whether it was also substantially justified.

[5] The Court notes that Wal-Mart has filed five motions to strike the reports and opinions of plaintiffs' experts, including the supplemental report of Dr. Phillips.  Dkt. Nos. 336, 360, 361, 365, 372.  These motions are set to be heard on September 9, 2016.

United States District Court
Northern District of California

1    Court DENIES defendant's motion for summary judgment on this point.

2

3    **III.    Motion to Decertify the Class**

4         Finally, defendant has moved to decertify the class.  On September 10, 2014, the Court,

5    pursuant to Federal Rule of Civil Procedure 23(b)(3), granted in part and denied in part plaintiffs'

6    motion for class certification.  Dkt. No. 158.  As to the plaintiffs' minimum wage claims, the

7    Court certified a class consisting of: "all persons employed in California by defendant in the

8    position of Private Fleet Driver at any time between October 10, 2004 and the date of trial."[6] [7]

9    Mot. to Decert. at 6, 21.  In its class certification order, the Court stated that "if it later becomes

10   clear that there are major variations in the time class-members spent completing tasks like

11   paperwork or fueling, defendant may move to decertify the class."  Dkt. No. 158 at 14.

12        Defendant now does so, arguing that discovery has uncovered wide variation among the

13   class members in time spent on the various tasks that are the subject of plaintiffs' minimum wage

14   claims.  Defendant largely attacks the commonality prong of Rule 23(a) and the predominance

15   prong of Rule 23(b)(3).  Defendant also argues that plaintiffs have not presented a viable plan for

16   trying this case in a manageable fashion.

17

18        **A.    Legal Standard**

19        The decision as to whether to certify a class is committed to the discretion of the district

20   court within the guidelines of Federal Rule of Civil Procedure 23.  *See Cummings v. Connell*, 316

21   F.3d 886, 895 (9th Cir. 2003).  A court may certify a class if a plaintiff demonstrates that all of the

22   prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and that at least one of the

23   requirements of Rule 23(b) have been met.  *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227,

24   _____

25        [6] The Court also certified a sub-class of drivers who had left their employment with
     defendant and who sought waiting-time penalties.  The sub-class is not the focus of the present
26   motion.

27        [7] At the hearing, the parties indicated that they would be meeting and conferring to prepare
     a stipulation that the cut-off date for the class be October 15, 2015, the date on which Wal-Mart
28   implemented certain changes to its policies.  The parties filed this stipulation on August 29, 2016.
     Dkt. No. 404.

United States District Court
Northern District of California

1234 (9th Cir. 1996).

Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable, (2) questions of law or fact exist that are common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. Proc. 23(a).

A plaintiff must also satisfy at least one of the three requirements listed in Rule 23(b): (1) there is a risk of substantial prejudice from separate actions, (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate, or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication.  Fed. R. Civ. Proc. 23(b).  The plaintiffs "must actually *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)."  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014) (citing *Comcast Corp v. Behrend*, 133 S. Ct. 1426, 1431-32 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)).

Pursuant to Federal Rule of Civil Procedure 23(c)(1), an order certifying a class "may be altered or amended before final judgment."   In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met.  *See O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000).  "Although certification decisions are not to focus on the merits of a plaintiff's claim, a district court reevaluating the basis for certification may consider its previous substantive rulings in the context of the history of the case, and may consider the nature and range of proof necessary to establish the class-wide allegations."  *Marlo v. UPS*, 251 F.R.D. 476, 479 (N.D. Cal. 2008) (internal citations omitted).  While the defendant has the burden of proof on the merits of its affirmative defenses, plaintiffs have the burden of proof in regard to satisfying Rule 23.  *Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011) (in motion for decertification, although employer has the burden of proof regarding applicability of wage and hour exemption, the plaintiff "bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met") (citation omitted).

20

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law."  *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982) (internal quotation mark omitted)).  Plaintiffs' claims "must depend on a common contention," and that common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

Wal-Mart argues that variation among class members here means that there is no common answer to the questions that the Court previously found were capable of being answered on a class-wide basis.  Def.'s Mot. to Decert. at 13.  Wal-Mart cites to discovery conducted since class certification in support of its assertion that there is wide variability among the class members.  At the hearing, the parties indicated that forty-eight class members, including named plaintiffs, have been deposed at this point.  From that information, Wal-Mart has identified variations in the time spent completing paperwork, weighing the truck, performing inspections, fueling, washing the truck, waiting, and taking rest breaks.  Def.'s Mot. to Decert. at 4-6.  For instance, Wal-Mart points to discovery suggesting that the time drivers spent performing pre-trip and post-trip inspections could vary from five minutes to thirty minutes.  *Id.* at 5 (citing Cripps Decl. Ex. 77,[8] Steele Survey; Ex. 68, Laurye Survey; Ex. 76, Trevino Survey; Ex. 62 Batham Survey).  Estimates of time spent fueling ranged from five to sixty minutes.  *Id.* (citing Cripps Decl. Ex. 10, Benavidez Dep. 69:2-18; Ex. 27, Garcia Dep. 102:18-23; Ex. 74, Steele Survey; Ex. 73, Rivero Survey; Ex. 3, Alumbaugh Dep. 49:2-9).  Other tasks, such as weighing the truck, were random, varying from weeks without weighing to weighing several times in one week.  *Id.* at 4 (citing Cripps Decl., Ex. 3, Alumbaugh Dep. 64:2-6; Ex. 10, Benavidez Dep. 62:8-25; Ex. 67, Johnston Dep. 28:15-25).  Some plaintiffs stated that they never performed some activities at all, such as taking rest breaks.

[8] This should be cited as Exhibit 74.

1   *See id.* at 6 (citing Ex. 48, Opitz Dep. 78:10-18; Ex. 21, Day Dep. 97:3-5[9]).

2       Wal-Mart relies heavily on the recent decision denying class certification in *Burnell v.*

3   *Swift Transp. Co. of Ariz., LLC*, No. 10-809-VAP, 2016 WL 2621616 (C.D. Cal. May 4, 2016).

4   There, California drivers sought to pursue minimum wage claims as a class.  The court in that case

5   denied class certification based in part on a lack of commonality, stating:

6           In *Wal–Mart,* the Supreme Court provided guidance on how a court must approach
            the issue of commonality for purposes of class certification.  A plaintiff must show
7           "significant proof that [an employer] operated under a general policy . . . ."  *Wal–*
            *Mart,* 131 S.Ct. at 2553.  In other words, Plaintiffs must show that Swift had a
8           general policy of not paying minimum wage to its drivers.  Plaintiffs do not make
            this showing.
9

10  *Burnell*, 2016 WL 2621616, at *2.

11      That is not the case here, however, where the Court previously found that Wal-Mart's

12  arguments did "not negate plaintiffs' assertion that there is a general default policy, defined in the

13  driver reference and pay manuals, against paying drivers for certain tasks."  Dkt. No. 158 at 9.

14  Since class certification, the Court has granted two of plaintiffs' motions for partial summary

15  judgment on the grounds that Wal-Mart's pay policies, as detailed in Wal-Mart's 2001, 2006, and

16  2008 Driver Pay Manuals, "violate California wage law by failing to pay drivers at least minimum

17  wage for all of the time they work . . . ."  Dkt. Nos. 211 at 15, 286.

18      The Court previously certified the driver class after finding the following common

19  questions of law or fact: "whether Wal-Mart's piece-rate pay plan violates California's minimum

20  wage laws, whether Wal-Mart's drivers are entitled to payment of at least minimum wages for all

21  hours worked, and whether drivers are entitled to damages for these claims."  Dkt. No. 158 at 9.

22  In its opposition to the class certification motion, Wal-mart raised the same concerns that it raises

23  here, arguing that variation among whether class members performed certain activities, and for

24  how long, and whether they were paid for them, precluded certification.  Dkt. No. 130 at 9-13.

25  The Court found otherwise: "Plaintiffs have alleged a specific set of practices for not paying

26  drivers for certain tasks that are applicable to all drivers in the proposed class."  Dkt. No. 158 at 9.

27

28  ─────────────────
            [9] This should be cited as Ex. 21, Day Dep. 98:15-24.

United States District Court
Northern District of California

As previously explained, "[d]efendant's arguments pertain to the calculation of each individual's damages and thus do not prevent certification on the common questions concerning Wal-Mart's liability." Dkt. No. 158 at 18. The Court finds that this remains true today.

Wal-Mart also argues that the class lacks commonality "because discovery has confirmed that the class contains members who were not injured and accordingly lack Article III standing." Def.'s Mot. to Decert. at 14. The Court agrees that class members may not recover for harm they did not suffer. The Court has not previously required that plaintiffs present a plan for addressing any uninjured class members. In their papers, plaintiffs argue for a broader view of Article III standing in this case, stating that Wal-Mart has failed to identify "a single driver who was not subjected to its piece-rate pay plan or who was never paid less than minimum wage . . . ." Citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049-50 (2016), plaintiffs imply that Wal-Mart's concern can be addressed later "in a challenge to a proposed method of allocation after judgment." Pls.' Opp'n to Mot. to Decert. at 22. A review of *Tyson Foods* indicates that the Supreme Court determined that the question of how to ensure that uninjured class members "do not contribute to the size of any damage award and . . . cannot recover such damages" was an important one. *See Tyson Foods*, 136 S. Ct. at 1049. Nevertheless, it was a premature question, where "the damages award has not yet been disbursed" and in the absence of a "record indicat[ing] how it will be disbursed." *Id.* at 1050. Accordingly, the Court agrees with plaintiffs that the presence of uninjured class members should not serve as a basis for decertifying the class. However, plaintiffs should be prepared to address this question and propose a solution as the case proceeds towards trial.

### C.    Predominance and Manageability

Wal-Mart frames its attack on the predominance requirement of Rule 23(b)(3) as an issue of manageability. In addition to the prerequisites of Rule 23(a), "Rule 23(b) also requires that class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy." *Hanlon*, 150 F.3d at 1023 (quoting Fed. R. Civ. P. 23(b)(3)). Among the factors that courts must consider are the difficulties likely to be encountered in the management of

a class action.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).

Wal-Mart argues that plaintiffs "have not delivered on their promise of a classwide method of trying this case to judgment."  Def.'s Mot. to Decert. at 15.  In its class certification order, the Court did not require that plaintiffs present a trial plan.  The Court also was and is mindful of the Ninth Circuit's direction that "damages determinations are individual in nearly all wage-and-hour class actions" and that "damages calculations alone cannot defeat certification."  *See Leyva v. Medline Industries Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).  In *Leyva*, the Ninth Circuit reversed a district court's denial of class certification where "[t]he only individualized factor that the district court identified was the amount of pay owed."  *Id.*  The Ninth Circuit recently reiterated that a "district court [does] not abuse its discretion in holding that different damages calculations do not defeat predominance" in a wage and hour case.  *Vaquero v. Ashley Furniture, Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).  Likewise here, the variability that Wal-Mart points to that it gathered in discovery is in the amount of time that drivers spent on various activities—in other words, "the amount of pay owed."  *See id.*

After briefing was complete and oral argument held, Wal-Mart filed a notice of supplemental authority regarding its motion to decertify.  Dkt. No. 391.  The first case to which it draws the Court's attention is *Harnish v. Widener University School of Law*, --- F.3d ----, No. 15-3888, 2016 WL 4363133 (3d Cir. Aug. 16, 2016), which Wal-Mart says "discusses a trial court's obligation to separately analyze the 'fact of damage' in deciding whether a claim can proceed on a class basis."  *Id.*  It is unclear why Wal-Mart filed this out-of-circuit case, which does not appear to establish a new rule of law and does not factually resemble the case at hand.  Nevertheless, the Court notes that if it were to follow the Third Circuit's guidance to look for "the fact of damage – 'ascertainable loss' and a 'causal relationship' – class wide[,]" the result would be no different.  *See Harnish*, 2016 WL 4363133, at *4.  The Court has previously addressed the ascertainability of loss in its motion certifying the class, and re-addresses that question below.  *See* Dkt. No. 158 at 20.  And the question of a "causal relationship" between the conduct and harm alleged is clear in this case, as opposed to in *Harnish*, where a group of former law students sued their school for allegedly inflating tuition based on false employment figures.  *See Harnish*, 2016 WL 4363133, at

1    *9 (stating that New Jersey state courts do not recognize "price inflation as a cause of

2    ascertainable loss") (internal quotation marks omitted); *see also Vaquero*, 824 F.3d at 1155 ("In a

3    wage and hour case . . . the employer-defendant's actions *necessarily* caused the class members'

4    injury.").

5           The second case to which Wal-Mart points in its recently filed notice is a decision by

6    Judge Breyer of this district granting a motion to decertify a California rest break class.  *See In re:*

7    *Autozone, Inc.*, No. 10-md-2159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016).  Judge

8    Breyer did this because "two facts stand out as substantially different than the Court understood

9    them to be at class certification."  *Id.* at *9.  First, contrary to that court's prior understanding, "the

10   policy with the unlawful language about rest breaks <u>was not in place throughout the class period</u>."

11   *Id.*  The class period ran from July 2005, and the unlawful language upon which Judge Breyer had

12   certified the class was not in place until 2008.  *Id.*  "Second, contrary to Plaintiffs' counsel's

13   representations at the class certification hearing, <u>there are no audit records or any other time</u>

14   <u>records</u> of when class members took rest breaks."  *Id.*  Such significant changes in facts since class

15   certification are simply not present here.  *See also O'Connor*, 197 F.R.D. at 409-10 (class

16   certification will typically not be revisited except that "[s]ometimes . . . developments in the

17   litigation, such as the discovery of new facts or changes in the parties or in the substantive or

18   procedural law[] will necessitate reconsideration . . . .")  Further, much of Judge Breyer's

19   reasoning rests on comparing and contrasting cases in which a uniform policy applied throughout

20   the class period.  *See Autozone*, 2016 WL 4208200, at *12-13.  The Court has already ruled on the

21   relevant uniform policies in place at Wal-Mart from the beginning of the class period, and the

22   parties have agreed that the class period here will be cut off in October 2015, when Wal-Mart

23   changed its policies.  Thus, one of the major rationales for Judge Breyer decertifying the *Autozone*

24   class is absent here.[10]

25   _____

26          [10] To the extent that Wal-Mart flags the *Autozone* opinion because of its analysis of class
     member survey data and its suitability under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509
27   U.S. 579 (1993), the Court again notes that there are five pending *Daubert* motions set for hearing
     shortly.  *See* n.5, *supra*.  Should the Court's ruling on those *Daubert* motions affect today's ruling
28   on the motion to decertify, the Court will revisit this Order and modify it accordingly.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    With trial less than two months away, however, the Court agrees with Wal-Mart that

2    plaintiffs need to present a plan for manageably trying this case.  The plan currently before the

3    Court, as discerned from plaintiffs' opposition papers, appears to mirror the plan presented at the

4    class certification stage.  At that point, plaintiffs presented declarations from two experts who

5    created a methodology for calculating damages using Wal-Mart's pay records and, where the

6    records lacked certain information, results of a class member survey.  Dkt. No. 158 at 19-20.

7    Now, plaintiffs have submitted reports from Dr. Phillips that similarly rely on Wal-Mart's records,

8    deposition testimony, and a questionnaire administered to certain class members, among other

9    information.  Phillips Decl., Ex. A at 4-6.

10    At the hearing, plaintiffs explained the trial plan as follows.  For certain activities,

11    plaintiffs will use hard data from Wal-Mart's records.  For instance, Wal-Mart tracked which

12    drivers received a $42 stipend for taking a layover, so plaintiffs can calculate how much allegedly

13    remains owed for layovers taken in the tractor cab.  *See* Pls.' Opp'n to Mot. to Decert.at 16-17.

14    Plaintiffs propose calculating pre- and post-trip inspections using Wal-Mart data showing how

15    many days a worker worked.   Because at least one pre-trip inspection must be completed at the

16    beginning of the workday and one post-trip inspection at the end, plaintiffs propose calculating

17    these at one and one per work day.  Rest breaks will be determined from data showing the number

18    of days a driver drove and the length of the shift, with plaintiffs assuming two rest breaks per day.

19    Other calculations will not come from "hard data" because Wal-Mart does not track this

20    information.   These include: the length of the pre-trip inspection, which plaintiffs propose

21    calculating based on 30(b)(6) deposition testimony, Wal-Mart's training video, testimony from a

22    trucking expert, and other deposition testimony; the length of rest breaks, which plaintiffs intend

23    to cap at ten minutes, per California law; the time spent washing the truck; and the time spent

24    weighing the truck.   Plaintiffs have also clarified their paperwork theory.   For paperwork

25    completion, plaintiffs state in their opposition brief that their "paperwork claim is limited to the

26    time drivers spend meeting with driver coordinators at the beginning and end of each trip."  Pls.'

27    Opp'n to Mot. to Decert. at 5.

28    Wal-Mart attacks plaintiffs' proposed use of representative testimony and argues that the

26

United States District Court
Northern District of California

situation here is distinguishable from the method of calculating damages that the Supreme Court recently approved in *Tyson Foods*.  In that case, workers sued for overtime wages they alleged were owed for uncompensated time spent donning and doffing protective gear as part of their jobs. The Supreme Court affirmed the decision to certify the class, agreeing that class issues predominated over individual ones.

The Court also found that, in the absence of employer records on the amount of time spent donning and doffing, representative sampling could be used to show classwide liability.  *Tyson Foods*, 136 S. Ct. at 1046.  There, plaintiffs proposed to use a combination of "employee testimony, video recordings of donning and doffing at the plant, and, most important, a study performed by an industrial relations expert" who conducted 744 videotaped observations to produce an average time for donning and doffing.  *Id.* at 1043.  This does not substantially differ from some of the proposed methods that plaintiffs have forwarded here.  For instance, plaintiffs' method for calculating the average time for pre- and post-trip inspections seeks to use employee testimony, a Wal-Mart training video, testimony from plaintiffs' expert, and testimony from Wal-Mart's 30(b)(6) deponent.  The types of sampling that plaintiffs seek to admit "would have been appropriate for an individual class member to use in an individual action because an employee cannot travel back in time and record how long it took to [conduct a certain task] each day . . . ." *See Autozone*, 2016 WL 4208200, at *15 (citing *Tyson Foods* and distinguishing *Dukes*, where plaintiffs "sought to establish that a small number of employees had experienced sex discrimination, and then to extrapolate those results to the class as a whole").

Part of the Supreme Court's rationale for approving the use of representative sampling rested on the fact that "[i]n many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability."  *Id.* at 1046.  In *Tyson Foods*, the defendant never recorded the time spent donning and doffing.  *Id.* at 1042.  The Supreme Court noted, "As a result of Tyson's failure to keep records of donning and doffing time, however, the employees were forced to rely on what the parties describe as 'representative evidence.'"  *Id.* at 1043.

The Supreme Court reiterated that in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680

1  (1946), it held that employees should not be punished by the denial of recovery based on the

2  grounds that the employer has not kept records of "the precise extent of uncompensated work."

3  *Id.* at 1047 (citing *Mt. Clemens*, 328 U.S. at 687.  Where an employer lacks accurate or adequate

4  records:

> an employee has carried out his burden if he proves that he has in fact performed
> work for which he was improperly compensated and if he produces sufficient
> evidence to show the amount and extent of that work as a matter of just and
> reasonable inference.  The burden then shifts to the employer to come forward with
> evidence of the precise amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's evidence.

*Mt. Clemens*, 328 U.S. at 687-88.  Although *Mt. Clemens* involved the statutory duty to keep

records under the Fair Labor Standards Act, the Court finds the policy rationales of the *Mt.*

*Clemens* decision to be informative.  Plaintiffs in this case should not be punished by Wal-Mart's

lack of records regarding time spent on activities such as pre- and post-trip inspections, time spent

fueling, time on paperwork, etc.  *See also Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 727

(where employer failed to keep accurate time records, "the consequences for such failure should

fall on the employer, not the employee") (citing *Mt. Clemens*, 328 U.S. at 687; Cal. Code Regs.,

tit. 8, § 11070, subd. 7(A)(3)).

Plaintiffs have presented a plan for proving damages using a combination of hard data

from Wal-Mart and, where Wal-Mart did not collect or keep such data, representative sampling.

With that evidence before the jury, it will be within Wal-Mart's rights to bring in individuals,

whether its own experts or individual class members, in an attempt to disprove the damages model

that plaintiffs put forward or, as the Supreme Court has described it, "to negative the

reasonableness of the inference to be drawn from the employee's evidence."  *See Mt. Clemens*,

328 U.S. at 688.  The Court finds that utilizing such a process continues to make the class action

vehicle in this case "superior to other available methods for fairly and efficiently adjudicating the

controversy."  *See* Fed. R. Civ. P. 23(b)(3).

Finally, Wal-Mart argues that it cannot be liable for certain class members' claims because

some of the drivers were not California-based drivers during the class period and thus are not

subject to California minimum wage law.  Def.'s Mot. to Decert. at 20-21.  Wal-Mart has made

United States District Court
Northern District of California

28

this argument before, and the Court remains unpersuaded.  *See* Dkt. No. 158 at 12.  For one, it strikes the Court that accurate information where its truck drivers work is most likely to be in the hands of Wal-Mart.  More importantly, the Court has certified a class of "all persons employed *in California* by defendant in the position of Private Fleet Driver . . . ."  *See* Dkt. No. 158 at 6 (emphasis added).  Thus, drivers who were not based in California are simply not part of the class and are not entitled to relief.[11]   To the extent that Wal-Mart is concerned that non-California drivers may somehow sneak into the class to obtain relief, this concern can be addressed appropriately through claims forms, should a jury ultimately award monetary relief to plaintiffs.

///

///

---

[11] Relying on California Supreme Court case law, the Court has explained that this means: "If an employee resides in California, receives pay in California, and works exclusively, or principally, in California, then that employee is a 'wage earner of California' and presumptively enjoys the protection of IWC regulations."  Dkt. No. 158 at 12 (quoting *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996)).  In its motion to decertify, Wal-Mart selectively quotes from *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1199 (2011).  *See* Mot. to Decert. at 20.  The full quote lends further support to the idea that the truck drivers in this case may be entitled to relief: "California law, we suggested [in *Tidewater*], might follow California resident employees of California employers who leave the state 'temporarily . . . during the course of the normal workday . . . .'"  *Sullivan*, 51 Cal. 4th at 1199.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss named plaintiff Pagtama from the case, GRANTS defendant's motion to dismiss class members Williams, Taylor, and Putnam, and DENIES defendant's motion to dismiss class member Eason. The parties are ORDERED to meet and confer regarding the status of proceeding with named plaintiff Krohn's deposition and to file an update with the Court **no later than September 2, 2016.** The Court DENIES defendant's motion for summary judgment and GRANTS plaintiffs' cross-motion for summary judgment.  The Court DENIES defendant's motion to decertify the class.


        **IT IS SO ORDERED**.

Dated:  August 30, 2016

_____
SUSAN ILLSTON
United States District Judge