UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RIDGEWAY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WAL-MART STORES INC.,<br><br>    Defendant. | Case No. 08-cv-05221-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' POST-TRIAL MOTION**<br><br>Re: Dkt. No. 539 |

Now before the Court is plaintiffs' post-trial motion, seeking: (1) restitution under California's Unfair Competition Law ("UCL"), Business and Professions Code sections 17200 et seq.; (2) liquidated damages under California Labor Code section 1194.2; and (3) civil penalties under California Labor Code section 1197.1.  Docket No. 539.  Having considered the arguments presented in the papers and at the hearing, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion.

**BACKGROUND**

The facts of this case are recited in numerous prior orders, including the Court's May 28, 2015 order granting in part and denying in part plaintiffs' motion for partial summary judgment. *See* Docket No. 211.  Plaintiffs are truck drivers in California previously employed by defendant Wal-Mart Stores, Inc. ("Wal-Mart") for some period of time between 1993 and the present. Docket No. 73, Fourth Amended Complaint ("FAC") ¶¶ 3-6.  Plaintiffs initially filed this case in Alameda County Superior Court on October 10, 2008.  Docket No. 1.  Wal-Mart removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), in November 2008.  *Id.*

Following a three-year stay pending a final decision by the California Supreme Court in *Brinker Restaurant Corporation v. Superior Court*, Case No. S166350; class certification in September 2014; and motions for partial summary judgment brought by both parties, this case went to trial on October 27, 2016. Upon a stipulation by the parties to modify the class period, the class definition at the time of trial was: "All persons employed in California by Defendant in the position of Private Fleet Driver at any time from October 10, 2004 to October 15, 2015." Docket Nos. 406, 535 at 13.

Plaintiffs went to trial on their minimum wage claims, alleging that Wal-Mart violated California minimum wage law by failing to pay class members the minimum wage for eleven tasks. Trial lasted for sixteen days. On November 23, 2016, the jury returned a verdict in plaintiffs' favor on four of the eleven tasks at issue, finding that class members were paid less than the minimum wage by Wal-Mart for some or all hours worked for: performing pre-trip inspections, performing post-trip inspections, taking 10-minute rest breaks, and taking 10-hour layovers. Docket No. 529.

The jury accepted the damages calculations set forth by plaintiffs' expert witness Dr. G. Michael Phillips and awarded damages to the class as follows:

| | |
|---|---|
| Performing Pre-Trip Inspections: | $2,971,220 |
| Performing Post-Trip Inspections: | $2,971,220 |
| Taking 10-minute Rest Breaks: | $3,961,975 |
| Taking 10-hour Layovers: | $44,699,766 |

Docket No. 529 at 3. These figures reflect the testimony that Dr. Phillips provided at trial regarding the class members' damages for each respective task for the October 10, 2005, to October 15, 2015 time period. *See* Docket No. 497, Tr. at 1524:1-13, 1528:24-1529:15, 1532:25-1533:6, 1582:3-10.

As discussed at trial, the Court also submitted to the jury questions relevant to the calculation of civil penalties. For this purpose, the jury found that Wal-Mart intentionally failed to pay minimum wage to class members in any pay period from October 10, 2007, to October 15, 2015. Docket No. 529 at 4. The jury accepted the calculations of plaintiffs' expert Edward Garcia

1   and found that Wal-Mart failed to pay minimum wage to class members for 103,221 pay periods
2   from October 10, 2007, to October 15, 2015. *See id.*; Docket No. 492, Tr. at 1859:11-20,
3   1860:10-19.

4       The Court delayed entering judgment until the parties had the opportunity to brief the
5   issues reserved for the Court. Plaintiffs filed the instant motion on December 14, 2016. Docket
6   No. 539. Defendant filed its opposition on January 13, 2017. Docket No. 546. Plaintiff replied
7   on January 18, 2017, Docket No. 547, and this matter came on for hearing on January 24, 2017.

## DISCUSSION

### I. Restitution under the California Unfair Competition Law

Plaintiffs seek restitution under the UCL for October 10, 2004, through October 9, 2005, in the amount of at least $5,861,148. Mot. at 18, 26. Plaintiffs' fourth cause of action alleged violations of the UCL, and in February 2016 plaintiffs filed a motion for partial summary judgment on their UCL claim. Docket Nos. 73 at 19-21, 255. Based in part on the California Supreme Court's decision in *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000), this Court agreed with plaintiffs that, having previously found that Wal-Mart's pay policies violate California minimum wage law, plaintiffs were entitled to summary judgment on their UCL claim. Docket No. 255 at 3-4 (citing *Cortez*, 23 Cal. 4th at 178) (("[A]ny business act or practice that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair business practice.").

In California, minimum wage violations carry a three-year statute of limitations, whereas UCL violations are subject to a four-year statute of limitations. Cal. Code Civ. Proc. § 338(a); Cal. Bus. & Prof. Code § 17208. Claims under the UCL are claims for equitable relief and are therefore reserved for the Court. *See Cortez*, 23 Cal. 4th at 173. At trial, the jury was asked to return a verdict on plaintiffs' minimum wage claims dating from October 10, 2005 (i.e., three years before the filing of this lawsuit). Plaintiffs now request that the Court award restitution for the preceding year, dating from October 10, 2004.

The Court finds that Wal-Mart's opposition, stating that the evidence in this case does not

support plaintiffs' request for restitution, forwards arguments that defendant made at trial and that the jury rejected. For instance, Wal-Mart argues that plaintiffs have not established liability, when the jury has clearly ruled in favor of plaintiffs on four of the eleven tasks for which plaintiffs alleged minimum wage violations. *See* Oppo. at 25. Wal-Mart also argues that Dr. Phillips's calculations rested on unreasonable assumptions; however, the jury adopted the figures set forth by Dr. Phillips, even after hearing extensive testimony from Wal-Mart's expert Dr. Jonathan Walker that primarily focused on challenging the reasonableness of Dr. Phillips's calculations. *See id.* at 25-29.

Wal-Mart urges the Court not to accept Dr. Phillips's figures as to layovers, arguing that by calculating that pay is owed for the entire 10-hour layover period, Dr. Phillips overestimates. Wal-Mart argues that the 2001 Pay Manual governing the October 2004 to October 2005 time period does not require management approval for layovers to be taken outside the truck. *Id.* at 26-27. Defense counsel made this same argument at closing, that Wal-Mart did not require drivers to take layovers in the sleeper berth. *See* Docket No. 522, Tr. at 2696:4-22, 2698:1-12 (restating testimony that drivers do not have to ask for any kind of permission to take a layover in a hotel), 2699:5-11 (restating testimony from named plaintiff Charles Ridgeway that he would not have asked for permission to take a layover at home). Still, the jury found Wal-Mart owed damages for minimum wage violations for plaintiffs' 10-hour layovers. The Court agrees with plaintiffs' argument at the hearing, that the operative question is not whether drivers spent every minute of their layovers in the trucks' sleeper berth but is whether Wal-Mart exercised control over its drivers during layovers. The Court has already found that "the policies in the Driver Pay Manuals[,]" including the 2001 Driver Pay Manual on which Wal-Mart now relies, "subjected drivers to Wal-Mart's control during layover periods." *See* Docket Nos. 211 at 14, 435 at 3-4. The jury was instructed that if "plaintiffs prove . . . that Wal-Mart applied the policy as it is stated in the driver pay manuals," then plaintiffs are entitled to minimum wage for that time. Docket No. 535 at 17. The jury returned a verdict in favor of plaintiffs on this question.[1]

---

[1] At the hearing, Wal-Mart cited to *Nance v. May Trucking Co.*, No. 12-cv-1655-HZ, 2014 WL 199136 (D. Or. Jan. 15, 2014). In its brief, Wal-Mart uses *Nance* to support its position that

4

Similarly, Wal-Mart attacks Dr. Phillips's calculations as overestimating the time spent on pre- and post-trip inspections, for which he assumed 15 minutes at the start and end of each work day, and on rest breaks, for which he assumed two 10-minute breaks per day. Although there may be variances in the evidence, showing that not every class member on every day spent 15 minutes on inspections and took two 10-minute rest breaks, the Court has rejected Wal-Mart's similar arguments in the past. As previously explained, representative sampling used to reach an average amount of time spent on a certain activity was approved by the Supreme Court in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). This Court has also explained that it is persuaded by "the policy rationales" of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which held that employees should not be punished by the denial of recovery based on the grounds that the employer has not kept records of "the precise extent of uncompensated work." *See* Docket No. 405 at 27-28 (citing *Tyson Foods*, 136 S. Ct. at 1047). Where the jury has accepted the figures of Dr. Phillips, even after hearing defendant's expert witness testimony as to why Dr. Phillips's calculations were flawed, so too will the Court. *See* Docket No. 522, Tr. at 2682:13-24 (defense closing argument that Dr. Phillips's calculations were flawed because inspections at the distribution center are covered by other paid activities), 2686:16-2687:25 (arguing that Dr. Phillips's rest break assumption was flawed). Wal-Mart has already indicated that it intends to file post-judgment motions under Federal Rules of Civil Procedure 50 and 59. *See* Docket No. 543. Many of the arguments that Wal-Mart presents in its current opposition are better suited for its upcoming motions.

Wal-Mart also indicates that there is some confusion over which "prong" of the UCL plaintiffs now seek to apply. Oppo. at 29. Wal-Mart argues that plaintiffs "appear to invoke the 'unfair' prong of the UCL," and that plaintiffs "should be estopped from reframing their UCL claim at this late hour." *Id.* The Court has always understood plaintiffs to be seeking restitution

---

its layover policies were not unreasonable. *See* Oppo. at 10. To the extent that Wal-Mart also means to use *Nance* to argue that the Court should not award restitution for layovers, the Court finds that case to be inapplicable here. *Nance* involved claims brought under the Fair Labor Standards Act and Oregon minimum wage law, against a company that did not operate in California. *See Nance*, 2014 WL 199136, at *1-2. It is therefore not instructive on the question of whether California law requires compensation for layovers.

5

1   under the "unlawful" prong of the UCL. *See* Docket No. 286 at 4-6. Upon closer reading of
2   plaintiffs' present motion, the Court still understands this to be the case. It appears that plaintiffs
3   assert a claim under the "unlawful" prong of the UCL, arguing in the alternative that even if Wal-
4   Mart did not enforce the policies in its pay manuals, "this was still an unfair *practice* that violated
5   the UCL." *See* Mot. at 22. Some of this confusion may result from the language in *Cortez*, which
6   stated that "[f]ailure to promptly pay [earned] wages was unlawful and thus an unfair business
7   practice." *Cortez*, 23 Cal. 4th at 168. Nevertheless, the California Supreme Court has made clear
8   that a violation of California's minimum wage law constitutes an unlawful business act or practice
9   under the UCL and that payment of those wages is therefore available as a restitutionary remedy.
10  *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (2011) ("the failure to pay legally required
11  overtime [under California Labor Code §§ 510, 1194] falls within the UCL's definition of an
12  'unlawful . . . business act or practice'") (citing Cal. Bus. & Prof. Code § 17200; *Cortez*, 23 Cal.
13  4th at 177); *Cortez*, 23 Cal. 4th at 177 (an employer that has unlawfully withheld wages from an
14  employee "has acquired the money . . . by means of an unlawful practice that constitutes unfair
15  competition as defined by section 17200").

16  Although it is within the equitable discretion of the Court to award a lesser amount than
17  what plaintiffs seek, the Court sees no basis for doing so at this time. The policies and pay manual
18  in effect on October 10, 2004, are the same ones that were in effect on October 10, 2005. The jury
19  found Wal-Mart liable on four of the eleven tasks for which plaintiffs alleged minimum wage
20  violations. The jury also adopted the figures set forth by Dr. Phillips at trial. The Court will do
21  likewise here.

22  At trial, Dr. Phillips testified to the following figures totaling minimum wage violations as
23  to class members from October 10, 2004, through October 9, 2005:

24              Pre-trip inspections:       $350,157
25              Post-trip inspections:      $350,157
26              10-minute rest breaks:      $466,528[2]

---

[2] Plaintiffs state in their motion that Dr. Phillips testified that this figure was $466,529, but the transcript shows that he testified to the figure $466,528. *See* Mot. at 25; Docket No. 497, Tr.

6

|   |   |
|---|---|
| 10-hour layovers: | $4,694,305 |

Docket No. 497, Tr. at 1524:1-25, 1528:24-1529:14, 1532:25-1534:9, 1582:4-14. Following the jury's verdict, the Court will award restitution to the class in these amounts.

Plaintiffs also seek interest on their UCL claim, in the amount of ten percent. Mot. at 26. Both parties agree that prejudgment interest on a UCL claim is not set by statute but is subject to the equitable discretion of the Court. *Id.*; Oppo. at 30. The parties disagree, however, as to the proper interest rate. Plaintiffs argue that the Court should apply a ten percent interest rate, based on Labor Code section 218.6, which states: "In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code . . . ." Civil Code section 3289(b) in turn sets the interest rate at ten percent per annum. Wal-Mart argues that the Court should award no prejudgment interest, for the same above stated reasons that it argues plaintiffs are entitled to no restitution under the UCL. Oppo. at 30. However, if the Court does award prejudgment interest, Wal-Mart argues that the correct rate is only seven percent per annum, as provided under the California Constitution. *Id.* at 30 n.25. Plaintiffs do not address this argument in their reply.

The cases on which Wal-Mart relies for its proposition that seven percent is the correct rate all involved UCL claims predicated on violations of federal law. *See* Mot. at 30 n.25 (citing *Wallace v. Countrywide Home Loans, Inc.*, No. 08-1463-JST, 2013 WL 1944458, at *8-9 (C.D. Cal. Apr. 29, 2013) (UCL claim predicated on federal Fair Labor Standards Act)); *Ulin v. Lovell's Antique Gallery*, No. 09-3160-EDL, 2011 WL 2443676, at *2 (N.D. Cal. June 15, 2011) (same); *Carrizosa v. Stassinos*, No. 05-2280-RMW, 2010 WL 4393900, at *4 (N.D. Cal. Oct. 29, 2010) (UCL claim predicated on federal Fair Debt Collection Practices Act). Here, by contrast, plaintiffs pursued to trial only their minimum wage claims under California law. Given the availability of a state statute that specifies the amount of prejudgment interest earned on "action[s] brought for the nonpayment of wages," the Court finds this to be the preferable source for an interest rate. *See* Cal. Lab. Code § 218.6.

---

at 1534:4-9. This explains why plaintiffs' total request exceeds what the Court awards here by one dollar.

1 Exercising its equitable discretion, the Court thus finds that the appropriate rate of
2 prejudgment interest under the facts of this case is the ten percent that plaintiffs seek.
3 Nevertheless, there is no reason to enhance the figures that Dr. Phillips provided at trial. Dr.
4 Phillips testified that his calculations already incorporated a "simple interest" rate of ten percent.
5 Docket No. 497, Tr. at 1526:8-1528:4. Thus, for purposes of awarding restitution for October 10,
6 2004 through October 9, 2005, with ten percent prejudgment interest, the Court awards to the class
7 a total of $5,861,147.

## II. Liquidated Damages under California Labor Code Section 1194.2

Plaintiffs argue that class members are entitled to $54,604,181 in liquidated damages under California Labor Code section 1194.2. Mot. at 7. Section 1194.2 provides, in part:

> (a) In any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon . . . .
>
> (b) Notwithstanding subdivision (a), if the employer demonstrates to the satisfaction of the court . . . that the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code relating to minimum wage, or an order of the commission, the court . . . may, as a matter of discretion, refuse to award liquidated damages or award any amount of liquidated damages not exceeding the amount specified in subdivision (a).

Cal. Lab. Code § 1194.2.

The parties dispute whether Wal-Mart can show either good faith or a reasonable belief under subsection (b) of the statute. Plaintiffs also assert, in their papers and at the hearing, that the Court must limit its review of good faith and reasonableness to evidence that Wal-Mart put on at trial. Plaintiffs do not cite any authority for this latter argument, and the Court will not so limit its review here. As the Court reads the statute, demonstrating "to the satisfaction of the court" that an act was in good faith and that an employer had reasonable grounds for believing its conduct was lawful may require the consideration of factors, such as the evolving state of the law, that are not appropriate for presentation to a jury. Additionally, the Court finds that Wal-Mart did present

8

evidence at trial demonstrating that defendant can meet the requirements of section 1194.2(b).[3] The Court thus declines to impose liquidated damages.

### A. Good Faith

At trial, the jury received an instruction regarding the element of intentionality for purposes of calculating civil penalties under Labor Code section 1197.1. *See* Docket No. 535 at 21. That instruction included the following language: "Where a 'good faith dispute' exists, an employer has not 'intentionally' failed to pay wages." *Id.* Plaintiffs now argue that the jury's verdict, finding that Wal-Mart intentionally failed to pay minimum wage to class members, precludes a finding of good faith. Mot. at 10-11. They urge the Court to "accept the verdict as advisory and rule that Wal-Mart has not satisfied the good faith component of the defense to liquidated damages . . . ." *Id.* at 11. Plaintiffs also argue that defendant has not met its burden in any event, because Wal-Mart could not have believed in good faith that its activity codes encompassed all required work, given that, in plaintiffs' view, Wal-Mart never tried to communicate to its drivers that its practice differed from the written pay policies and that Wal-Mart forwarded throughout the history of this case an unlawful argument that its pay to drivers "averaged out" to more than minimum wage. *Id.* at 11-16.

As an initial matter, the Court finds the jury instruction as to intentionality does not govern the good faith analysis required under section 1194.2. The jury was instructed that "intentionally" means "willfully or with a conscious objective to engage in particular conduct." Docket No. 535 at 21. The good faith inquiry, in contrast, focuses on whether the employer acted with dishonest or wrongful motive. *Compare Gutierrez v. Odyssey Landscaping Co., Inc.*, No. A138158, 2013 WL 6328845, at *5 (Cal. Ct. App. Dec. 5, 2013) (affirming a finding of lack of good faith where employer altered timecards after employees signed them), *with Borham v. Lieberman*, No. A136210, 2014 WL 2002034, at *3 (Cal. Ct. App. May 16, 2014) (recognizing good faith where

---

[3] The Court further notes that plaintiffs' Fourth Amended Complaint does not contain a request for relief under Labor Code section 1194.2. *See* Docket No. 73.

9

1   employer sought state agency advice on compliance). The discussion at trial regarding
2   intentionality centered on section 1197.1, as the parties agreed from the outset that damages under
3   section 1194.2 would be reserved to the Court.

4         Further, the pre-trial proceedings and the evidence introduced at trial "demonstrate to the
5   satisfaction of the court" that Wal-Mart implemented its pay policy in good faith. *See* Cal. Lab.
6   Code § 1194.2(b). Wal-Mart's pay policy included discretionary pay for drivers who
7   unexpectedly fell short of daily averages. Docket No. 482, Tr. at 1000:24; *cf.* Brass Decl. Ex. A,
8   *Gonzalez v. Downtown LA Motors*, No. BC350769, at 17 (Los Angeles Cty. Super. Ct. June 20,
9   2011) (method for adjusting employee wages to ensure double minimum wage evidences good
10  faith). In October 2015, the California legislature passed Assembly Bill 1513, which the
11  Department of Industrial Relations explained was "designed to resolve unsettled controversies
12  over how to compensate piece-rate workers during . . . work time that does not generate piece-rate
13  earnings." *See* 2015 Cal. Legis. Serv. Ch. 754 (A.B. 1513); Brass Decl. Ex. C. Less than one
14  week later, Wal-Mart modified its piece-rate pay policies. *See* Docket Nos. 390, Tr. at 29:3-8,
15  32:22-33:25; 406. Wal-Mart presented testimony, which the jury accepted, that it compensated
16  drivers for certain tasks through the use of activity codes that encompassed those tasks. *See, e.g.,*
17  Docket No. 482, Tr. at 1007:3-8 (fueling is paid as "part of the arrive"). Testimony at trial showed
18  that Wal-Mart's compensation is among the highest in the trucking industry and that Wal-Mart's
19  attrition rates are much lower than industry average. Docket Nos. 469, Tr. at 442:3-20, 469:22-
20  470:15, 470:17-471:7; 478, Tr. at 781:2-18; 506, Tr. at 2522:6-11, 2525:15-2526:12. These facts
21  all suggest good faith on Wal-Mart's part.

### B.   Reasonableness

24  Plaintiffs argue that Wal-Mart lacked grounds for reasonably believing its payment method
25  complied with the Labor Code because *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314 (2005),
26  establishes that averaging does not comply with California law. Mot. at 17-18. Wal-Mart
27  responds that most of its pay decisions were made against a backdrop of uncertain and evolving
28  law. Oppo. at 7-11.

To avoid liquidated damages, an employer must have reasonable grounds for believing an act or omission does not violate any provision of the Labor Code relating to minimum wage. Cal. Lab. Code § 1194.2(b). The Court finds as an initial matter that the *Armenta* decision is not dispositive with respect to reasonableness. Although *Armenta* has come to stand for the proposition that an employer cannot use averaging to comply with California labor law, *Armenta* involved employees compensated on an hourly basis, and a California appellate court did not hold that *Armenta* applies to an employer's use of the piece-rate payment system until 2013. *See Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 49 (2013). Because Wal-Mart utilized an activity-based payment scheme throughout the class period, the *Armenta* decision does not necessarily establish that Wal-Mart's pay policy was unreasonable.

Indeed, the passage of AB 1513 in October 2015 was intended to clarify what the State of California's Department of Industrial Relations described as "unsettled controversies" in this area. *See* Brass Decl. Ex. C. During deliberations over AB 1513, "many employers . . . expressed concern about liability since they had not previously compensated employees paid on a piece rate system" for non-productive time or rest breaks. Assembly Floor Analysis of Assembly Bill No. 1513 (2015-2016 Reg. Sess.), as amended Sept. 9, 2015, p.5. These concerns reflected a general uncertainty about piece-rate compensation. Until California appellate courts issued decisions specific to piece-rate or activity-based compensation in 2013, the law regarding nonproductive time and rest breaks was arguably unsettled. *Id.* at 4-5; *see also Bluford v. Safeway Stores, Inc.*, 216 Cal. App. 4th 864 (2013); *Gonzalez*, 215 Cal. App. 4th 36. Accordingly, the Legislature recognized the need to "clarify compensation requirements going forward." Assembly Floor Analysis of Assembly Bill No. 1513 (2015-2016 Reg. Sess.), as amended Sept. 9, 2015, p.5. Because Wal-Mart's payment policy developed in this uncertain landscape, the Court finds Wal-Mart had reasonable grounds for believing their piece-rate compensation scheme complied with California minimum wage law.

With respect to layovers, Department of Transportation regulations require that drivers maintain ten hours off duty separating each twelve hours on duty. 49 C.F.R. §§ 395.1, 395.2. However, neither state nor federal regulations specify whether this mandated break constitutes

compensable time. At trial, a number of drivers testified that other long-haul trucking employers do not pay for layovers. Docket Nos. 474, Tr. at 672:13-15; 478, Tr. at 792:12-14; 484, Tr. at 1300:8-16; 492, Tr. at 1749:12-14, 1801:23-25; *cf. Gonzalez v. Downtown LA Motors*, No. BC350769, at 17 (Los Angeles Ct. Super. Ct. June 20, 2011) (a widespread industry practice is evidence of reasonableness). Although the jury found in plaintiffs' favor as to liability on the issue of payment for layovers, that does not preclude the Court from finding that Wal-Mart did have reasonable grounds to believe that its layover policies did not violate the law.

The Court does not, however, credit Wal-Mart's argument that a "split among the courts regarding the preemptive effect of the Federal Aviation Administration Authorization Act ('FAAAA') on California's minimum wage laws . . . further demonstrates the reasonableness of Wal-Mart's approach to its pay plans." *See* Oppo. at 11. The Court has visited this issue many times at Wal-Mart's urging and, for the reasons stated in its prior orders, it does not find Wal-Mart's continued FAAAA preemption argument to be an indicator that Wal-Mart's pay plans were objectively reasonable. *See* Docket Nos. 72 at 3-6, 82 at 4-5, 405 at 9-15.

The parties also debate whether the limitations period for liquidated damages under Labor Code section 1194.2 is one year or three years. *See* Mot. at 7-9; Oppo. at 23-24. Because the Court declines to award liquidated damages, it need not reach this issue. Plaintiffs' request for liquidated damages is DENIED.

### III. Civil Penalties under California Labor Code Section 1197.1

Finally, plaintiffs seek civil penalties in the amount of $25,698,300, pursuant to California Labor Code section 1197.1. Wal-Mart argues that plaintiffs are not entitled to penalties because section 1197.1 does not provide a private right of action. Oppo. at 19-20.

Labor Code section 1197.1 provides, in part:

> (a) Any employer . . . who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 [waiting time penalties] as follows:

12

> (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.
>
> (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.
>
> (3) Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee.

Cal. Lab. Code § 1197.1.

During briefing on jury instructions, Wal-Mart previously raised the argument that section 1197.1 does not provide a private right of action. The Court denied Wal-Mart's request not to instruct the jury regarding certain elements of these civil penalties. *See* Docket No. 435 at 7-8. At Wal-Mart's urging, the Court has revisited this argument and now finds that Wal-Mart is correct that plaintiffs in this case may not recover the penalties described in section 1197.1. Although California courts have yet to evaluate whether section 1197.1 allows the penalties described therein to be paid directly to an employee, the California Court of Appeal has evaluated when other sections of the California Labor Code provide for remedies payable to the employee. Those cases are instructive here.

In *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365 (2005), the Court of Appeal explained when a provision of the Labor Code may be enforced by a private individual. Effective January 1, 2004, the Labor Code Private Attorney General Act of 2004 ("PAGA") began "to allow aggrieved employees . . . to bring a civil action to collect civil penalties for Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber*, 134 Cal. App. 4th at 374. Penalties collected by employees bringing PAGA actions "are to be distributed 75 percent to the State and 25 percent to the aggrieved employee." *Id.* at 370. As later explained by a subsequent court, the *Caliber* court distinguished between "two distinct categories of 'penalties': statutory penalties . . . for employer wage-and-hour violations [that are] recoverable directly by employees and civil penalties that are

13

enforceable only by the state's labor law enforcement agencies or through a PAGA action." *Noe v. Super. Court*, 237 Cal. App. 4th 316, 338 (2015) (quoting *Caliber*, 134 Cal. App. 4th at 378) (internal quotation marks omitted). The *Caliber* court then evaluated various provisions under which plaintiffs sued, determining, for instance, that Labor Code section 203 was a statutory penalty because it "obligates an employer that willfully fails to pay wages due an employee who is discharged or quits **to pay the employee**, in addition to the unpaid wages, a penalty . . . ." *Caliber*, 134 Cal. App. 4th at 377 (emphasis added). By contrast, Labor Code section 225.5 was a civil penalty in that it provided that "an employer that unlawfully withholds wages in violation of certain specified provisions of the Labor Code is subject to a civil penalty in an enforcement action initiated by the Labor Commissioner in the sum of $100 per employee for the initial violation and $200 per employee for subsequent or willful violations . . . ." *Id.* at 378. Employees wishing to enforce the latter penalty, therefore, must first comply with PAGA's notice and exhaustion requirements before filing suit in court. *Id.*

More recently, in *Noe*, the court explained that "*Caliber* demonstrates that where . . . a Labor Code provision provides for a 'civil penalty' and contains no language suggesting the penalty is recoverable directly by employees, no private right of action is available other than through a PAGA claim." 237 Cal. App. 4th at 339. *Noe* involved food and beverage vendors suing for minimum wage violations and for misclassification as independent contractors under California Labor Code section 226.8. *Id.* at 319. The court held that the penalties provided in section 226.8 were not payable to the employees directly through a private suit, as the statute "repeatedly refers to a 'civil penalty[,]' includes no language permitting a misclassified employee to collect the penalty[, and] includes specific language indicating that the provision is to be enforced by the 'Labor Commissioner.'"[4] *Id.* at 339. Similarly, in *Ruiz v. Paladin Group, Inc.*, No. 03-6018-GHK, 2003 WL 22992077 (C.D. Cal. Sept. 29, 2003), the district court found no private right of action to enforce the civil penalties of California Labor Code section 558. The language of the statute did not specify a private right of action and "[t]he structure of the statute

---

[4] The defendants in *Noe* did not dispute that plaintiffs could enforce the provisions of section 226.8 through a collective action under PAGA. *Noe*, 237 Cal. App. 4th at 335.

14

also suggests that it is enforceable only by the Labor Commissioner." *Ruiz*, 2003 WL 22992077, at \*2. Section 558 governs the regulation of hours and days of work for employees, and its language closely mirrors that found in section 1197.1 *Compare* Cal. Lab. Code § 558 *with* Cal. Lab. Code § 1197.1.

Looking first to the language of the statute, the Court finds that Labor Code section 1197.1 does not state that the prescribed penalties accrue directly to the employee. To the contrary, several provisions in the statute refer to remedies *other than the civil penalty* that accrue to the employee. *See* Cal. Lab. Code § 1197.1(a) ("[The] employer . . . shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 . . ."), (a)(3) ("Wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203, recovered pursuant to this section shall be paid to the affected employee."). That the legislature specified within section 1197.1 which remedies are payable to the employee, but did not include the penalties at issue here, indicates that the legislature did not intend these penalties to be paid to the employee, as plaintiffs suggest.

In their papers, plaintiffs construe the phrase "payable to the employee" in subsection (a) to apply to all of the three preceding remedies: civil penalty, restitution of wages, and liquidated damages. Reply at 11. Plaintiffs assert: "[S]ection 1197.1 unambiguously states that it provides for "civil penalty, restitution of wages **(and)** liquidated damages payable to the employee . . . ." *Id.* (quoting Cal. Lab. Code § 1197.1(a)) (emphasis added). That plaintiffs have had to insert the word "and" shows that the statute is not unambiguous. Under the plain language of the statute as written, the phrase "payable to the employee" modifies only the remedy of liquidated damages. Nor is the Court persuaded by plaintiffs' argument at the hearing, where plaintiffs seemed to be advocating a reading that the $100 and $250 amounts prescribed in section 1197.1 are in fact "liquidated damages payable to the employee" rather than the "civil penalty" to which the statute refers. Interpreting the statute in this way would then render superfluous the statute's use of the phrase "civil penalty." Further, the statute clarifies that the $100 and $250 amounts "shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203." *See* Cal. Lab.

15

Code § 1197.1(a)(1), (2). The only logical reading of the statute, therefore, is that the $100 and $250 are the civil penalties that the statute itself references.

Like the statute in *Noe*, section 1197.1 "repeatedly refers to a 'civil penalty.'" *See Noe*, 237 Cal. App. 4th at 339. "[T]he Legislature's use of the term 'civil penalty,' unaccompanied by any language signifying that the penalty is to be paid to the aggrieved employee, generally indicates that the penalties may only be enforced by the state's labor law enforcement agencies or through a PAGA action." *Id.* at 338. Additionally, the "[t]he structure of the statute also suggests that it is enforceable only by the Labor Commissioner." *See Ruiz*, 2003 WL 22992077, at *2. The statute devotes considerable text to the process by which the Labor Commissioner may issue a citation for the civil penalty and how an employer may contest such a citation. *See* Cal. Lab. Code § 1197.1(b)-(f).

The two cases that plaintiffs cite as support for the private enforceability of the statute do not address the question at hand. *See* Reply at 10-11. In *Brewer v. Premier Golf Properties*, 168 Cal. App. 4th 1243 (2008), the defendant employer against whom the trial court had imposed civil penalties under section 1197.1 did not appeal the substance or method of calculating the civil penalties. *See Brewer*, 168 Cal. App. 4th at 1251 & n.6. That appeal focused on the punitive damages award. Nor was the court in *Varsam v. Laboratory Corporation of America,* 120 F. Supp. 3d 1173 (C.D. Cal. 2015), faced with the question of private enforcement of section 1197.1. One of the plaintiff's causes of action there was for violation of Labor Code sections 1194, 1197, and 1197.1, but defendant did not move to dismiss section 1197.1 specifically, and the court found that plaintiff had sufficiently alleged a minimum wage violation for the complaint to survive a motion to dismiss. *Varsam*, 120 F. Supp. 3d at 1177-78. The court did, however, dismiss plaintiff's PAGA claims with leave to amend for the plaintiff to allege that she had complied with all of PAGA's administrative exhaustion requirements. *Id.* at 1183.

Having reviewed the language of the statute and the analogous case law, the Court concludes that plaintiffs may not in the present lawsuit seek an award of the penalties listed in section 1197.1. This does not mean that an employee may never enforce section 1197.1 in a civil suit. As the Court reads the statute and the case law, an employee may enforce section 1197.1

16

through a representative action under PAGA. PAGA requires that, prior to initiating a civil lawsuit, the employee must have complied with various notice and administrative requirements. Cal. Lab. Code § 2699.3(a). Plaintiffs here have not done so.[5]

Because the Court finds that plaintiffs are not entitled to penalties under section 1197.1, the Court need not address the parties' dispute regarding the appropriate method of calculating those penalties. Likewise, the Court need not reach defendant's due process arguments.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion. The Court GRANTS plaintiffs' request for restitution under the UCL in the amount of $5,861,147.00. The Court DENIES plaintiffs' request for liquidated damages under Labor Code section 1194.2 and DENIES plaintiffs' request for civil penalties under Labor Code section 1197.1.

A separate Judgment will follow this Order.

**IT IS SO ORDERED**.

Dated: January 25, 2017

SUSAN ILLSTON
United States District Judge

---

[5] Indeed, not only did plaintiffs not allege PAGA compliance in their Fourth Amended Complaint, but the operative complaint does not include a request for civil penalties under section 1197.1 at all. *See* Docket No. 73.