UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RIDGWAY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES INC.,<br><br>Defendant. | Case No. 3:08-cv-05221-SI<br><br>**ORDER RE: DEFENDANT'S (1) MOTION FOR JUDGMENT AS A MATTER OF LAW AND (2) MOTION FOR NEW TRIAL AND DECERTIFICATION**<br><br>Re: Dkt. Nos. 560, 561 |

Defendant Wal-Mart Stores, Inc., has filed a renewed motion for judgment as a matter of law and a motion for a new trial and decertification. Dkt. Nos. 560, 561. These motions came on for hearing on April 7, 2017. Having considered the arguments presented in the papers and at the hearing, the Court DENIES both motions, as to all the litigated claims. The Court GRANTS the motion for judgment as a matter of law with respect to the claims that were not tried (First, Second, Third, and Sixth Claims).

**BACKGROUND**

The facts of this case are recited in numerous prior orders, including the Court's May 28, 2015 order granting in part and denying in part plaintiffs' motion for partial summary judgment. *See* Dkt. No. 211. Plaintiffs are truck drivers in California previously employed by Wal-Mart for some period of time between 1993 and the present. Dkt. No. 73, Fourth Amended Complaint ("FAC") ¶¶ 3-6. Plaintiffs initially filed this case in Alameda County Superior Court on October 10, 2008. Dkt. No. 1. Wal-Mart removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), in November 2008. *Id.*

Following a three-year stay pending a final decision by the California Supreme Court in *Brinker Restaurant Corporation v. Superior Court*, Case No. S166350, class certification in September 2014, and motions for partial summary judgment brought by both parties, this case went to trial on October 27, 2016. Upon a stipulation by the parties to modify the class period, the

class definition at the time of trial was: "All persons employed in California by Defendant in the position of Private Fleet Driver at any time from October 10, 2004 to October 15, 2015." Dkt. Nos. 406, 535 at 13.

Plaintiffs went to trial on their minimum wage claims, alleging that Wal-Mart violated California minimum wage law by failing to pay class members the minimum wage for eleven tasks. Trial lasted for sixteen days. Before the close of trial, Wal-Mart filed a motion for judgment as a matter of law, which the Court denied without prejudice. *See* Dkt. No. 502.

On November 23, 2016, the jury returned a verdict in plaintiffs' favor on four of the eleven tasks at issue, finding that class members were paid less than the minimum wage by Wal-Mart for some or all hours worked for: performing pre-trip inspections; performing post-trip inspections; taking 10-minute rest breaks; and taking 10-hour layovers. The same jury rejected plaintiffs' claims for time spent fueling the tractor; washing the tractor/trailer; weighing the tractor/trailer at an independent weigh station; performing adjustments after weighing the tractor/trailer at an independent weigh station; undergoing Department of Transportation ("DOT") roadside inspections; meeting with a driver coordinator; or waiting at a vendor or store location. Dkt. No. 529.

The jury accepted the damages calculations set forth by plaintiffs' expert witness Dr. G. Michael Phillips and awarded damages to the class as follows:

| | |
|---|---|
| Performing Pre-Trip Inspections: | $2,971,220 |
| Performing Post-Trip Inspections: | $2,971,220 |
| Taking 10-minute Rest Breaks: | $3,961,975 |
| Taking 10-hour Layovers: | $44,699,766 |

Dkt. No. 529 at 3. These figures reflect the testimony that Dr. Phillips provided at trial regarding the class members' damages for each respective task for the October 10, 2005, to October 15, 2015 time period. *See* Dkt. No. 497, Tr. at 1524:1-13, 1528:24-1529:15, 1532:25-1533:6, 1582:3-10.

As discussed at trial, the Court also submitted to the jury questions relevant to the calculation of civil penalties. For this purpose, the jury found that Wal-Mart intentionally failed to

2

pay minimum wage to class members during pay periods from October 10, 2007, to October 15, 2015. Dkt. No. 529 at 4. The jury accepted the calculations of plaintiffs' expert Edward Garcia and found that Wal-Mart failed to pay minimum wage to class members for 103,221 pay periods from October 10, 2007, to October 15, 2015. *See id.*; Dkt. No. 492, Tr. at 1859:11-20, 1860:10-19.

The Court delayed entering judgment until the parties had the opportunity to brief the issues reserved for the Court. On January 25, 2017, the Court issued an Order granting in part and denying in part plaintiffs' post-trial motion. Dkt. No. 554. The Court granted plaintiffs' motion for restitution under the California Unfair Competition Law in the amount of $5,861,147. *Id.* at 8. The Court denied plaintiffs' motion for liquidated damages and for civil penalties under California Labor Code sections 1194.2 and 1197.1 respectively. *Id.* at 12, 17. The Court entered judgment that same day. Dkt. No. 555.

Defendants filed the instant motions on February 22, 2017. Motion for Judgment as a Matter of Law ("Mot. for JMOL") (Dkt. No. 560); Motion for New Trial and Decertification ("Mot. for New Trial") (Dkt. No. 561).

**LEGAL STANDARD**

**I.   Renewed Motion for Judgment as a Matter of Law**

Federal Rule of Civil Procedure 50(b) provides:
> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). The party moving for judgment as a matter of law bears a heavy burden. Granting a renewed motion for judgment as a matter of law is proper when the "evidence construed in the light most favorable to the non-moving party permits only one reasonable

3

conclusion as to the verdict and that conclusion is contrary to the jury's verdict." *Air-Sea Forwarders, Inc. v. Air Asia Co, Ltd.*, 880 F.2d 176, 181 (9th Cir. 1989).

The question in a motion for judgment as a matter of law is whether there is substantial evidence to support the jury finding for the non-moving party. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 909 (9th Cir. 1978). In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984). "Substantial evidence is more than a mere scintilla." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bros. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974). Rather, it is defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

## II. Motion for a New Trial

Federal Rule of Civil Procedure 59(a)(1) states, "The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). As the Ninth Circuit has noted, "Rule 59 does not specify the grounds on which a motion for a new trial may be granted . . . ." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, the court is "bound by those grounds that have been historically recognized." *Id.* "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (*quoting Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a

4

miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

**DISCUSSION**

Both the motion for judgment as a matter of law and the motion for new trial and class decertification raise issues and arguments that have been considered, and rejected, on multiple occasions in this nearly ten-year-old case. The Court will not now burden the already voluminous record with further discussion of such issues.[1] Two particular areas—layover periods and rest breaks—are emphasized by Wal-Mart in its motions. These areas were litigated and briefed extensively during the years leading up to the trial. As to those issues on which plaintiffs prevailed in this trial, it would be manifestly incorrect to find that the "evidence construed in the light most favorable to the non-moving party permits only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury's verdict." *Air-Sea Forwarders, Inc.*, 880 F.2d at 181. To the contrary, there was substantial evidence to support the jury findings for the non-moving party. *Johnson*, 251 F.3d at 1227; *Autohaus Brugger*, 567 F.2d at 909. Nor was the verdict contrary to the clear weight of the evidence or based upon false or perjurious evidence, nor did it represent a miscarriage of justice, such that a new trial would be appropriate. *Passantino*, 212 F.3d at 510 n.15.

---

[1] These issues include: (1) whether *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) is applicable here, addressed in Docket No. 405 at 27-28; (2) Wal-Mart's proposed methods for establishing compliance with California's minimum wage laws, addressed in Docket No. 211 at 11 and Docket No. 435 at 4-5 and applicable to Wal-Mart's objection to the burden of proof jury instruction; (3) whether any uncompensated time occurred in California, addressed in Docket No. 405 at 29; (4) whether the Federal Aviation Administration Authorization Act preempts California minimum wage law, addressed in Docket No. 405 at 9-15; (5) whether a justiciable case or controversy existed prior to class certification, addressed in Docket No. 56; (6) whether the ability to recover damages by class members with closed bankruptcies must be addressed now rather than during any claims distribution phase, addressed in Docket No. 435 at 8; and (7) whether the class should be decertified based on variations in time spent by class members on the tasks at issue, addressed in Docket No. 405 at 19-28. The Court is not persuaded to reverse course now; rather, it adopts and incorporates herein the reasoning of its prior orders. Wal-Mart's motions are DENIED on these grounds.

### A. Evidentiary Basis Supporting Jury Verdict

Wal-Mart's primary argument is that plaintiffs failed to establish class-wide damages through common proof and representative evidence. Wal-Mart contends that the evidence adduced at trial shows that the duration and frequency with which drivers took rest breaks, pre- and post-trip inspections, and layovers varied greatly, such that plaintiffs' reliance on their expert, Dr. G. Michael Phillips, was an improper basis for the jury's verdict. Accordingly, Wal-Mart asserts that the jury verdict is not supported by substantial evidence, entitling it to judgment as a matter of law, or alternatively, that the jury verdict is against the clear weight of the evidence, warranting a new trial and class decertification.

The arguments now being advanced are not new: before trial, Wal-Mart moved to strike Dr. Phillips' supplemental reports and opinions under Federal Rules of Civil Procedure 26 and 37, Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dkt. Nos. 336, 365. Then, as now, Wal-Mart disputed the methodology used for the damages model. Dkt. No. 365 at 5-6. The Court denied the motions, holding that Wal-Mart's objection to Dr. Phillips's testimony went to its weight, not its admissibility, and noting that Wal-Mart could address its concerns through cross-examination and the presentation of contrary evidence. Dkt. No. 417 at 5-7. The Court noted that Dr. Phillips "relied on a wide range of data, including Wal-Mart's own records, to reach his conclusions." Dkt. No. 417 at 6. This included: "electronic payroll data, hard copies of payroll documentation, GasBoy data, data of approximately 1200 DOT inspections, a driver log database, a trip detail database, and a GPS database." *Id.* Dr. Phillips also used a survey/questionnaire of approximately 40 randomly selected drivers to serve as the basis for deposition inquiry. *Id.* He "recorded and analyzed the deponents' responses based on their initial responses to the survey/questionnaire tool and any clarifications or modifications provided at deposition." *Id.*

Defendant was able to, and quite capably did, cross-examine Dr. Phillips on all of these issues. In addition, defendant called its own expert witness, Dr. Jonathan Walker, who reviewed and criticized Dr. Phillips' work. *See* Dkt. No. 528, Tr. 2178. Both parties argued strenuously to the jury about these questions, and the jury's verdict reflected its conclusions. There was

substantial evidence to support Dr. Phillips' positions, and to support the jury's verdict. See *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016) ("Reasonable minds may differ as to whether the average time [the expert] calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury.").

### 1. Rest Breaks

Wal-Mart's contentions concerning the rest break findings simply rehash its jury arguments, which the jury did not accept. It argues that Dr. Phillips could not or should not accept counsel's direction that he assume that drivers took two 10-minute rest breaks during their "usual workday . . . of 10 hours," because some drivers testified that they did not take 10-minute rest breaks during their long haul drives. However, several of those same drivers also testified that they stopped to use the restroom, stretch, and get a cup of coffee, among other things.[2] The length of average workdays was supported by documentation from Wal-Mart's files, and the jury agreed that Dr. Phillips' estimates were reasonable. Substantial evidence supported their findings and the verdict is not against the clear weight of the evidence.[3]

---

[2] At oral argument, when confronted by plaintiffs' argument that truckers who drive for 10 to 14 hours per day must have at least bathroom stops, counsel for Wal-Mart stated that "if you were to talk to truck drivers, they would tell you that they have methods of urinating in the truck." Dkt. No. 576, Tr. 34:20-22. No evidence of this sort was presented at trial.

[3] Tr. 191:6-23 (**Jennings**) (took a break "at least twice a day"); Tr. 267:9-21, 320:7-13 (**Franklin**) (At deposition, he stated, "I never took a 10-minute break. If I had to use the bathroom, I would jump out on the interstate." But testified at trial that he took rest breaks two times a day "in order to get . . . something to eat, to use the bathroom, to make a phone call"); Tr. 379:4-20 (**Green**) (took rest breaks "[a] couple times a day" for "15, 20 minutes"); Tr. 1046:10-15 (**Byers**) (took rest breaks "every 200 miles or four hours" for "[f]ifteen minutes"); Tr. 1148:7-12 (**Ridgeway**) (took rest breaks "about every two and a half hours" for "around 15 minutes, 10, 15 minutes"); Tr. 1197:8-15 (**Thatcher**) (took a "10- to 15-minute rest" break "between two and four hours" or every "100, 150 miles, 200 miles"); Tr. 1209:17-1210:5 (**Mozzini**) (took two rest breaks—once in morning and once in afternoon—for "[t]en minutes" or "[s]ometimes even longer"); Tr. 1304:23, 1313:25-1314:8 (**Harold**) (took rest breaks "if it was necessary" and stated that "[r]est breaks can be as often as you deem that you need a rest break for safety," such as if a driver gets sleepy or wants "to stretch and walk around the truck"); Tr. 1344:1-12, 1345:1-4 (**Opitz**) ("never really took the ten-minute breaks," but occasionally used the restroom and took a break to stretch his legs and get coffee; made such stops "a couple times a week" for about "five, eight minutes"); Tr. 1400:10-16 (**Gonzalez**) (took rest breaks "[a]bout once a day" for "10 to 15" minutes); Tr. 1676:7-13 (**Hill**) (took breaks "[t]hree or four times a day," noting that "[e]ventually you have to stop and use the restroom, at the minimum"); Tr. 1735:8-15 (**Famoso**) (took rest breaks for "[t]en, fifteen minutes" "sometimes every three hours, four hours"); Tr. 1796:21-

7

### 2. Pre- and Post-Trip Inspections

Wal-Mart does not dispute that drivers completed a pre-trip inspection and a post-trip inspection each workday. Rather, it argues that the evidence adduced at trial showed that the amount of time drivers spent completing such inspections varied, making Dr. Phillips' assumption of 15-minute inspections inaccurate. However, the jury found that plaintiffs were not paid minimum wage for this time and adopted Dr. Phillips' calculations. Substantial evidence supported their finding for both pre-trip inspections[4] and post-trip inspections.[5] The verdict is not against the clear weight of the evidence.

---

1797:9, 1817:12-19 (**Day**) ("three or four times a day" took breaks of "five, ten minutes" to use restroom, stretch legs, and get a cup of coffee, but it was not his "practice to take 10-minute rest breaks at any point during the day"); Tr. 1934:4-7 (**Williams**) (did not take the 10-minute rest breaks); Tr. 2073:16-25 (**Taylor**) ("[A]s far as just stopping for ten-minute breaks, it was not my practice because there were plenty of times when I could take breaks if I chose to and when I wanted to, and it just seems that I would take them whenever I felt like I needed to take them."); Tr. 2100:10-2101:11 (**Temple**) (between stops, pulled truck off road "to use the restroom, buy a snack, or make a personal phone call," but, in regards to frequency of stops, stated, "It's a rarity. To be honest with you, I couldn't give you a number."); Tr. 2460:19-2461:4 (**Harris**) (took rest breaks to "go to the bathroom, grab a soda" and noted he thought drivers were allowed "two ten-minute breaks in a five-hour period").

[4] Tr. 179:5-8 (**Jennings**) ("every bit of 15 minutes"); Tr. 254:10-14, 255:21-256:2 (**Franklin**) ("fifteen minutes"); Tr. 354:15-17 (**Green**) ("15 to 20 minutes"); Tr. 1044:1-8 (**Byers**) ("Fifteen minutes"); Tr. 1090:8-14, 1091:1-3 (**Merhoff**) ("Fifteen minutes"); Tr. 1145:3-8 (**Ridgeway**) ("15 minutes"); Tr. 1187:8-11 (**Thatcher**) ("every bit of 15 minutes"); Tr. 1205:17-25 (**Mozzini**) ("[a]pproximately 15 minutes"); Tr. 1252:18-20 (**Harold**) ("Ten minutes"); Tr. 1322:25-1323:9 (**Opitz**) ("approximately 15 minutes"); Tr. 1383:19-20 (**Gonzalez**) ("Seven to ten" minutes); Tr. 1668:21-1669:5 (**Hill**) ("Fifteen minutes"); Tr. 1728:6-9 (**Famoso**) ("commonly in between 7, 15 minutes, 7, 10 minutes"); Tr. 1769:10-12 (**Wiley**) ("About 20 minutes"); Tr. 1794:11-15 (**Day**) ("About 15 minutes"); Tr. 2467:19-21 (**Easterling**) ("the minimum amount of time would be 15 minutes"); Tr. 2502:6-8 (**Allred**) ("Fifteen minutes").

[5] Tr. 180:24-181:5 (**Jennings**) ("15 minutes"); Tr. 256:25-275:5 (**Franklin**) ("fifteen minutes"); Tr. 375:2-5 (**Green**) ("fifteen minutes"); Tr. 1044:12-17 (**Byers**) ("Fifteen minutes"); Tr. 1091:8-20 (**Merhoff**) ("Fifteen minutes"); Tr. 1145:11-16 (**Ridgeway**) ("15 minutes"); Tr. 1188:1-2 (**Thatcher**) ("Fifteen minutes"); Tr. 1206:1-10 (**Mozzini**) ("Fifteen minutes. Sometimes a little less."); Tr. 1255:24-1256:1 (**Harold**) ("Ten minutes average"); Tr. 1324:8-1325:2 (**Opitz**) ("15 minutes"); Tr. 1385:12-13 (**Gonzalez**) ("Seven to ten minutes"); Tr. 1669:13-19 (**Hill**) ("approximately 15 minutes"); Tr. 1729:8-10 (**Famoso**) ("Anywhere from 7 to 10 minutes"); Tr. 1770:3-4 (**Wiley**) ("Fifteen minutes"); Tr. 1794:16-20 (**Day**) ("about fifteen minutes"); Tr. 2469:14-19 (**Easterling**) ("usually about 15 minutes minimum"); Tr. 2503:15-17 (**Allred**) ("15 minutes").

8

### 3. Layovers

Wal-Mart attacks the jury verdict awarding damages for layover periods through two alternative arguments: (1) layovers are not compensable time as a matter of law; or (2) whether Wal-Mart exercised control during layovers is a question of fact that either did not go to the jury or lacks substantial evidence to support a finding of control. Neither argument is correct.

First, the Court disagrees with Wal-Mart's assertion that layover periods are not compensable as a matter of law. DOT regulations require drivers to take mandatory "layover" periods. "A driver may not drive without first taking 10 consecutive hours off duty." 49 C.F.R. § 395.3(a)(1). California law requires employers to pay employees at least the minimum wage per hour worked for all hours worked. Cal. Code Regs., tit. 8 § 11090; *see also* Dkt. No. 211 at 11-14. "Hours worked" means "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id.* In *Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), the California Supreme Court explained that the phrases "time during which an employee is subject to the control of an employer" and "time the employee is suffered or permitted to work, whether or not required to do so" each define "whether certain time spent is compensable as 'hours worked.'" *Morrillion*, 22 Cal. 4th at 582. Consequently, "an employee who is subject to an employer's control does not have to be working during that time to be compensated." *Id*.

After trial, the California Supreme Court decided *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), which Wal-Mart points to as new "guidance on what does *not* constitute control." Mot. for JMOL at 13 (original emphasis). The *Augustus* plaintiffs worked as security guards and were required to keep their pagers and radios on, as well as to "remain vigil and responsive to calls," during their 10-minute rest breaks. *Id.* at 260. The court reviewed two questions: (1) whether employers must permit their employees to take off-duty rest periods under Labor Code section 226.7 and the applicable wage order; and (2) whether employers may require employees to remain "on call" during rest breaks. *Id.* The court answered the first question affirmatively. *Id.*

9

As for the second question, *Augustus* held that requiring employees to remain on call did not "relieve employees from duties and employer control," thus violating California law. *Id.* at 269. The court noted that the 10-minute timeframe for rest periods "impose[d] practical limitations on an employee's movement," such as how far an employee could travel during a break. *Id.* at 270. This constraint, inherent to all 10-minute rest periods, did not establish employer control. *Id.* However, the plaintiffs also had to fulfill certain duties while on call, including "carrying a device or otherwise making arrangements so the employer can reach the employee during a break, responding when the employer seeks contact with the employee, and performing other work if the employer so requests." *Id.* The Court found that these duties were "irreconcilable with employees' retention of freedom to use rest periods for their own purposes." *Id.*

Wal-Mart argues that like the *Augustus* plaintiffs who had to remain "onsite or nearby" as a practical limitation of a 10-minute rest break, plaintiffs here were limited to a location by virtue of the nature of trucking, rather than any control by Wal-Mart. JMOL Reply (Dkt. No. 568) at 10. However, as the Court explained in its prior summary judgment order, Wal-Mart's policy designating places to take layovers—in the tractor unless a driver obtained permission to go elsewhere—constituted control if such a policy was implemented. Dkt. No. 211 at 11-14. Unlike the 10-minute rest breaks in *Augustus*, this policy is not inherent to trucking.

Also, Wal-Mart asserts that "the federal DOT regulations *require* that Wal-Mart relieve its drivers of all duties during their 10-hour layovers," so it cannot as a matter of law require its employees to do anything during a layover. Mot. for JMOL at 14 (citing 49 C.F.R. § 395.3; original emphasis). Wal-Mart argues that "[i]t necessarily follows . . . that drivers can use their time effectively for their own purposes." *Id.* (citing *Morrillion*, 22 Cal. 4th at 583). In Wal-Mart's view, it "cannot be the case that federal law says that drivers *cannot* work during this time, but state law says that the drivers *are* working during this time." *Id.* (original emphasis). The Court finds this argument unpersuasive under *Morrillion*, which states that "an employee who is subject to an employer's control does not have to be working during that time to be compensated." 22 Cal. 4th at 582. This argument also fails because it does not address what Wal-Mart *did*, rather

10

than what the DOT regulations require. It was this first question that the jury was asked to consider and resolve after trial.

Wal-Mart also asserts that "at least one court in the Ninth Circuit has used those federal regulations as guidance to conclude that 10-hour layovers are not compensable work as a matter of law." JMOL Reply at 9 (citing *Nance v. May Trucking Co.* ("*Nance I*"), No. 12-cv-1655, 2014 WL 199136, at *8 (D. Or. Jan. 15, 2014), *aff'd in part, vacated in part by Nance v. May Trucking Co.* ("*Nance II*"), No. 14-35640, 2017 WL 1164403 (9th Cir. Mar. 29, 2017) (unpublished memorandum disposition)). But that is not the holding of the *Nance* decisions; indeed, the courts never discussed DOT mandated 10-hour layovers under 49 C.F.R. § 395.3 or evaluated whether the employer exercised control. Rather, *Nance* involved minimum wage claims brought under the Fair Labor Standards Act ("FLSA") and Oregon law in part for failure to pay trainees for time spent in the sleeper berth of a moving truck. 2014 WL 199136 at *6. The district court held that "time spent in the sleeper berth, simply because the truck is moving, is not compensable." *Id.* In reaching this decision, the district court evaluated 29 C.F.R. § 785.21 and 29 C.F.R. § 785.41, which neither Wal-Mart nor plaintiffs have relied on here.[6] To the extent Wal-Mart cites the *Nance* decisions for the proposition that courts may look to relevant federal regulations for persuasive guidance when interpreting under the FLSA and state law, it is correct. However, as the Court has noted before, *Nance* is not instructive on the question of whether California law requires compensation for layovers because it did not evaluate California law or the federal regulation relevant here. Dkt. No. 554 at 4 n.1. Therefore, the Court remains unconvinced that layovers are not compensable under California law, as a matter of law.

---

[6] It is also notable that the FLSA defines "employ" as "to suffer or permit to work" and that Oregon adopted the same definition. *Nance II*, 2017 WL 1164403 at *1 (citing 29 U.S.C. § 203(g)). California law, on the other hand, requires an additional inquiry: whether the employer exercised control. Neither *Nance* decision discussed control when evaluating whether time spent by trainees in the sleeper berth was compensable time under the FLSA or Oregon law. *See* 2014 WL 199136; 2017 WL 1164403. Moreover, the persuasiveness of the relevant federal regulation to *Nance*'s interpretation of Oregon law is bolstered by the fact that Oregon had adopted a similar regulation. 2017 WL 1164403 at *2.

11

Second, the question of whether during layovers the drivers were in fact under Wal-Mart's control, within the meaning of the governing California labor law provisions, was presented to the jury in accordance with various pretrial orders. Despite Wal-Mart's arguments, the Court's 2015 order granting partial summary judgment in favor of plaintiffs addressed only whether "the pay policies as detailed in [Wal-Mart's] Manuals violate California wage law by failing to pay drivers at least minimum wage for all of the time they work . . . ." Dkt. No. 211 at 15. It did not, as the Court has explained, determine liability as to plaintiffs' minimum wage claims. *See, e.g.*, Dkt. No. 426 at 3 (denying plaintiffs' motion in limine #2 to preclude Wal-Mart from presenting any evidence as to liability); Dkt. No. 435 at 2-3 (reiterating view that the prior order did not establish liability and stating that it is "for plaintiffs to prove at trial that the policies were implemented in practice"). Moreover, in response to a jury question, the Court provided further instruction on "control." Dkt. No. 523. The jury's conclusion that Wal-Mart exercised control is supported by substantial evidence.[7] When construed in the light most favorable to the non-moving party, the

---

[7] Tr. 210:2-14, 211:19-212:13 (**Jennings**) (could not consume alcohol on layover; could not have a personal weapon on a layover; could not have a pet in the truck cab during a layover; needed spouse to fill out form before she could stay in the cab on a layover; understood that he was "not allowed to sleep anywhere but the truck without Walmart's permission"); Tr. 277:10-12, 285:1-6 (**Franklin**) (understanding that drivers "were not allowed to sleep anywhere but the truck without Walmart's permission on layover," but could leave truck at grocery stop and go to truck stop to eat, drink, watch TV, shower, and talk with fellow truck drivers); Tr. 378:5-10 (**Green**) (told by management that he had to remain with his truck during layover); Tr. 481:5-24, 484:7-13 (**Davis**) (aware of drivers taking golf clubs, surfboards, books, and movies; "While they're on their ten-hour break, that time is theirs"; no requirement that drivers take their layover in tractor); Tr. 978:25-979:14 (**Vincent**) (drivers do not need to get advance permission to stay at a hotel if they wanted the $42 layover fee); Tr. 1054:23-1057:21 (**Byers**) (required to stay in the cab on layover, but allowed to stay at home or a hotel with permission; could eat and shower on layover, but not take care of personal errands; "responsible for Wal-Mart's goods that [he was] hauling at all times"; could not have alcohol, personal weapon, or pets in the cab during layover; needed permission for a guest); Tr. 1098:25-1099:6, 1110:9-25 (**Merhoff**) (required to get permission to take a layover outside of tractor; acknowledged that could get out of truck to use cafeteria, pick up supplies, and watch TV at distribution centers); Tr. 1150:7-18 (**Ridgeway**) (could not spend night outside of the cab without Wal-Mart's permission; Wal-Mart had a policy to minimize mileage; location of layover at store, truck stop or somewhere safe); Tr. 1195:8-25 (**Thatcher**) ("had to sleep inside the tractor," and required to get permission to take layover elsewhere); Tr. 1212:7-23, 1213:25-1214:8 (**Mozzini**) ("If we wanted to go use the restroom or something like that, but we better be in that truck most of that time, especially if we are in the sleeper berth. We can't be somewhere else."; could not leave Wal-Mart's freight unattended); Tr. 1272:3-23, 1290:12-1291:23 (**Harold**) (required to take layovers inside of tractor and need permission to take layover elsewhere; can leave truck at a Wal-Mart store and go home with permission); Tr. 1348:21-1349:3, 1350:7-24 (**Opitz**) ("My requirements were to maintain with the vehicle on my ten-hour layover"; had to ask Wal-Mart for permission to sleep elsewhere; could not drink alcohol on layovers; had to get authorization to have a guest in the cab; could not carry a firearm; could not have a pet in cab on layover); Tr. 1394:10-25 (**Gonzalez**) ("it was mandatory to sleep in the truck unless you got permission from a

12

evidence does *not* permit "only one reasonable conclusion as to the verdict and that conclusion is contrary to the jury's verdict." *Air-Sea Forwarders*, 880 F.2d at 181. Nor is the verdict against the clear weight of the evidence.

### B. Jury Instructions

Wal-Mart asserts that Instruction No. 15 was erroneous because the Court did not include language to the effect that plaintiffs must prove that tasks were not "directly related" to work compensated on a piece-rate basis. Mot. for New Trial at 12 (citing Dkt. No. 435 at 6 n.2). However, this "directly related" language derives from the newly passed California Labor Code section 226.2, which went into effect on January 1, 2016, after the close of the class period in this case. It was not error to exclude this language.[8]

Additionally, Wal-Mart argues that Instruction No. 17 on rest breaks misstated evidence and gave jurors the "false impression that Wal-Mart had a written pay policy not to pay for rest breaks." The relevant portion of Instruction No. 17 provides:

> Wal-Mart's driver pay manuals do not separately specify pay for

---

manager"); Tr. 1680:23-1681:9 (**Hill**) ("You have to layover in the truck . . . [I]f you're going to be gone, away from the truck, staying away from the truck, you have to call and ask permission. When you do that, they want to know that . . . the truck is secure."); Tr. 1723:13-21, 1748:11-13 (**Famoso**) (required to take layover in tractor unless got permission to go elsewhere; "sometimes" stayed at a hotel during layover); Tr. 1774:1-17 (**Wiley**) (required to take layover inside tractor; required to get permission to take layover elsewhere); Tr. 1798:17-1799:3, 1811:25-1812:5 (**Day**) ("You had to layover and stay with your truck"; could ask Wal-Mart to allow a layover at home); Tr. 2107:21-2108:12 (**Temple**) (could leave the cab and stay in a hotel; Wal-Mart preferred truck to be secured at a store and for driver to call dispatch to inform them; "they don't want you just parking it and leaving it"); Tr. 2111:18-20 (**Robinson**) (could use layover time "however you want to pretty much"); Tr. 2159:11-2160:6 (**Miller**) (did not have to stay with truck for entire layover period; would mountain bike during layovers); Tr. 2471:18-2472:3 (**Easterling**) (need to stay with truck during layover because "they want somebody there to watch their equipment and to watch the product that we're hauling"); Tr. 2507:14-23 (**Allred**) (required to take layovers in tractor and to get permission to go elsewhere).

[8] Wal-Mart rests its "directly related" argument on footnote 2 in this Court's 10/17/16 order re jury instructions. (Dkt. No. 435 at 6 n.2). The text of that order correctly stated the governing law, as reflected both in *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005) and in Instruction No. 15. However, there was an error in the footnote, in conflating the *Armenta* standards with the newly-enacted section 226.2 language. The Court finds this error does not give effect to Wal-Mart's argument that the Court should have included the "directly related" language in its jury instruction.

> rest breaks. If you find that class members took rest breaks, and that Wal-Mart applied the policy as it is stated in the driver pay manuals, such that minimum wage was not earned for rest breaks, then plaintiffs are entitled to recovery of wages for each 10-minute rest break at the rate of the minimum wage that was applicable at the time.

The instruction is not misleading. It merely states that the manuals "do not separately specify pay for rest breaks," which Wal-Mart concedes is true based on its assertion that the manuals are silent as to pay. Mot. for New Trial at 14.

### C. Claims that Were Not Tried

Finally, "[t]o avoid ambiguity and to ensure that this case is entirely resolved," Wal-Mart requests that the Court enter judgment in its favor on four claims: plaintiffs' First, Second, Third, and Sixth causes of action. Mot. for JMOL at 20. Plaintiffs seemingly do not oppose. Opp'n to Mot. for JMOL (Dkt. No. 566) at 25-26.

Plaintiffs' First Cause of Action alleged that Wal-Mart violated California Labor Code section 512 and section 11 of the California Transportation Wage Order 9-2001 by failing to provide off-duty meal periods. FAC ¶¶ 44-54. Plaintiffs' concede that "none of the named plaintiffs presented evidence of *individual* meal period claims at trial," that they "did not seek to certify their original claim that Wal-Mart failed to provide meal periods," and "that claim was not part of the class action [proceedings]." Opp'n to JMOL at 25 (original emphasis).

Plaintiffs' Second Cause of Action alleged that Wal-Mart violated California Labor Code section 512 and section 12 of the applicable Wage Order by failing to authorize and permit rest periods. FAC ¶¶ 55-60. Plaintiffs concede that the claim that went to trial "was actually part of the Seventh Cause of Action for failure to pay minimum wage," that they did not seek class certification for the Second Cause of Action, and that the individual named plaintiffs did not pursue the Second Cause of Action at trial. Opp'n to JMOL at 26.

Plaintiffs voluntarily dismissed their Third Cause of Action for waiting time penalties under California Labor Code sections 201, 202, and 203. FAC ¶¶ 61-65; Dkt. No. 158. Pursuant to the parties' stipulation, the Court dismissed the Third Cause of Action. Dkt. No. 430.

Plaintiffs' Sixth Cause of Action alleged that Wal-Mart violated California Labor Code section 226 by failing to provide itemized wage statements. FAC ¶¶ 81-85. The Court granted Wal-Mart's motion for summary judgment on this claim as to named plaintiffs Day and Ridgeway, and denied plaintiffs' motion to certify the class as to this claim. Dkt. No. 143 at 14; Docket No. 158 at 15. Plaintiffs concede that "none of the named plaintiffs presented evidence of *individual* Labor Code section 226 wage statement claims at trial," and that the claim was not part of the class action proceedings. Opp'n to JMOL at 26 (original emphasis).

Because plaintiffs voluntarily dismissed the Third Cause of Action and the First, Second, and Sixth Causes of Action did not proceed to trial on an individual or class basis, the Court finds that judgment in Wal-Mart's favor is appropriate for each of these claims.

## CONCLUSION

Defendant's motion for entry of judgment in its favor is GRANTED with respect to the First, Second, Third, and Sixth Causes of Action. In all other respects, the motions are DENIED.

**IT IS SO ORDERED**.

Dated: May 1, 2017

SUSAN ILLSTON
United States District Judge