UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES RIDGEWAY, et al.,

Plaintiffs,

v.

WAL-MART STORES INC.,

Defendant.

Case No.  08-cv-05221-SI

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR FEES, COSTS, AND EHANCEMENT AWARDS**

Re: Dkt. No. 570

This minimum wage class action proceeded to trial and resulted in a $60.8 million common fund.  Plaintiffs now move for an award of attorneys' fees and costs and incentive awards for the named plaintiffs.  They seek $20,266,670.50 in attorneys' fees to be paid from the common fund, offset by an award of fees from Wal-Mart in the same amount through statutory fee-shifting. Dkt. No. 570, Mot. at 26.  Plaintiffs further seek $220,149.89 in statutory costs to be paid by Wal-Mart and an additional $1,593,781.44 in expenses from the common fund.  Dkt. No. 594, Reply at 2, App'x 2.  Finally, they ask that the Court approve incentive awards of $50,000.00 to each of the nine class representatives.  Mot. at 26.

The Court heard argument on July 28, 2017, and allowed the parties to file supplemental briefs.  After reviewing the parties' materials and arguments, the Court GRANTS in part and DENIES in part plaintiffs' motion.

## BACKGROUND

Plaintiffs are truck drivers in California previously employed by defendant Wal-Mart Stores Inc. ("Wal-Mart") for some period of time between 1993 and the present.  Dkt. No. 73, Fourth Amended Complaint ("FAC") ¶¶ 3-6.  Plaintiffs initially filed this case in Alameda County

Superior Court on October 10, 2008.  Dkt. No. 1.  Wal-Mart removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), in November 2008.  *Id.*

Following a three-year stay pending a final decision by the California Supreme Court in *Brinker Restaurant Corporation v. Superior Court*, Case No. S166350; class certification in September 2014; and motions for partial summary judgment brought by both parties, this case went to trial on October 27, 2016.  Upon a stipulation by the parties to modify the class period, the class definition at the time of trial was: "All persons employed in California by Defendant in the position of Private Fleet Driver at any time from October 10, 2004 to October 15, 2015."  Dkt. Nos. 406, 535 at 13.

Plaintiffs went to trial on their minimum wage claims, alleging that Wal-Mart violated California minimum wage law by failing to pay class members the minimum wage for eleven tasks.  Trial lasted for sixteen days.  Before the close of trial, Wal-Mart filed a motion for judgment as a matter of law, which the Court denied without prejudice.  *See* Dkt. No. 502.

On November 23, 2016, the jury returned a verdict in plaintiffs' favor on four of the eleven tasks at issue, finding that class members were paid less than the minimum wage by Wal-Mart for some or all hours worked for: performing pre-trip inspections, performing post-trip inspections, taking 10-minute rest breaks, and taking 10-hour layovers.  Dkt. No. 529.

The jury accepted the damages calculations set forth by plaintiffs' expert witness Dr. G. Michael Phillips and awarded damages to the class as follows:

| | |
|---|---|
| Performing Pre-Trip Inspections: | $2,971,220.00 |
| Performing Post-Trip Inspections: | $2,971,220.00 |
| Taking 10-minute Rest Breaks: | $3,961,975.00 |
| Taking 10-hour Layovers: | $44,699,766.00 |

Dkt. No. 529 at 3.  These figures reflect the testimony that Dr. Phillips provided at trial regarding the class members' damages for each respective task for the October 10, 2005, to October 15, 2015 time period.  *See* Dkt. No. 497, Tr. at 1524:1-13, 1528:24-1529:15, 1532:25-1533:6, 1582:3-10.

The jury also awarded damages to the individual named plaintiffs as follows:

| | |
|---|---|
| Charles Ridgeway: | $10,713.46 |
| Jaime Famoso: | $33,580.62 |
| Joshua Harold: | $110,678.23 |
| Richard Byers: | $10,623.75 |
| Dan Thatcher: | $5,315.36 |
| Willie Franklin: | $26,016.69 |
| Tim Opitz: | $49,822.94 |
| Farris Day: | $44,251.02 |
| Karl Merhoff: | $43,681.51 |

*See* Dkt. No. 529.

As discussed at trial, the Court submitted to the jury questions relevant to the calculation of civil penalties. For this purpose, the jury found that Wal-Mart intentionally failed to pay minimum wage to class members in any pay period from October 10, 2007, to October 15, 2015. Dkt. No. 529 at 4. The jury accepted the calculations of plaintiffs' expert Edward Garcia and found that Wal-Mart failed to pay minimum wage to class members for 103,221 pay periods from October 10, 2007, to October 15, 2015. *See id.*; Dkt. No. 492, Tr. at 1859:11-20, 1860:10-19.

The Court delayed entering judgment until the parties had the opportunity to brief the issues reserved for the Court. On January 25, 2017, the Court issued an Order granting in part and denying in part plaintiffs' post-trial motion. Dkt. No. 554. The Court granted plaintiffs' motion for restitution under the California Unfair Competition Law in the amount of $5,861,147.00. *Id.* at 8. The Court denied plaintiffs' motion for liquidated damages and for civil penalties under California Labor Code sections 1194.2 and 1197.1 respectively. *Id.* at 12, 17. The Court entered judgment that same day. Dkt. No. 555. On May 1, 2017, the Court denied defendant's motion for judgment as a matter of law and motion for new trial and decertification. Dkt. No. 577. Combining the class damages, individual damages, and restitution, plaintiffs recovered a total of $60,800,011.58.

Plaintiffs now move for attorneys' fees, costs, and incentive awards. Dkt. No. 570. Wal-Mart opposed, Dkt. No. 587, and plaintiffs filed a reply with revised timesheets and costs, Dkt.

No. 594. Wal-Mart objected to evidence newly submitted with plaintiffs' reply brief. Dkt. No. 595. Following the hearing on July 28, 2017, the Court allowed the parties to file supplemental briefs. *See* Dkt. Nos. 602, 605.

## LEGAL STANDARD

California law governs plaintiffs' motion for fees. *See Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("federal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine" (internal footnote omitted)); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees." *MacDonald v. Ford Motor Co.*, No. 13-cv-2988-JST, 2016 WL 3055643, at *2 (N.D. Cal. May 31, 2016).

"This is a 'hybrid' class action—it was initiated under a statute with a fee-shifting provision, but it reached a judgment creating a common fund." *See Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1324 (D. Nev. 2014). In such instances, California courts permit plaintiffs to seek attorneys' fees both under fee-shifting law and through the common fund doctrine. *See, e.g.*, *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 715, 725-26 (2004) (trial court approved plan for attorneys' fees to be paid as percentage of common fund, offset by any statutory attorneys' fees awarded under California Labor Code section 1194).

## DISCUSSION

## I.      OBJECTIONS TO EVIDENCE SUBMITTED IN REPLY

Before reaching the relevant substantive issues, the Court notes that Wal-Mart objects to plaintiffs' revised fee calculations submitted with their reply brief. These revised fees reflect: (1) additional work performed between the filing of the instant motion and the date of reply, including work related to post-trial motions; (2) the removal of time entries related to the preparation of the instant fee motion; and (3) itemized entries of the time of plaintiffs' counsel Lawrence Artenian. Reply at 1. Wal-Mart objects primarily to Mr. Artenian's time records, arguing that plaintiffs have improperly submitted new evidence in their reply, depriving it of the opportunity to respond in the

first instance. Dkt. No. 595, Objections. In response, plaintiffs assert the reply evidence is not "new," but is rather responsive to the arguments raised in Wal-Mart's opposition brief. Dkt. No. 600, Tr. at 4:15-7:20.

The Court finds it appropriate to consider the evidence provided by plaintiffs with their reply. *Cf. In re Washington Public Power Supply Sys. Sec. Litig. ("In re WPPSS")*, 19 F.3d 1291, 1306 (9th Cir. 1994) (finding district court abused its discretion in refusing to reconsider its initial fee decision where moving party provided more detailed records in support of fee request). The Court has allowed the parties to file supplemental briefs, thus ensuring that Wal-Mart had an opportunity to respond to all evidence submitted with plaintiffs' fee request. The Court addresses the matter of Mr. Artenian's time further below.

## II.    ATTORNEYS' FEES

Plaintiffs move for fees under a California fee-shifting statute and the common fund doctrine. Plaintiffs seek to recover attorneys' fees of $20,266,670.50,[1] which is equal to approximately one-third of the $60.8 million common fund. Plaintiffs assert that they are entitled to this amount under the common fund doctrine, in addition to statutory fees in the same amount payable by Wal-Mart to the class. Essentially, plaintiffs ask "that Wal-Mart be required to reimburse the class for its common fund attorneys' fee." Dkt. No. 594-1, Reply Decl. of Lawrence M. Artenian ¶ 8. In opposition, Wal-Mart argues that plaintiffs' fee request is unreasonable and, if fees are allowed, plaintiffs should be awarded no more than a lodestar of $2,831,149.09. Dkt. No. 587, Opp'n at 17; Dkt. No. 603, Sur-Reply Decl. of Rachel S. Brass, Ex. 2 at 5.[2]

---

[1] In the introduction to their motion, plaintiffs state that they seek fees of $20,226,670.20. Mot. at 2. In their conclusion, they ask the Court to award fees of $20,266,670.50. *Id.* at 26. Read in the context of their motion, the Court assumes that the former figure is an error and that plaintiffs seek the latter amount.

[2] Wal-Mart also contends that the Court should deny plaintiffs' motion for fees in its entirety for failure to meet and confer. Opp'n at 5-6. Civil Local Rule 54-5(a) requires counsel to "meet and confer for the purpose of resolving all disputed issues relating to attorney's fees before making a motion for award of attorney's fees." In his reply declaration, plaintiffs' counsel notes that the parties submitted stipulations regarding the briefing schedule for this motion. Artenian

Because the amount of statutory fees to be paid by Wal-Mart, as opposed to plaintiffs' entitlement to fees out of the common fund, is the contested issue in the present motion, the Court will begin its analysis there.

### A. Fee-Shifting Analysis—California Labor Code § 1194

"'[F]ee shifting' refers to an award under which a party that did not prevail in the litigation is ordered to pay fees incurred by the prevailing party." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). As applicable here, the California Labor Code provides that "any employee receiving less than the legal minimum wage . . . applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage . . ., including . . . reasonable attorney's fees, and costs of suit." Cal. Labor Code § 1194(a). Under a fee-shifting statute, courts typically use the "lodestar method," which "calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Laffitte*, 1 Cal. 5th at 489. Courts may then apply a positive or negative multiplier. *Id.*

Wal-Mart does not contest that, based on the outcome at trial, plaintiffs are entitled to statutory fees under California Labor Code section 1194. Further, both sides acknowledge that use of the lodestar method is the appropriate method for determining the amount of statutory fees here. *See* Mot. at 15 ("Plaintiffs' statutory fees under California law are almost always determined by the lodestar/multiplier method set out in *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)"); Dkt. No. 600, Tr. at 25:17-26:5 (Wal-Mart advocating for use of the lodestar approach in fee-shifting cases). The Court will determine the lodestar, multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate, and will then examine whether a multiplier is warranted.

---

Reply Decl. ¶ 2. He states that the parties met and conferred regarding the stipulations, and that "it was understood that Wal-Mart intends to contest Plaintiffs' attorneys' fee claims and that the matter would be presented to the Court for determination[.]" *Id.* The Court declines to deny the motion for failure to meet and confer.

United States District Court
Northern District of California

Plaintiffs' counsel submitted declarations and time records showing that they spent over 10,000 hours on this case. This chart reflects plaintiffs' revised hours submitted with their reply brief, with the exception of Mr. Artenian's hours, which the Court caps at 1200, as explained further below:

| Name | Position | Admission | Years | Rate | Hours | Fees |
|------|----------|-----------|-------|------|-------|------|
| Jacob Weisberg | Partner | 1971 | 46 | 900 | 435.65 | $392,085.00 |
| Andrew Jones | Partner | 1977 | 40 | 890 | 969.3 | $862,677.00 |
| Stanley Saltzman | Partner | 1979 | 38 | 870 | 805.7 | $700,959.00 |
| Lawrence Artenian | Partner | 1981 | 36 | 850 | 1200.0 | $1,020,000.00 |
| Nicholas Wagner | Partner | 1983 | 34 | 830 | 1454.1 | $1,206,903.00 |
| Daniel Kopfman | Partner | 1997 | 20 | 730 | 2121.2 | $1,548,476.00 |
| Ralph MacMichael | Sr. Associate | 1980 | 37 | 700 | 134.9 | $94,430.00 |
| Stephen O'Dell | Sr. Associate | 1988 | 29 | 670 | 100.7 | $67,469.00 |
| William "Tony" Baird | Sr. Associate | 1998 | 19 | 610 | 131.2 | $80,032.00 |
| David Lee | Associate | 2006 | 11 | 500 | 547.5 | $273,750.00 |
| Russell Myrick | Associate | 2010 | 7 | 500 | 1175.4 | $587,700.00 |
| David Leimbach | Associate | 2010 | 7 | 450 | 2.0 | $900.00 |
| Jennifer Vagle | Associate | 2011 | 6 | 425 | 64.7 | $27,497.50 |
| Angela Martinez | Associate | 2014 | 3 | 410 | 704.0 | $288,640.00 |
| Cody Kennedy | Associate | 2014 | 3 | 355 | 2.3 | $816.50 |
| Laura Brown | Associate | 2015 | 4 | 330 | 83.6 | $27,588.00 |
| Amanda Kendzora | Associate | 2016 | 1 | 300 | 92.9 | $27,870.00 |
| Susan Joseph | Sr. Paralegal | - | - | 225 | 21.5 | $4,837.50 |
| Jennifer Davis | Paralegal | - | - | 195 | 32.0 | $6,240.00 |
| Laurel Fairley | Paralegal | - | - | 195 | 491.15 | $95,774.25 |
| Michelle Vasquez | Law Clerk | - | - | 225 | 26.0 | $5,850.00 |
| | | | | **Total Hours:** | 10,595.8 | |
| | | | | **Total Fees:** | | $7,320,494.75 |

*See* Reply, App'x 1.

## 1.    Hourly Rates

To determine whether counsel's hourly rates are reasonable, the Court looks to the "hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and

reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Similarly, Civil Local Rule 54-5(b)(3) requires the party seeking a fee award to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services."

In support of their hourly rates, plaintiffs submitted declarations from counsel Artenian, Jones, Wagner, Saltzman, and Weisberg discussing their qualifications and those of other firm members. Dkt. Nos. 570-1, 570-2. They also provided declarations by outside attorneys Richard Pearl and Guy B. Wallace attesting to the reasonableness of the hourly rates sought. Dkt. Nos. 570-3, 570-4. The Pearl Declaration in particular lays out the non-contingent market rates charged by attorneys in California and approved by courts in this district and by other California courts over the last few years. Pearl Decl. ¶ 33 (citing, inter alia, *Cotter v. Lyft Inc.*, No. 13-cv-4065-VC (N.D. Cal. Mar. 16, 2017) Order Granting Final Approval of Settlement Agreement (Dkt. No. 310) (approving hourly rates of $800 for class of 1996, $500 for class of 2010, $325 for class of 2014, and $200 paralegal rate); *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, No. 14-cv-4086-NC (N.D. Cal. Dec. 6, 2016) Order Granting Final Approval and Attorneys' Fees (Dkt. No. 139) (approving hourly rates of $900 for class of 1980, $895 for class of 1985, $645 for class of 2005, $475 for class of 2010, $460 for class of 2011, $355 for class of 2014, $275 paralegal rate, and $275-280 for summer associates); *Alden v. Alden*, No. CIV 524269 (San Mateo Cty. Super. Ct. Nov. 23, 2015) Order Granting Petitioner Katherine Alden's Motion for Attorneys' Fees and Costs (approving hourly rates of $990 for 41 years of experience, $875 for 22 years, $600 for ten years, and $500 for three years); *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) Order Granting in Part and Denying in Part Motions for Attorney's Fees, Reimbursement of Expenses, and Service Awards (approving rates for partners ranging from $490-950, rates for non-partner attorneys from $310-800, with most under $500, and rates for paralegals, law clerks, and litigation support staff from $190-430, with most under $300)).

Wal-Mart does not argue that these hourly rates, standing alone, are unreasonable. Rather, it asks the Court to reduce the hourly rates based on what it terms as unreasonable billing

practices.  *See* Opp'n at 7.  In light of the evidence submitted, the Court finds that the hourly rates plaintiffs seek are reasonable.  The Court addresses the question of plaintiffs' billing practices below.

### 2. Reasonableness of the Hours Spent

Under California law, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee."  *Ketchum*, 24 Cal. 4th at 1133.  "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether."  *Id.* at 1137 (quoting *Serrano v. Unruh*, 32 Cal. 3d 621, 635 (1982) ("*Serrano IV*")).  "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation."  *Ketchum*, 24 Cal. 4th at 1132 (citing *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977) ("*Serrano III*")).  "[T]he trial court has broad authority to determine the amount of a reasonable fee."  *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).

Wal-Mart contends that plaintiffs' fee application is unreasonably inflated, and raises numerous objections to the reasonableness of the hours spent by plaintiffs' counsel.

### a. Discovery

Plaintiffs contend that discovery was voluminous: "the class collectively served more than 200 Requests for Admission (ten sets), 139 Requests for Production (seventeen sets), and 26 Special Interrogatories (six sets), as well as responding to Wal-Mart's initial sets of pre-certification discovery."  Mot. at 4.  Wal-Mart produced over 30,000 Bates numbered documents, in addition to electronic data.  *Id.*  Over 80 class-member depositions were taken throughout California, as well as several Rule 30(b)(6) depositions.  *Id.*

The parties greatly disagree on the history of electronic discovery ("ESI") in this case.  Plaintiffs characterize their pursuit of ESI as a "wild goose chase," asserting that "it wasn't until July 1, 2016, after expert disclosure, that Defense Counsel produced class-wide electronically

stored data of trip activities, locations, and compensation." Mot. at 4; Dkt. No. 605-2, Supp. Decl. of Daniel Kopfman ¶ 24. Wal-Mart states that it produced electronic records on February 24, 2015; July 14, 2015; January 19, 2016; and January 29, 2016. Opp'n at 3; Dkt. No. 588, Decl. of Jenna M. Yott ¶¶ 5-11. In light of this production, Wal-Mart asserts that plaintiffs spent time "needlessly photocopying hardcopy records and then paid their experts for a 'sampling data entry project,' which they eventually deemed 'essentially useless.'" Opp'n at 4.

In response, plaintiffs agree that some ESI was produced in 2015 and early 2016, but state that such production was incomplete. Kopfman Supp. Decl. ¶¶ 11-24. As a result, plaintiffs' counsel had to seek records in paper format housed in Wal-Mart's three trucking distribution centers in California. Mot. at 4-5;. Kopfman Supp. Decl. ¶ 7 (over 600 boxes of materials). Plaintiffs' counsel and a third-party copying service made several visits to retrieve the files for sampling. Mot. at 4-5. After plaintiffs' experts hand-entered relevant data into a database, defense counsel found and produced the complete electronic files. *Id.*

Wal-Mart has not persuasively shown that the time spent pursuing electronic discovery was "needless." The sampling project would have been necessary if the complete electronic records had not ultimately been produced. The Court finds that the time spent by plaintiffs in reviewing paper copies of records and creating a sampling project is compensable, particularly in light of the parties' ongoing dispute over ESI, and will not discount plaintiffs' hours in this area.

### b.    Vague Entries

Wal-Mart contends that over 1,000 of plaintiffs' time entries (equal to $587,527.50) are too vague and imprecise to be credited. Opp'n at 7; Dkt. No. 589, Decl. of Rachel S. Brass ¶ 9, Ex. A. Wal-Mart points to entries totaling over 175 hours to "talk with [name]" or "confer with [name]," without describing the issues discussed. Brass Decl. ¶ 10. Other entries include "review correspondence," "confer with experts," "prepare for meeting," and "email review." *Id.* ¶ 11. Additionally, while some entries for research describe the relevant topic, others simply state "research," "research re superior court case," "case law research" and "emails with [name] regarding research." *Id.* ¶ 12.

10

California law does not require that attorneys keep detailed fee logs in order to obtain an award of attorneys' fees. *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65 (2008) (citing *Wershba v. Apple Comp., Inc.*, 91 Cal. App. 4th 224, 254-55 (2001)) ("detailed time sheets are not required of class counsel to support fee awards in class action cases"). For instance, California courts may approve fee awards that are based not on detailed time entries but on the trial court's own analysis using its experience and history with the work performed in that particular case. *See East West Bank v. Rio Sch. Dist.*, 235 Cal. App. 4th 742, 750 (2015). California courts have also approved fee awards based on declarations describing the hours worked on various tasks, without providing underlying time records of the hours worked and the type of work performed. *See Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487-88 (2014).

In its opposition, Wal-Mart cites one California case in which the court reduced fees for vague time entries. *See* Opp'n at 7 (citing *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315 (2008)). There, the trial court reduced the compensable time from more than 600 hours to 71 hours, where counsel sought fees under California's anti-SLAPP statute. *Christian Research Inst.*, 165 Cal. App. 4th at 1318. Although that law provided fees only for time spent on the anti-SLAPP motion to strike, counsel "inflated the fee claim with a multitude of time entries devoted to matters other than the motion to strike, thereby undermining the credibility of counsel's other entries." *Id.* at 1324-25. The Court of Appeal found the trial court did not abuse its discretion in reducing the lodestar where counsel's fee log contained vague entries that did not reference the motion to strike and where counsel apparently "sought to transfer to the opposing parties the cost of every minute counsel expended on the case, whether or not anti-SLAPP work was involved." *Id.* at 1325, 1328.

The Court finds *Christian Research Institute* to be distinguishable, given the limited scope of the anti-SLAPP fee provision and the cumulative problems with counsel's fee records in that case. Although the Court agrees with Wal-Mart that certain portions of plaintiffs' billing records are problematic, the Court addresses those issues in turn in this Order. However, because it is within the Court's discretion to award fees under California law on methods other than a line-by-

line scrutiny of detailed billing logs, the Court will not reduce the lodestar on the general ground of vagueness.

### c. Billing in 0.1- and 0.2-Hour Increments

Wal-Mart claims that plaintiffs' counsel seek fees for 1,196 0.1-hour and 813 0.2-hour time entries, totaling 282.2 hours (equal to $189,451.50).  Opp'n at 8; Brass Decl. ¶¶ 14-17, Ex. A. In addition, Mr. Artenian's time submitted in reply reflects 29 0.1-hour entries and 64 0.2-hour entries.  Def.'s Sur-Reply at 8.  Wal-Mart argues that, "[b]y billing every phone call, email, review of notice from the Court as a separate 0.1- or 0.2-hour entry, Plaintiffs' counsel appear to have inflated their lodestar by a six-figure margin."  Opp'n at 8.  As examples, Wal-Mart notes that Mr. Kopfman "billed 3.2 hours to review 32 nearly-identical deposition notices, but billed each individual notice as a separate 0.1-hour entry."  Brass Decl. ¶ 15.  Mr. Kopfman also billed 0.1 hours to "Review Notice of appearance of Edelman, Wong, and Brass," but submitted additional 0.1 hour entries to review each of these appearances separately.  *Id.* ¶ 16.

Upon review of plaintiffs' time entries, it appears that many of the complained of entries could reasonably have taken the full amount of time billed, and thus need not be consolidated. The Court will discount Mr. Kopfman's time by $219.00 for the duplicative entries in reviewing the notices of appearance for Mr. Edelman, Mr. Wong, and Ms. Brass.

### d. Block Billing

Wal-Mart next argues plaintiffs' time entries include 336 instances of block billing equal to over 900 hours.  Opp'n at 9; Brass Decl. ¶ 18, Ex. A.  "Block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1129 n.2 (9th Cir. 2008) (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007)).  There is "consistent precedent in California cases that provide trial courts with the *discretion* about whether to penalize block billing."  *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1010 n.6 (2013).  Block billing may be of more concern in

cases where only certain motions or certain violations allow for statutory fees. *See, e.g., Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672 (2013) (reversing fee award where block billing made it impossible to know which time to attribute to Brown Act violation, for which fees were allowed); *Christian Research Inst.*, 165 Cal. App. 4th at 1324-25 (affirming trial court's reduction of hours where block billing prevented court from knowing which hours were spent on anti-SLAPP motion to strike, for which fees were allowed, rather than on the entire action).

The Court has reviewed the time entries at issue, in which counsel include multiple tasks within a single time entry. For instance, Mr. Artenian's November 4, 2016 time entry states: "Review depositions; extensive notes preparing direct examinations" for 7.5 hours. Artenian Decl. Ex. A at 51. The Court finds such time to be reasonably billed to this case and therefore compensable. The Court will not reduce plaintiffs' fees due to block billing.

### e.  Travel Time

Overlapping with its block billing contentions, Wal-Mart argues that several entries include "unspecified travel time," totaling 1,466.2 hours ($1,054,704.00). Opp'n at 9; Brass Decl. ¶ 19. Wal-Mart contends that plaintiffs' choice "not to engage local Bay Area counsel unreasonably resulted in hundreds of hours in transit between Fresno, CA and San Francisco, CA—at 3 to 3.5 hours each way—for every hearing or status conference often multiplied across multiple attorneys." Opp'n at 10. For instance, during trial, Mr. Wagner, Mr. Artenian, Mr. Saltzman, Mr. Kopfman, and Ms. Martinez billed 154.5 hours on travel time between San Francisco and their homes. Brass Decl. ¶¶ 23-24. On October 16, 2015, Mr. Jones attended a 5-minute discovery hearing, but billed 13 hours with his travel time included. *Id.* ¶ 22; Artenian Decl. Ex. A at 41; Dkt. No. 234. Plaintiffs respond that they did not know the hearing would be so short and that on days when travel to court was required, Mr. Jones typically left Fresno early to account for traffic, driving breaks, file review, and waiting time at court. Jones Reply Decl. ¶ 10. Plaintiffs also argue that their travel time "invariably, included extensive discussions to prepare for the hearing or event they were traveling to." Reply at 10.

In support of their respective positions, the parties have cited to two decisions from this Court. In *Alvarado v. FedEx Corporation.*, this Court deducted from the moving party's lodestar travel time spent driving between San Francisco and Fresno, noting that "[a]lthough paying clients routinely pay for occasional travel time for out of town depositions, settlement conferences, or court hearings, here the 'travel' at issue is more properly characterized as a lengthy (4.5 hours each way) commute that should be absorbed into [counsel's] overhead." Nos. 04-cv-0098-SI, 04-cv-0099-SI, 2011 WL 4708133, at *18 (N.D. Cal. Sept. 30, 2011). In *Transbay Auto Service*, the Court declined to reduce fees related to travel time because (1) some of the travel entries also included preparation time and meetings with clients, and (2) the complained of travel time constituted less than ten percent of the total number of hours billed for the entire case. No. 09-cv-4932 SI, 2013 WL 843036, at *7 (N.D. Cal. Mar. 6, 2013). Where the entries block billed "travel time with the time spent performing the substantive task such as preparing and taking a deposition, or attending the pretrial conference," the Court found that "the time recorded as time spent conducting activities in furtherance of the litigation [was] not inconsistent with the time entries themselves." *Id.* at *6.

The circumstances here present a combination of the above cases. Like *Alvarado*, plaintiffs' counsel have commuting expenses between San Francisco and their homes outside the Bay Area. But like *Transbay Auto Service*, many of their entries block bill travel and substantive activities together. Additionally, certain time entries reflect compensable travel time to various locations to meet with clients.[3] In light of these competing facts, the Court finds it appropriate to exercise its discretion and apply a 30% reduction in travel time. The Court, therefore, deducts $316,411.20 from plaintiffs' lodestar claim.

---

[3] Wal-Mart further argues that it is unreasonable to charge for travel to meet with clients who were not deposed or who, according to Wal-Mart, did not otherwise participate in the case. Opp'n at 10. However, "[c]ompensation should not be strictly limited to efforts that were demonstrably productive." *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 839 (2001). Although these drivers may not have ultimately testified in the case, the Court finds that time spent traveling to meet with clients was reasonable.

#### f.        Redundant, Excessive, or Duplicative Work

A court may "exclude excessive, redundant and unnecessary hours when calculating a lodestar." *Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88, 101 (2015).  Wal-Mart asserts that plaintiffs assigned multiple law firms and attorneys to do the same work, such that $502,422.50 of the fees sought are redundant.  Opp'n at 10; Brass Decl. ¶ 25.  For instance, Wal-Mart notes that seven attorneys spent a total of 33.1 hours to review and summarize the depositions of Ann Wilson Dyer and Rick Aurit, but that the total time for the depositions was 11 hours.  Brass Decl. ¶ 26.  Wal-Mart also attacks the hours of Mr. Weisberg, who it says spent 239.7 hours reviewing briefs or summarizing depositions, and that many of his time entries do not include a date.  *Id.* ¶¶ 30-31.  Wal-Mart further notes that Mr. Myrick "has more than 200 identical pairs of time entries for June and December 2015," and Mr. Lee "submitted seven identical pairs of time entries."  Opp'n at 11; Brass Decl. ¶¶ 30-33.

In response, plaintiffs assert that Ms. Dyer and Mr. Aurit testified as Wal-Mart's "persons most knowledgeable" under Rule 30(b)(6) "regarding critical litigation topics," and that it would be unreasonable for counsel to prepare for a class action trial without reviewing their depositions more than once.  Reply at 10.  Plaintiffs also state that Mr. Lee's and Mr. Myrick's entries are not duplicates but "rather represent the same task performed more than once at different times."  *Id.* at 11.

The Court declines to find that much of the time Wal-Mart has identified, including time reviewing and summarizing the depositions, was unnecessary or excessive.  In cases of this length and magnitude, there will be duplication of efforts; "it is inherent in the process of litigating over time."  *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  As to Mr. Weisberg's hours, the Court reads his time records not as undated but as entries for work performed on the same day as the entry listed above.  *See* Dkt. No. 570-2, Artenian Decl. Ex. 2 at 115-125.  Nor will the Court discount his hours based on alleged redundancy.  Plaintiffs have volunteered to exercise a five percent across-the-board reduction of their lodestar.  Mot. at 17, App'x 1.  Such a reduction accounts for just the sort of excess and redundancy that Wal-Mart targets.

However, the Court is troubled by the duplicative entries for Mr. Myrick and Mr. Lee. The Court finds plaintiffs' explanation, that these attorneys performed the same tasks more than once, implausible. Several of Mr. Lee's entries repeat the same described task, for the same amount of time, on the same day. Mr. Myrick's entries are even more concerning. Mr. Myrick's December 2015 time entries are clear duplicates of his June 2015 entries. *See* Dkt. No. 589-3. The Court will subtract the duplicative entries that Wal-Mart has identified, for a deduction of $6,900.00 from Mr. Lee's time and $66,000.00 from Mr. Myrick's time.

### g.    Incorrect Time Entries

Wal-Mart points out several incorrect time entries. For instance, Mr. Kopfman submitted a June 2, 2010 time entry for 0.3 hours to review responses to Requests for Admission, and a June 10, 2010 time entry for 1 hour to review discovery responses. Brass Decl. ¶ 49. However, "[n]o written discovery was served in this case until July 10, 2013." *Id.* Mr. Kopfman also submitted a December 4, 2010 time entry for 1.3 hours for a case management conference appearance, but no such conference was held in 2010. *Id.* Accordingly, the Court deducts $1,898.00 for this time.

### h.    Appropriate Level of Timekeeper

Wal-Mart claims that plaintiffs' counsel failed to assign the appropriate level of timekeeper to various projects because partners make up 64% of billable time and 77% of the requested fees. Opp'n at 11; Brass Decl. ¶ 34, Ex. A. Wal-Mart asserts that partners spent too much time on deposition summaries, reviewing standing orders and local rules, and the initial drafting of motions, rather than assigning such tasks to paralegals or associates. Opp'n at 12. It also notes that Mr. Myrick spent 16.4 hours to "review and organize official opt-out list" and to "update client interview schedule" and "action item list," rather than assigning such tasks to a paralegal or claims administrator. *Id.* Wal-Mart requests that the Court reduce plaintiffs' fees by $147,305.00 to account for such "inappropriate" timekeeping. *Id.*

Although Wal-Mart identifies two cases where district courts have reduced fees when associates could have performed tasks completed by partners,[4] the Ninth Circuit has noted that the "cost effectiveness of various law firm models is an open question." *Moreno*, 534 F.3d at 1114. "The difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision." *Id.* at 1115. Moreover, Wal-Mart has also failed to identify any cases awarding fees under California law that reduced a lodestar on this basis. In light of the various partners' in-depth knowledge of the case and the small size of the firms involved, the Court cannot say that the complained of tasks should have been assigned to a less experienced timekeeper. The Court therefore declines to reduce plaintiffs' fees on these grounds.

### i.    Clerical Tasks

Wal-Mart also claims that plaintiffs' counsel's time includes "over 70 hours ($40,828.00) of secretarial or clerical tasks not compensable as attorneys' fees—including work to prepare their time entries." Opp'n at 12; Brass Decl. ¶ 40 & Ex. A.

Wal-Mart properly highlights billing for calendaring and scheduling, scanning, securing rental cars and other travel arrangements, reviewing invoices, and downloading PDF orders onto an iPad, among other things, as clerical tasks. *See* Brass Decl. Ex. A. However, the Court finds that Wal-Mart incorrectly characterizes $26,024.00 worth of time as administrative or clerical. For instance, it is reasonable to award attorneys' fees for time spent updating a spreadsheet of class members' information, including contact information, duties, and damages. Indeed, in making its argument for appropriate level of timekeepers, Wal-Mart contends that "junior lawyers" should handle this work. *See* Brass Decl. ¶ 37. Plaintiffs may also seek fees for time spent cite checking their briefs, preparing client accounts of damages, instructing staff on assignments, discussing staffing on briefs, researching the local rules, teleconferencing with other attorneys to provide updates on the case, and reviewing motions to dismiss, Court orders, and

---

[4] *See MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101 (N.D. Cal. 1995); *Signature Flight Support v. Landow Aviation*, 730 F. Supp. 2d 512 (E.D. Va. 2010).

other filings. Accordingly, the Court deducts $14,804.00 for clerical time, rather than the $40,828.00 Wal-Mart identifies.

### j. Contemporaneous Time Entries

Wal-Mart next contends that at least two timekeepers failed to keep contemporaneous records, noting that the time entries submitted for Mr. Wagner and Mr. Jones were "reconstructed from email logs in preparation for this motion." Opp'n at 13. Wal-Mart points to the logs of Ms. Brown, who included time for work on Mr. Wagner and Mr. Jones's timesheets. Plaintiffs contend that Ms. Brown conducted a cross-check to ensure consistency, remove duplicate time, and check for over-billing. Reply at 12. Plaintiffs state this cross-check included reference "to a database of contemporaneous, date-stamped digital records including documents, memos, and more than 20,000 emails." *Id.*

California courts do not require that fee logs be contemporaneously maintained as a prerequisite for an award of fees. *See, e.g., PLCM Group*, 22 Cal. 4th at 1096 n.4. Wal-Mart acknowledges that contemporaneous time records are not required, but notes that they are "preferred." Opp'n at 13. The Court finds it to be unclear from the record whether plaintiffs in fact did not maintain contemporaneous fee logs. Because contemporaneity is not a requirement in any event, the Court finds no reason to reduce plaintiffs' fee request on this basis.

### k. Mr. Artenian's Time

With their initial motion, plaintiffs requested fees for 1,200 hours of Mr. Artenian's time. Mot., App'x 1. Mr. Artenian declared that he "worked well over 1200 hours on this case," but stated, "As to my own time, we are using only 1200 hours. I believe that 1200 hours represents at least a 33 1/3 percent discount off of my actual time (probably much more)." Artenian Decl. ¶ 39. In addition to his declaration, Mr. Artenian provided time entries for his time in 2014 and for the trial period in 2016 between jury selection and verdict. *Id.* To support the remainder of his time, Mr. Artenian listed in his declaration approximations of time spent on various tasks, such as reading and annotating deposition transcripts; preparing for, traveling to and attending

18

1    depositions; meeting with and preparing expert witness; researching and preparing briefs for

2    various motions, and traveling for their respective hearings; and many other tasks.  *Id.*  He

3    declared that he believed this summary complied with Civil Local Rule 54.5(a)(2), but offered to

4    provide more detail should the Court wish.  *Id.*

5         In opposition, Wal-Mart noted that Mr. Artenian's submitted time entries reflected only

6    623.1 hours, and argued that Mr. Artenian should only be allowed to recover for the time

7    supported by those entries.  Opp'n at 6.  To address Wal-Mart's argument, Mr. Artenian then

8    submitted in reply itemized entries of his time, totaling 1,842.8 hours.  Artenian Reply Decl.;

9    Reply, App'x 1.  Setting aside Wal-Mart's objections regarding improper reply evidence, which

10   the Court has already addressed, *supra*, Wal-Mart's supplemental briefing asserts that Mr.

11   Artenian's revised fees are unreasonable, based largely on concerns about block billing, excessive

12   work, and other issues addressed elsewhere in this Order.  Dkt. No. 602, Def.'s Sur-Reply at 7.

13   Wal-Mart asks that Mr. Artenian receive only the 623.1 hours that he originally documented in the

14   motion, with deductions for the entries Wal-Mart asserts are unreasonable.

15        As the Court has previously noted, California courts have approved statutory fee awards

16   based on declarations from counsel regarding the number of hours worked.  *See, e.g., Lunada*, 230

17   Cal. App. 4th at 487-88.  When Wal-Mart objected that Mr. Artenian had submitted a declaration

18   without documenting each of the 1,200 hours he sought, plaintiffs filed supporting documentation

19   to show that 1,200 hours did in fact represent a roughly 1/3 discount on Mr. Artenian's hours, as

20   he had declared.  The Court will not cut Mr. Artenian's hours down to 623.1.

21        Nevertheless, the Court will not award the full 1,842.8 hours for Mr. Artenian that

22   plaintiffs now seek in their reply brief.  If plaintiffs had wanted to include those hours in their

23   lodestar, then they should have sought them in their fee motion in the first instance.  For that

24   reason, the Court here calculates plaintiffs' lodestar as including 1,200 hours for Mr. Artenian, at

25   his hourly rate of $850.  Lastly, plaintiffs' supplemental reply brief concedes that there is a

26   duplicate 1.9-hour entry in Mr. Artenian's time sheets.  Pls.' Supp. Reply at 7.  In light of Mr.

27   Artenian's $850 hourly rate, the Court reduces the lodestar by $1,615.00 for this duplicate entry.

28

Wal-Mart argues that it should not pay for time that plaintiffs spent on claims or theories where this Court ruled in Wal-Mart's favor or where plaintiffs abandoned the claims. Opp'n at 14. "This includes time relating to drafting and researching withdrawn motions as well as Plaintiffs' unsuccessful post-trial motion seeking liquidated damages and civil penalties under Labor Code sections 1194.2 and 1197.1, motion to compel site inspections, and motion to remand." *Id.* Wal-Mart also requests the Court reject "Plaintiffs' entries relating to their abandoned claim for waiting time penalties under Labor Code section 203 or time spent drafting amended complaints to which Wal-Mart never responded (including a never-filed fifth amended complaint)." Opp'n at 14. In total, Wal-Mart requests that 183.3 hours be deducted from the lodestar. *Id.* at 15.

"If a plaintiff has prevailed on some claims but not others, fees are not awarded for time spent litigating claims unrelated to the successful claims, and the trial court 'should award only that amount of fees that is reasonable in relation to the results obtained.'" *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010). However, "fees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims." *Id.* In *Chavez*, the California Court of Appeal affirmed a lower court's denial of fees for unsuccessful claims that were not "closely related to or factually intertwined with" the plaintiff's successful claim, and where plaintiff's successful claim did not have "any broad public impact or resulted in significant benefit to anyone other than [plaintiff]." *Id.* at 990.

The Court finds that the majority of time Wal-Mart seeks to exclude is properly calculated as part of the lodestar. Although plaintiffs dropped their claims regarding Labor Code section 203, for instance, those claims were "factually related and closely intertwined" with the minimum wage claims on which plaintiffs succeeded at trial.[5] Nor will the Court deduct hours spent on plaintiffs' discovery motions, motion to remand, or post-trial motion for liquidated damages and civil penalties. "To reduce the attorneys' fees of a successful party because he did not prevail on

---

[5] Plaintiffs alleged in their complaint that they were entitled to waiting time penalties under section 203 because Wal-Mart "had a . . . policy, practice and procedure of willfully failing to pay the earned and unpaid wages or accrued wages, **including . . . the failure to pay minimum wages** . . . ." FAC ¶ 65.

United States District Court
Northern District of California

all his arguments, makes it the attorney, and not the defendant, who pays the cost of enforcing that public right." *Sundance v. Mun. Court*, 192 Cal. App. 3d 268, 273 (1987).

The Court agrees with Wal-Mart, however, that time spent pursuing the meal break claim under Labor Code section 226.7 was not related to the ultimately successful minimum wage claim. The Court granted Wal-Mart's motion for summary judgment on this claim as to five of the named plaintiffs, and plaintiffs did not pursue this claim further. *See* Dkt. No. 143 at 4. Because this claim was based on a different legal theory and a different set of facts from the one on which plaintiffs prevailed, the Court will deduct from the lodestar the $5,331.00 that Wal-Mart has identified as time spent solely on the section 226.7 claim.

### m. Continuing Legal Education

Wal-Mart asserts that plaintiffs request fees to attend continuing legal education credit seminars and to learn about "legal updates" from other class action plaintiffs' counsel. Opp'n at 15. Wal-Mart cites time entries from three dates, for the following activities: (1) on February 25, 2014, a "conference re class action developments," (2) on May 2, 2014, a conference with other plaintiffs' attorneys, and (3) on January 26, 2011, an "email string re Dukes and experts in class action researched [sic]." Brass Decl. ¶ 51. These events total 41.9 hours of attorney time. *Id.* Plaintiffs dispute Wal-Mart's characterization, arguing that class counsel did not bill for any CLE events, but rather that they "scheduled a 'war room' meeting with other experienced class action attorneys to evaluate potential strategies in this case." Reply at 14. Based on a review of the contested time entries, the Court finds that the time spent on these activities is reasonable and therefore compensable.

### n. Drivers Who Never Testified

Wal-Mart asserts that plaintiffs included nearly 1,000 hours for telephoning drivers who did not play a role in this case. Opp'n at 15; Brass Decl. ¶¶ 52-55. This time includes calls to drivers who wanted to opt out or who were never deposed or testified in this case. Opp'n at 15. Wal-Mart argues that this time was not "reasonably expended *on the litigation*" and asks the Court

1    to reduce the lodestar by $187,400.00.  *Id.* at 15-16 (quoting *Webb v. Bd. of Educ. of Dyer Cty.*,

2    471 U.S. 234, 242 (1985)).  Plaintiffs argue that this time is compensable, stating, "it is absurd to

3    suggest that counsel will know which witnesses to depose or call at trial without speaking to them

4    first."  Reply at 14.

5        The Court agrees with plaintiffs that this time is compensable.  The California Court of

6    Appeal has noted that "[c]ompensation should not be strictly limited to efforts that were

7    demonstrably productive."  *Thayer*, 92 Cal. App. 4th at 839.  Although not all the time spent

8    calling drivers was "demonstrably productive," it was nonetheless an important step for the

9    prosecution of this case.  Just as the Court found regarding the time spent traveling to meet with

10   these drivers, the time spent contacting drivers who ultimately did not testify is also compensable.

12              **o.    Denham Amendment Research and Lobbying**

13       Plaintiffs spent 96.4 hours (or $73,988.00) researching and lobbying against proposed

14   legislation called the Denham Amendment.  *See* Opp'n at 16; Brass Decl. ¶ 56.  Wal-Mart argues

15   that "it should not pay for meetings with lobbyists or 'preparing for Senate Commerce Meeting on

16   FAAAA [Federal Aviation Administration Authorization Act]'"[6] because this time was not

17   reasonably expended on the litigation.  Opp'n at 16.  Plaintiffs concede that "lobbying is not a task

18   traditionally billed in the normal course of litigation," but argue that it is compensable here

19   because the amendment had the "potential to limit (or eliminate) Plaintiffs' claims on preemption

20   grounds."  Reply at 15.

21       The Court will not include time spent on lobbying activities in calculating plaintiffs'

22   lodestar.  Although courts may award attorneys' fees for lobbying where "directly and intimately

23   related to the successful representation of a client," the activities here are not so directly related to

24   plaintiffs' case as to be properly included in their claim for statutory fees.  *See Davis v. City &*

25   *Cty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992), *vacated in part on other grounds by*

26   984 F.2d 345 (9th Cir. 1993).  Rather, the Court has factored the threat posed by the potential

_____

[6] Wal-Mart argued throughout this case that the FAAAA preempted plaintiffs' minimum wage claims under state law.  *See, e.g.*, Dkt. No. 72 at 6.

passage of the Denham Amendment as one of the contingent risks in this case that warrant a positive multiplier, as outlined below. For that reason, the Court will deduct $73,988.00 for plaintiffs' lobbying activities.

### 3. Multiplier

Taking into account the above deductions brings plaintiffs' lodestar to $6,833,328.55. Including the five percent across-the-board reduction that plaintiffs have offered to make on their lodestar, the lodestar is now $6,491,662.12. The Court now considers whether it is appropriate to apply a multiplier.

Although both federal and California laws allow for multipliers, "California does not follow the approach to fee awards adopted by the federal courts . . . . As a result, an upward or downward adjustment from the lodestar figure will be far more common under California law than federal law." *Weeks v. Baker & McKenzie*, 74 Cal. App. 4th 1128, 1173 (1998). California law provides that while "the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider[.]" *Ketchum*, 24 Cal. 4th at 1138. "Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Laffitte*, 1 Cal. 5th at 489; *see also Ketchum*, 24 Cal. 4th at 1132 (noting that court may also consider "the extent to which the nature of the litigation precluded other employment by the attorneys"). "The purpose of such an adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Ketchum*, 24 Cal. 4th at 1132. However, the Court "should not consider these factors to the extent that they are already encompassed within the lodestar." *Id.* at 1138. For instance, "[t]he factor of extraordinary skill . . . appears susceptible to improper double counting; for the most part, the difficulty of a legal question and the quality of

23

representation are already encompassed in the lodestar. A more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate." *Id.* at 1138-39. The party seeking a multiplier bears the burden of proof. *Id.* at 1138.

Plaintiffs contend that a multiplier of at least 2.71[7] is warranted because of: (a) class counsel's contingent risk; (b) the "exceptional" results obtained; (c) the novelty, difficulty, and complexity of the case, and class counsel's efficiency; (d) class counsel's preclusion from other employment; and (e) public interest served by enforcing California's minimum wage laws. Mot. at 18-23. They also assert that the requested multiplier is supported by those awarded in similar cases, and is reasonable in light of a percentage-based cross-check. *Id.* at 23. In response, Wal-Mart argues that all the factors cited by plaintiffs are already subsumed within the lodestar calculation and, therefore, plaintiffs are not entitled to a multiplier. Opp'n at 17-20.

### a. Risk

Plaintiffs' counsel argue that they took a "huge financial risk," with over 11,000 hours of attorney and paralegal time, plus $1.7 million in out of pocket expenses, that would go unpaid unless counsel won the case. Mot. at 20. An enhancement based on contingent risk "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Ketchum*, 24 Cal. 4th at 1138. A court should "consider the degree to which the relevant market compensates for contingency risk." *Id.* "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004), *as modified* (Jan. 12, 2005).

Wal-Mart argues that the lodestar already accounts for any contingent risk because plaintiffs' counsel seek fees based on their current hourly rates rather than the rates in effect at the time the work was performed. Opp'n at 18. However, the utilization of current hourly rates may

---

[7] In their motion, plaintiffs argue for a multiplier of 2.91. They revise their multiplier request to 2.71 in their reply brief. *See* Reply at 2.

ameliorate the delay in payment of fees that counsel experienced. *See Graham*, 34 Cal. 4th at 584. The problems presented by delayed payment, such as "cash-flow problems for the attorneys," are distinct from those presented by the contingent risk factor, which accounts for "the risk of default (the loss of the case, which cancels the debt of the client to the lawyer)." *See id.* at 580. While an enhancement for delay of payment "may be reduced or eliminated if the lodestar rate is based on the present hourly rate rather than the lesser rate applicable when the services were rendered[,]" *id.* at 583-84, the contingent risk in this case, by contrast, was significant. Wal-Mart vigorously defended this case over the course of nearly nine years, and plaintiffs' claims narrowed over time following summary judgment motions and the partial denial of class certification. Other developments, such as the California Supreme Court's decision in *Brinker* and the Denham Amendment discussed above, had the potential to gut plaintiffs' claims. Plaintiffs took this case through to trial, risking an unfavorable jury verdict. The Court finds that the contingent risk in this case weighs in favor of a multiplier.

#### b. Results Obtained

"The 'results obtained' factor can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit." *Graham*, 34 Cal. 4th at 582. Perhaps unsurprisingly, the parties differ in their respective characterizations of the results obtained. Plaintiffs contend that they recovered just above 75 percent of what they sought from the jury. Reply at 3. Additionally, they note that the $60.8 million judgment is one of the five largest verdicts in an off-the-clock wage and hour case. Wallace Decl. ¶ 9. These results confer a substantial benefit to the class members, who on average will recover $70,000.00 each. Mot. at 1.

Wal-Mart, on the other hand, contends that plaintiffs recovered less than 25 percent of what they originally sought, when taking into account summary judgment rulings and plaintiffs' abandonment of several causes of action. Opp'n at 5. It also states that plaintiffs' expert valued this case at more than $242 million, including unpaid wages, penalties, and liquidated damages. *Id.* (citing Dkt. No. 366-3). In addition, plaintiffs were denied the $86 million sought in restitution, liquidated damages, and civil penalties.

The Court finds this factor to be neutral. Although plaintiffs obtained a significant win at trial, they did not succeed on all of the claims that they brought in this case, nor did they obtain a jury award on all of the tasks for which they alleged minimum wage violations. While the average recovery of $70,000.00 per class member is sizeable, the Court finds that other factors, such as the contingent risk and the complexity of the case, weigh more strongly in favor of a multiplier.

### c. Novelty, Difficulty, and Complexity

Plaintiffs note several aspects of this case that it believes were novel, difficult, and complex. For instance, it asserts that class certification was unique because of the age of this action and Wal-Mart's efforts to decertify the class. It also claims that discovery imposed a significant burden, as did the numerous dispositive motions raising difficult questions regarding preemption, class certification, and the California Labor Code. And unlike many class actions, this case did not settle but proceeded to a lengthy trial. Mot. at 10-11.

Wal-Mart, on the other hand, contends that this case did not present any exceptional novelty, difficulty, or complexity. It notes that California courts have received many actions suing trucking companies for alleged wage and hour violations, including some also brought by plaintiffs' counsel. Opp'n at 23. Wal-Mart also claims that plaintiffs' counsel "has decades of labor and employment law experience and is undoubtedly well versed in plaintiffs-side class action litigation." *Id.* In light of this background, Wal-Mart argues that "it did not require exceptional skill or talent to handle the requisite discovery and briefing to fully litigate this case." *Id.* at 23-24.

The Court finds this factor weighs in favor of a multiplier. The sheer number of issues raised in Wal-Mart's post-trial motions speaks to the case's complexity: FAAAA preemption, the methodology for establishing compliance with minimum wage laws, class certification, and the ability of class members in bankruptcy to recover, among others. *See* Dkt. No. 577. Before trial, Wal-Mart filed five motions seeking to strike the reports and opinions of all of plaintiffs' experts. *See* Dkt. No. 417. The question of plaintiffs' entitlement to minimum wage during layovers, on which plaintiffs ultimately prevailed, was particularly complex. Until the eve of trial, Wal-Mart

1    continued to raise new theories challenging plaintiffs' contention that it failed to pay minimum

2    wage.  *See* Dkt. No. 435 (citing arguments regarding subsuming activities into the activity pay

3    component, averaging all hours worked in a work week, and performing work during an hour in

4    which the driver did not otherwise earn the minimum wage).  Because the majority of wage and

5    hour cases of this magnitude settle, plaintiffs had few models for proceeding to trial.  The Court

6    acknowledges that this factor runs the risk of double counting, as the complexity of this case is

7    part of the reason for plaintiffs' nearly 11,000 hours of billing, which is already accounted for in

8    the lodestar.  However, having overseen this case since its filing in 2008 through a jury trial and

9    post-trial motions, the Court finds that this case raised numerous novel, difficult, and complex

10   issues that weigh in favor a multiplier.

11

12                    **d.      Preclusion from Other Employment**

13           Plaintiffs also assert that a multiplier is justified because plaintiffs' counsel was precluded

14   from taking on other employment.  Mot. at 22; s*ee Ketchum*, 24 Cal. 4th at 1132 (noting that court

15   may also consider "the extent to which the nature of the litigation precluded other employment by

16   the attorneys").  Mr. Wagner declares, "As a result of the extreme amount of time devoted to the

17   case by my firm, and the equally extreme amount of costs incurred, we have been unable to

18   undertake representation of many other clients/cases over the last eight years, which cases the firm

19   would normally have taken on, in order to allow the time and money needed for the prosecution of

20   this case[.]" Wagner Decl. ¶ 7.  He also states that he had to reject or refer cases that he otherwise

21   would have handled.  *Id.*  Wal-Mart does not address this point, and the Court finds this factor

22   weighs in favor of applying a multiplier.

23

24                    **e.      Public Interest**

25           Plaintiffs contend that they achieved significant nonmonetary benefits, including this

26   Court's published summary judgment rulings, that will deter employers from engaging in similar

27   conduct and encourage employees to enforce their rights.  Mot. at 12.  Additionally, plaintiffs note

28   that the California Supreme Court has recognized the public interest in enforcing California's

labor laws. *Id.* (citing *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004)).

The Court will not consider this factor in setting a multiplier. The long-term effects of this case remain to be seen and, as Wal-Mart points out, many of the Court's rulings are specific to Wal-Mart's pay policies and therefore may not apply to other employers.[8]

### 4.    Summary

The Court finds that the above factors—in particular the contingent risk, the novelty, difficulty and complexity of the litigation, and the preclusion of other employment—support a multiplier of 2.0. The Court thus GRANTS IN PART plaintiffs' request for statutory attorneys' fees and awards $12,983,324.25. This amount is to be paid by Wal-Mart.

### B.    Common Fund Doctrine

In addition to seeking statutory fees from Wal-Mart, plaintiffs ask the Court to award them one-third of the common fund. Fee-shifting under California Labor Code section 1194 does not preclude class counsel from recovering attorneys' fees under the common fund doctrine. *See Farmers Ins. Exch.*, 115 Cal. App. at 725-26. "Nor does it appear that the intent of the fee-shifting provision at issue here would be undermined by awarding additional attorney's fees under common fund principles. Indeed, the fee-shifting statute and the common fund doctrine serve entirely different purposes: the former governs what the non-prevailing party must, by law, pay the prevailing party in attorney's fees, while the latter serves to ensure that absent class members share in the cost of litigation." *Sobel*, 53 F. Supp. 3d at 1330.

"California has long recognized, as an exception to the general American rule that parties bear the costs of their own attorneys, the propriety of awarding an attorney fee to a party who has recovered or preserved a monetary fund for the benefit of himself or herself and others." *Laffitte*,

---

[8] Wal-Mart also argues that plaintiffs are not entitled to a multiplier for "fees-for-fees," that is, that a multiplier may not be applied to time billed on the fee motion itself. Opp'n at 20. This issue has been rendered moot by plaintiffs' decision not to seek attorneys' fees for the work performed on the fee motion. *See* Reply at 1-2, 12-13.

1 Cal. 5th at 488-89. The California Supreme Court recently clarified that where a class action suit results in a common fund for the class, the trial court may award attorneys' fees as a percentage of the common fund. *Id.* at 497, 504. The percentage method "calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Id.* at 489, 504. To determine an appropriate percentage fee award, courts may consider the risks and potential value of the litigation, the contingency, novelty and difficulty of the case, and the skill shown by counsel. *Id.* at 504. The court may then "double check the reasonableness of the percentage fee through a lodestar calculation" to ensure that the percentage fee does not "reward counsel for their services at an extraordinary rate . . . ." *Id.* "If a comparison between the percentage and lodestar calculations produces an imputed multiplier far outside the normal range, . . . the trial court will have reason to reexamine its choice of a percentage." *Id.* at 504. "Notably, while the California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases." *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 13-cv-0474, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017) (citing *Laffitte*, 1 Cal. 5th at 495, 503-06). "The goal under either the percentage or lodestar approach [is] the award of a reasonable fee to compensate counsel for their efforts." *Laffitte*, 1 Cal. 5th at 504.

Plaintiffs argue that counsel should receive one-third of the common fund for many of the same reasons that they urge they are entitled to a multiplier on their lodestar. They state that the results achieved, the risks involved, and the novelty, difficulty, and complexity of the case warrant an award of one-third of the common fund.

The Court is mindful that, "[w]here the class settlement is for a very large amount, a percentage fee may be criticized as providing counsel a windfall in relation to the amount of work performed." *Laffitte*, 1 Cal. 5th at 490. Although here one-third of the common fund, or roughly $20 million, may not exactly be a windfall, a lodestar cross-check shows that one-third would equate to a roughly 3.0 multiplier. The Court finds this to be slightly high in light of the results achieved, work performed, and the nature of this case. Above, the Court found that a 2.0 multiplier on the lodestar was appropriate. While this case did involve difficult and complex

29

issues, the minimum wage theory pursued was not so novel, nor the results achieved so extraordinary, as to warrant an award of one-third of the roughly $60 million common fund.

The Court finds that a reasonable percentage of the common fund is 25 percent. Although the California courts have not adopted a 25 percent as a "benchmark" figure, as the Ninth Circuit has, 25 percent is within the range of what courts will award as a percentage of the common fund in California. *See, e.g., Farmers Ins. Exch.*, 115 Cal. App. at 725-26 (trial court awarded 25 percent of common fund after plaintiffs prevailed at trial and were entitled to fees under California Labor Code section 1194); *see also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 24 n.1 (2000) ("Studies show that this [25 percent] benchmark is within the range followed by most courts.") (citations omitted). This amount is reasonable even according to plaintiffs' declaration filed in support of their fee motion. *See* Pearl Dec. ¶ 30 (stating that contingency fee contracts charged by law firms in large damages cases typically range from 10 to 50 percent); *see also Netflix*, 162 Cal. App. 4th at 50, 65-66 (not abuse of discretion for trial court to cross-check fee award against estimate that marketplace contingency fees range between 20 and 40 percent after deducting costs).

The Court GRANTS IN PART plaintiffs' request for an award of fees from the common fund. The Court will award 25 percent of the common fund ($60,800,011.58): $15,200,002.90. At plaintiffs' request, the amount that Wal-Mart pays in statutory fees will be credited against this amount, for a total net payment of $2,216,678.65 in fees from the common fund.

## III.    COSTS

Plaintiffs move for taxable costs against Wal-Mart in the amount of $220,149.89. Mot. at 24. They further seek reimbursement of their reasonable non-taxable costs, as would be billed to a fee-paying client, from the common fund; when offset by what they seek from Wal-Mart, they request payment of $1,593,781.44 from the common fund. Mot. at 24; Artenian Reply Decl. ¶ 13; Reply, App'x 2 at 26.[9]

---

[9] Plaintiffs submitted revised expenses in their reply brief to reflect a new invoice from their fee expert for $9,600.00 and an additional $11,534.00 invoice from their economics expert.

### A.    Taxable Costs from Wal-Mart

Regarding taxable costs, Wal-Mart asks the Court in its discretion to order that each party bear its own costs because plaintiffs recovered "a mixed judgment," citing the Ninth Circuit's decision in *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996).  In *Amarel*, the Ninth Circuit reversed and remanded the district court's judgment in favor of the defendant on one of the plaintiffs' claims, and left intact a jury verdict for the defendant on the other claim.  The court noted that if the plaintiffs prevailed on remand, "the resultant mixed judgment may warrant that each party bear its own costs."  *Amarel*, 102 F.3d at 1523.  The Court declines Wal-Mart's invitation here and finds that the facts of this case warrant taxing costs against Wal-Mart. Although plaintiffs did not carry all of their claims through to trial, they received a large jury verdict in their favor on the minimum wage claim, plus an additional $5.8 million on their claim under the Unfair Competition Law, for a total award of $60.8 million.  The Court entered judgment in favor of plaintiffs and against Wal-Mart.  *See* Dkt. No. 555.  The Court accordingly will tax costs against Wal-Mart and in favor of plaintiffs as the prevailing party.  *See* Fed. R. Civ. P. 54(d) ("costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs").

The Court notes Wal-Mart's argument that, of the taxable costs sought, plaintiffs have not substantiated the nearly $60,000.00 increased request in their revised bill of costs.  Opp'n at 2, 29. As required by the Civil Local Rules, plaintiffs submitted a bill of costs within fourteen days of entry of judgment, on February 8, 2017.  Dkt. No. 557.  The bill of costs totaled $160,417.32, which included a claim for $58,372.40 in deposition transcript/video recording costs.  Plaintiffs filed exhibits documenting the costs claimed.  On March 27, 2017, in conjunction with their motion for attorneys' fees and costs, plaintiffs submitted a revised bill of costs totaling $220,149.89, with deposition transcript/video recording costs now totaling $118,104.97.  Artenian Decl. Ex. C.  However, although the revised bill of costs references various "attachments," it

---

Reply at 2.  The statutory costs sought against Wal-Mart remain the same.

contained no documentation showing the increased request. After a review of the voluminous declarations and exhibits filed in support of the fee motion, the Court has been unable to identify precisely which receipts to attribute to the revised bill of costs. The Court will thus disallow the additional amount sought in the revised bill of costs for lack of supporting documentation. The Court GRANTS IN PART plaintiffs' request for costs, in the amount of $160,417.32, as sought in plaintiffs' bill of costs (Dkt. No. 557), to be taxed against Wal-Mart.

### B. Non-Taxable Costs from Common Fund

As to non-taxable costs, Wal-Mart challenges the majority of plaintiffs' request as improper, for vagueness, duplicative entries, and unreasonable or unnecessary expenditures. Opp'n at 26-29. Plaintiffs do not reply to the substance of Wal-Mart's critiques but state that Wal-Mart lacks standing to raise these concerns because the non-taxable costs will come from the common fund. Reply at 18-19 (citing *Sanders v. City of Los Angeles*, 45 Cal. App. 3d 271, 273 (1974)).

Regardless of whether Wal-Mart has standing to challenge plaintiffs' non-taxable costs, it is the duty of this Court to ensure that any costs awarded from the common fund are reasonable. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of *reasonable* litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citations omitted) (emphasis added). "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in wage-and-hour class actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) (collecting cases); *see also Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *9 (N.D. Cal. May 21, 2015) (awarding reasonable costs for experts, filing fees, postage, legal research, and more out of common fund).

The Court has reviewed the request for non-taxable costs that plaintiffs submitted, including a summary of expenses by category with accompanying receipts. *See* Artenian Reply Decl. Ex. B. The Court will award most of what plaintiffs seek, as reasonable litigation expenses, with the following exceptions:

Mileage: A review of the records shows that plaintiffs reimbursed themselves at a mileage rate of $0.70-$1.00 per mile. *See* Artenian Reply Decl. Ex. B at 75-79, 295-399. The Court finds this rate to be excessive. As comparison, the current IRS standard mileage rate for tax business is $.535 per mile. https://www.irs.gov/newsroom/2017-standard-mileage-rates-for-business-and-medical-and-moving-announced. The Court will thus reduce plaintiffs' mileage costs by 50 percent, for a deduction of $13,461.51 (out of the requested $26,923.02).

Meals: Plaintiffs' counsel claim meal expenses totaling $12,260.28, Artenian Reply Decl. Ex. B at 71, but have itemized or documented only $6,348.28. See Brass Decl. ¶ 63 & Ex. B. Further, the Court is unable to discern the reasonableness of some of these meal expenses, where the documentation does not state which or how many people dined at a given meal. For these reasons, the Court applies a 50 percent reduction to plaintiffs' meal expenses, for a deduction of $6,130.14 from the costs sought.

Accordingly, the Court GRANTS IN PART plaintiffs' request for non-statutory costs and expenses, in the amount of $1,574,189.79 to be paid out of the common fund.

## IV.  INCENTIVE AWARDS FOR NAMED PLAINTIFFS

From the common fund, plaintiffs seek incentive awards of $50,000.00 for each of the nine named plaintiffs. Mot. at 24. Wal-Mart argues that "there is no California statutory authority for an enhancement award where a case proceeds to verdict" rather than ending in a settlement. Opp'n at 25. In reply, plaintiffs argue that Wal-Mart lacks standing to challenge the incentive award, and state that the requests are reasonable.

"Incentive awards are fairly typical in class action cases," and are "generally sought after a settlement or verdict has been achieved." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59. (9th Cir. 2009). "Such awards are discretionary, [citation,] and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* The Court has discretion to grant incentive awards, guided by the following considerations:

33

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014) (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted). "Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen*, 306 F.R.D. at 267.

Here, each named plaintiff filed a declaration describing his involvement in the case, including conferences with counsel, assisting in the preparation of discovery responses, encouraging current and former co-workers to speak with counsel, providing declarations, sitting for depositions, and attending and testifying at trial.[10] The named plaintiffs' declarations show a high level of involvement requiring significant time and effort, especially when having to forgo work opportunities and pay travel expenses. The Court finds that these factors weight in favor of an incentive award. The case Wal-Mart cites, in support of its contention that incentive awards are not warranted following trial, involved plaintiffs seeking incentive awards against the defendant in a case without a common fund. *See In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 848-49 (E.D. Cal. 2016). The reasoning of that case therefore does not apply here.

Still, the Court finds the requested $50,000.00 for each of the nine named plaintiffs to be excessive. Although this case is nearly nine years old, the current named plaintiffs did not join the suit until November 2012. *See* Dkt. No. 61. The cases that plaintiffs cite in their motion granted incentive awards of $50,000.00 to a sole named plaintiff in the case. *See* Mot. at 25 (citing *Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001); *Van Vranken*, 901 F. Supp. 294 at 300). Here, with nine named plaintiffs, such an award would consume nearly half a million

---

[10] *See* Declaration of Charles Ridgeway (Dkt. No. 570-4 at 18); Declaration of Jaime Famoso (Dkt. No. 570-4 at 23); Declaration of Joshua Harold (Dkt. No. 570-4 at 29); Declaration of Richard Byers (Dkt. No. 570-4 at 34); Declaration of Dan Thatcher (Dkt. No. 570-4 at 39); Declaration of Willie Franklin (Dkt. No. 570-4 at 44); Declaration of Tim Opitz (Dkt. No. 570-4 at 50); Declaration of Farris Day (Dkt. No. 570-4 at 55); Declaration of Karl Merhoff (Dkt. No. 570-4 at 60).

1   dollars out of the common fund. The requested amount far exceeds what is presumptively

2   reasonable in this district. *See Bellinghausen*, 306 F.R.D. at 266-67 (collecting cases and

3   explaining that $5,000 incentive award is presumptively reasonable and that awards typically

4   range from $2,000 - $10,000). Based on the work performed in this case, and accounting for the

5   risk undertaken in suing a former employer, the Court finds it appropriate to GRANT IN PART

6   the request for incentive awards, in the amount of $15,000.00 to each named plaintiff.

7

8                                   **CONCLUSION**

9        Plaintiffs' motion for fees, costs, and incentive awards is GRANTED in part and DENIED

10  in part. Plaintiffs are entitled to $12,983,324.25 in attorneys' fees and $160,417.32 in costs from

11  Wal-Mart. In addition, the Court awards from the common fund $15,200,002.90 in fees (offset by

12  the attorneys' fees from Wal-Mart, for a net of $2,216,678.65); $1,574,189.79 in non-taxable

13  costs; and $15,000.00 incentive awards for each of the named plaintiffs.

14

15       **IT IS SO ORDERED**.

16  Dated:   September 14, 2017

17                                   _____

18                                   SUSAN ILLSTON
                                     United States District Judge

19

20

21

22

23

24

25

26

27

28